# Exhibit G

STATE OF WISCONSIN          CIRCUIT COURT          TAYLOR COUNTY

**************************************************************

In the Interest of                    **ADJOURNED PLEA HEARING**
J. DOE, an unborn child, and              **MOTION HEARING**
                                          Case Number
TAMARA M. LOERTSCHER,                       14-JC-9
d/o/b ▮▮▮▮▮▮▮.

**************************************************************

         The above-entitled matter came on for **Adjourned**

**Plea Hearing** and **Motion Hearing** in Circuit Court for Taylor

County at the Courthouse in the City of Medford, Wisconsin,

on the 4th day of September, 2014, commencing at 1:26

o'clock p.m., with the Honorable Douglas T. Fox, Circuit

Judge, presiding.


         APPEARANCES:

         Courtney L. Graff, Taylor County Corporation
         Counsel, appeared on behalf of Taylor County.

         Julie Clarkson, Social Worker, and Liza
         Daleiden, Deputy Director, Taylor County Human
         Services Department, were present.

         Tamara Loertscher appeared in person, acting
         in her own behalf.

         Michael D. Shiffler, JENSEN, SCOTT, GRUNEWALD &
         SHIFFLER, S.C., Attorneys at Law, P.O. Box 426,
         Medford, Wisconsin, appeared as Guardian ad
         Litem on behalf of the unborn child.

         Dondi Ellner, alleged father, was present.

         Marge and Lucille Loertscher and Robert
         Hendricks were also present.

         WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HELD
         AND TESTIMONY TAKEN:

2

1

                              I N D E X

2    EXAMINATION OF JULIE CLARKSON                    PAGE
     By Mr. Shiffler                                  14-16
3
     EXAMINATION OF TAMARA M. LOERTSCHER
4    By the Court                                     17-19

5    By Mr. Shiffler                                  19-21

6
                            E X H I B I T S
7
     EXHIBIT NUMBER            DESCRIPTION       I.D. OFF'D REC'D
8
     Exhibit No. 1        Eau Claire Hospital
9                         medical report

10   Exhibit No. 2        Eau Claire Hospital
                          medical report
11
     Exhibit No. 3        Eau Claire Hospital
12                        Discharge Summary

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1             MS. GRAFF:  This is *In the Interest of J.*
2  *Doe, an unborn child, and Tamara Loertscher.*
3             Is that correct?  Is that how you say it?
4             It is T-a-m-a-r-a.  Loertscher is
5  L-o-e-r-t-s-c-h-e-r.
6             Taylor County case 14-JC-9.  Appearing on
7  behalf of the County is Corporation Counsel Courtney Graff.
8  Sitting next to me from Human Services is Julie Clarkson.
9  Also present from Human Services is Liza Daleiden.  That's
10 D-a-l-e-i-d-e-n.  Guardian ad Litem Mike Shiffler appears.
11 Tamara Loertscher is here in person without counsel.
12             MR. ELLNER:  I am acting counsel.
13             MS. GRAFF:  Acting -- also present is
14 alleged father --
15             And can you state your name, please?
16             MR. ELLNER:  Dondi Ellner.  D-o-n-d-i
17 E-l-l-n-e-r.
18             MS. GRAFF:  And also present in the
19 courtroom --
20             Could you please state your name clearly
21 and spell your last name for the court reporter.
22             MS. MARGE LOERTSCHER:  I am Tammy's mom,
23 Marge Loertscher.  L-o-e-r-t-s-c-h-e-r.
24             MS. LUCILLE LOERTSCHER:  I am Lucille
25 Loertscher Tammy's grandma.  L-o-e-r-t-s-c-h-e-r.

4

1            MR. HENDRICKS:  Robert Hendricks.

2    H-e-n-d-r-i-c-k-s.  I am Tammy's mother's boyfriend.

3            MS. GRAFF:  Thank you.

4            This is the time and place set for an

5    adjourned plea hearing in a CHIPS case.  Petition was filed

6    on August 5th.  A hearing on a TPC request was heard and

7    ordered on August 5th.  The original plea hearing was held

8    on August 25th when Ms. Loertscher requested a substitute

9    judge.

10           THE COURT:  And Ms. Loertscher is not

11   represented by counsel?

12           MS. GRAFF:  That is correct.

13           MR. ELLNER:  We did not have time to get

14   counsel here because we got our order at 7:30 on Friday

15   night before a holiday weekend and it is set for today.

16   So --

17           MS. GRAFF:  Excuse me, Judge.  If I may be

18   heard about the presence of a couple people in the

19   courtroom.

20           THE COURT:  Yeah.

21           MS. GRAFF:  Ellner; correct?

22           MR. ELLNER:  Uh-huh.

23           MS. GRAFF:  Mr. Ellner is the alleged

24   father, but he is not a party to this action.  We would not

25   have jurisdiction over him to order any conditions.  So I

5

1    would ask that this be a true closed hearing and that

2    everyone be asked to sit outside.

3                    THE COURT:  Why?

4                    MS. TAMARA LOERTSCHER:  I object to that.

5    No.

6                    MR. ELLNER:  Shh.

7                    THE COURT:  Excuse me.  Ma'am --

8                    MS. TAMARA LOERTSCHER:  Sorry.

9                    THE COURT:  -- I will call on you and give

10   you a chance to talk, but don't interrupt when people are

11   talking, please.

12                   Why do you want people outside?

13                   MS. GRAFF:  As this is our first appearance

14   and the judge -- last time there were some interruptions.

15   And I assume I am about to lodge an objection about someone

16   not licensed to practice law asserting themselves as a

17   lawyer.

18                   THE COURT:  There will be no further

19   interruptions.  The spectators need to spectate and nothing

20   further.  I don't expect anything from the spectators.

21                   Mr. Ellner, you are a spectator.

22                   MR. ELLNER:  Okay.

23                   THE COURT:  I will let you sit in the

24   courtroom.  You are welcome to sit where you are sitting,

25   but you may --

6

1                    MR. ELLNER:  Thank you.

2                    THE COURT:  -- you may not interject in the

3          proceedings.  You may not speak on behalf of

4          Ms. Loertscher.

5                    How is it pronounced?

6                    MS. TAMARA LOERTSCHER:  Loertscher.

7                    THE COURT:  Loertscher.  Okay.

8                    Ms. Loertscher, you don't have a lawyer.

9          Today is the plea hearing, and I believe the Guardian ad

10         Litem also has a motion scheduled for today.  I'm willing

11         to adjourn this plea hearing to a later date if you wish me

12         to do that to give you time to get a lawyer, but if we do

13         that, that stops the time limits from running.

14                    Do you understand that?

15                    There are time limits for this proceeding,

16         time limits within which various things need to happen.  So

17         I'm willing to give you some extra time, but that's also

18         going to toll, or stop, those time limits.

19                    What's your pleasure?

20                    And I will give you a minute to think about

21         it, because I have some other things to discuss with you.

22                    And as to the motion that we close the

23         hearing, no, I decline to do that.  I presume these people

24         are here with Ms. Loertscher's consent.

25                    Is that right, ma'am?

7

1          MS. TAMARA LOERTSCHER:  Yes.

2          THE COURT:  Yeah.  And so as long as the

3    spectators do nothing more than spectate, there is no

4    problem with them being here.

5          This, as I indicated, is a plea hearing on

6    the Petition that your unborn child is in need of

7    protection and services.  You have certain rights in the

8    proceeding.  You have a right to be represented by a

9    lawyer.  You have a right to a trial by jury.  You have a

10   right to request a different judge, although you have

11   already done that as I understand it, so that right has

12   been used up so to speak.  You must exercise those rights

13   before the end of the plea hearing or you give them up.

14         At a trial, if there is a trial in the

15   case, then you have various rights that you may exercise at

16   the trial.  Those rights include a right to cross-examine,

17   or question, any witnesses who testify against you; a right

18   to subpoena witnesses, to have the Court order witnesses to

19   come to court to give evidence whether they want to or not;

20   a right to testify in your own behalf, as well as a right

21   not to testify.  But because that is civil, not a criminal,

22   proceeding, if a party chooses not testify, that may be

23   considered relevant evidence in the determination of the

24   case.

25         And if you dispute the Petition alleging

8

1  that your unborn child is a child in need of protection and

2  services, then you have the right to have the County prove

3  that proposition to a reasonable certainty by evidence

4  which is clear, satisfactory, and convincing.

5              Any questions so far?

6              MS. TAMARA LOERTSCHER:  Umm, I have a

7  question.  We have some --

8              THE COURT:  Speak up so I can hear you,

9  though.

10             MS. TAMARA LOERTSCHER:  I have a question.

11 We have some paperwork that proves that there is no danger

12 to my unborn child and --

13             THE COURT:  I am just asking right now if

14 you have a question about those rights that I explained to

15 you.

16             MS. TAMARA LOERTSCHER:  No.

17             THE COURT:  Okay.  Now, if it is determined

18 that your child is a child in need of protection and

19 services, either because everyone agrees to that at some

20 point or because that's determined at a trial, then the

21 Court will enter a dispositional order.  The Court is

22 required to enter the least restrictive order that it can

23 consistent with your rights and the protection of the

24 child.

25             The least restrictive type of order would

9

1    be to allow you to live in your home subject to whatever

2    supervision and conditions the Court believed appropriate.

3    Conditions can include such things as attending counseling,

4    receiving medical services, drug and alcohol services,

5    whatever was appropriate.

6            The Court can order you placed outside of

7    your home.  This could be in the home of an adult relative

8    or a friend, or it could be in a residential treatment

9    facility.  The Court can order that you submit to whatever

10   services the Court believes appropriate, including such

11   things as mental health services, drug and alcohol

12   treatment; and the Court could order that you be ordered to

13   enter an inpatient treatment facility.

14           Any question about that range of

15   dispositions?

16           MS. TAMARA LOERTSCHER:  No.

17           THE COURT:  Okay.

18           So the purpose of the plea hearing today is

19   for you to enter a plea to determine whether you dispute

20   the Petition or not.  As I indicated, I'm willing to give

21   you a short period of time to enter your plea if you want

22   to consult with an attorney before you do that.

23   Alternatively, you can enter your plea today and consult

24   with an attorney afterward.

25           What's your pleasure?

10

1   MS. TAMARA LOERTSCHER:  Umm, yeah, I would

2   like to, umm, dispute.

3   THE COURT:  Okay.  I will -- you want to,

4   in other words, deny the Petition, meaning you dispute the

5   Petition and are asking --

6   MS. TAMARA LOERTSCHER:  Yes.

7   THE COURT:  -- for a trial?

8   Mr. Shiffler, what's your plea on behalf of

9   the child?

10   MR. SHIFFLER:  I admit the allegations in

11   the Petition, your Honor.

12   THE COURT:  Okay.  Then the matter will be

13   set for trial.

14   Now, you had a motion, Mr. Shiffler.

15   MR. SHIFFLER:  I did, your Honor.  I had a

16   motion for contempt for failure for Ms. Loertscher to

17   comply with the Temporary Placement Order.

18   THE COURT:  Okay.  And I have read the

19   motion.

20   Ms. Loertscher, looking through the file,

21   it appears that there was an Order entered by Mr. Krug, the

22   Court Commissioner, on August 5, and that Order included

23   that you be placed at a licensed treatment facility and

24   comply with treatment, among other things.  Mr. Shiffler

25   has filed a contempt motion, to which he has appended the

11

1   Affidavit of Liza Daleiden, who says that you didn't comply
2   with that Order.
3                   Did you comply?
4                   MS. TAMARA LOERTSCHER:   Your Honor, I was
5   discharged.   We have paperwork here --
6                   THE COURT:   Okay.   Why don't you show me
7   your paperwork.
8                   MS. TAMARA LOERTSCHER:   -- that I would
9   like you to see.   It states that I was discharged by the
10  psychiatrist.
11                  THE COURT:   Okay.   Whatever paperwork
12  you've got, why don't you give it to me.
13                  MS. TAMARA LOERTSCHER:   These are my labs,
14  the initial labs that show I was negative.
15                  THE COURT:   I want to see the discharge
16  paperwork.
17                  MS. TAMARA LOERTSCHER:   Okay.   We're
18  finding that here too.
19                  THE COURT:   This should probably be marked
20  as an exhibit too.
21                  Mr. Shiffler and Ms. Graff, have you had a
22  chance to look at these documents?   If not, would you like
23  a chance?
24                  MR. SHIFFLER:   I would like just to take a
25  look at them, your Honor.   I haven't had a chance.

12

1          THE COURT:  Okay.  Here they are.

2          MS. TAMARA LOERTSCHER:  Your Honor, am I

3    able to say something?

4          THE COURT:  Let's give Mr. Shiffler a

5    minute to look at your documents first.

6          MS. TAMARA LOERTSCHER:  Okay.

7          THE COURT:  Okay.  Go ahead.

8          MS. TAMARA LOERTSCHER:  Okay.  In one of

9    the reports that we have, Ms. Julie --

10         THE COURT:  Don't bother speaking into that

11   microphone.  It doesn't amplify your voice.  Speak up nice

12   and loud.

13         MS. TAMARA LOERTSCHER:  Okay.  In one of

14   the reports it actually states that Julie from Human

15   Services had questions about the legal paperwork that was

16   given by the courts that her and the social worker were

17   talking about, and she never got back to him in the reports

18   that we have.  None of the paperwork that we were issued

19   has a notary stamp on it.

20         THE COURT:  Well, let's set aside those

21   concerns for the moment.  I'm satisfied that the Order that

22   Mr. Krug entered is a valid order and that you are required

23   to follow it.  The question right now is did you follow it

24   and if you did not was your failure to do so willful and

25   intentional.  So why don't you hold your thoughts for a

13

1    minute.  Mr. Shiffler has now had a chance to look at your

2    paperwork.

3                    MR. SHIFFLER:  Your Honor, I don't believe

4    the paperwork addresses the issue of contempt.  In some of

5    the discharge notes -- I believe it is from an entry on

6    August 7 -- it even acknowledges that, you know, the

7    hospital in Eau Claire doesn't have grounds to hold her so

8    she is being discharged, but it is in violation of the

9    court order.  So I think the paperwork she is submitting is

10   actually supportive of the motion for contempt.

11                   THE COURT:  Well, why don't you point out

12   that language to me.  I did not look over those papers

13   carefully.  The part that I looked at was a Discharge

14   Summary that said Ms. Loertscher indicated to the treatment

15   provider that she didn't feel she needed their services and

16   was ready for discharge and they discharged her.

17                   MR. SHIFFLER:  Umm, it is on page -- it is

18   marked as page 32 of 156 under "Progress Notes," August 7,

19   2014, by Jarred Duellman, social worker.

20                   THE COURT:  Spell names when you come

21   across them.

22                   MR. SHIFFLER:  First name J-a-r-r-e-d.

23   Last name D-u-e-l-l-m-a-n.

24                   And it is the first paragraph.

25                   THE COURT:  Okay.  So, in any event, we

14

1    have a dispute as to whether Ms. Loertscher has violated

2    the Order or not, so let's take some testimony.

3                    Go ahead.

4                    MR. SHIFFLER:  I call Julie Clarkson, your

5    Honor.

6                    JULIE CLARKSON,

7    called as a witness in the above-entitled matter, first
     having been duly sworn to tell the truth, the whole truth,
8    and nothing but the truth, on her oath, testified as
     follows:
9

10   EXAMINATION BY MR. SHIFFLER:

11   Q  Could you please state your name and spell your last name.

12   A  Julie Clarkson.  C-l-a-r-k-s-o-n.

13   Q  And where do you work, Ms. Clarkson?

14   A  I work at Taylor County Human Services in the Children and

15      Families Unit.

16   Q  And how long have you been there?

17   A  Umm, I've worked there approximately 14 years.

18   Q  And what's your position within Human Services?

19   A  I'm currently a child protective services social worker.

20   Q  Okay.  And do you know Tamara Loertscher?

21   A  Yes.

22   Q  And is Ms. Loertscher the subject of a Chapter 48 action?

23   A  Yes, she is.

24                    THE COURT:  Well, we know she is.  That's

25      why we're here.

15

```
1                    MR. SHIFFLER:  Okay.

2                    THE COURT:  Get to the point.

3                    MR. SHIFFLER:

4    Q  Was there a temporary physical custody hearing held on

5       August 5th --

6    A  Yes.

7    Q  -- 2014?

8                    THE COURT:  And I know that as well.  I've

9       got the Order --

10                   MR. SHIFFLER:  Okay.

11                   THE COURT:  -- in the file.

12                   MR. SHIFFLER:

13   Q  And after the -- after the hearing -- where was

14      Ms. Loertscher at the time of the hearing?

15   A  She was at Luther Hospital.

16   Q  And when she was discharged from Luther Hospital, was she

17      discharged to a treatment facility as the Order required?

18   A  Umm, it is my understanding that Ms. Loertscher left the

19      hospital.  I don't know the location that she went to when

20      she left.  She did not go to the treatment facility that

21      was arranged.

22   Q  And what was the treatment facility that was arranged?

23   A  The agency had arranged for her to go to the Fahrman

24      Center.  F-a-h-r-m-a-n.

25   Q  And did the Fahrman Center have any tests that
```

16

1   Ms. Loertscher would be required to take before she could

2   be admitted there?

3   A   Yes, they did.  She was required to complete a TB test

4   prior to admission.

5   Q   And are you aware, did she refuse to take a TB test?

6   A   She did.  Luther Hospital had asked her several times to

7   take a TB test.  She refused to do that.

8   Q   Has your agency attempted to contact Ms. Loertscher both

9   while she was in the Luther Hospital and since she has been

10   discharged?

11   A   Yes.

12   Q   Has she responded to your attempts to contact her?

13   A   No, she has not.

14   Q   Has she cooperated with your agency?

15   A   No, she has not.

16              MR. SHIFFLER:  I have no further questions,

17   your Honor.

18              THE COURT:  Ms. Loertscher --

19              First of all, are you just on the sidelines

20   on this motion or --

21              MS. GRAFF:  On this motion.  This is

22   Mr. Shiffler's motion, correct.

23              THE COURT:  Ms. Loertscher, did you have

24   questions of Ms. Clarkson?

25              MS. TAMARA LOERTSCHER:  Umm, no questions

17

1    for her, but I would like to interject some of the things

2    that were said.

3                    THE COURT:  Sure.  I am going to give you a

4    chance to testify.

5                    You may step down.

6                    Did you have other witnesses?

7                    MR. SHIFFLER:  No, your Honor.

8                    THE COURT:  Then if you wish to testify,

9    ma'am, step up here and be sworn.

10                    TAMARA M. LOERTSCHER,

11   called as a witness in the above-entitled matter, first
     having been duly sworn to tell the truth, the whole truth,
12   and nothing but the truth, on her oath, testified as
     follows:
13

14   EXAMINATION BY THE COURT:

15   Q  Begin by stating your name and address --

16   A  My name is --

17   Q  -- speaking up nice and loud.

18   A  My name is Tamara Loertscher.  Umm --

19   Q  Where do you live?

20   A  ███████████████████  in Medford, Wisconsin.

21   Q  Okay.  Go ahead.

22   A  Okay.  The TB test that I was asked to give, I did not

23   . decline it.  I said that I would take the old TB test.

24   They wanted to take blood from me for the TB test.  So I

25   would like to say that I would have went -- I would have

18

```
1        given them the TB test but --
2    Q   What was your concern about the type of --
3    A   Well --
4    Q   -- about the type of TB test they wished to give you?
5    A   Well, I just -- I didn't feel like I needed to go.
6    Q   I'm sorry.  "I didn't feel . . ."
7    A   I don't feel like I need treatment.  Like I feel like I
8        went to the hospital and sought treatment and then they
9        violated my rights and all these people got this
10       information that I feel they shouldn't have gotten.  And I
11       feel my whole stay there was made worse.  Umm --
12   Q   Well, I am still not understanding what that had to do with
13       the type of TB test that the hospital wanted to take.
14   A   Well, I just wanted to state that I did not decline the TB
15       test.
16   Q   Okay.
17   A   I work in health care, and there is a normal way to take it
18       and then this new way that they are saying that they were
19       trying to take from me.  And I did not decline the TB test,
20       just the drawing of the blood the new way.
21   Q   Okay.
22   A   And then I would like to state that I was discharged by the
23       physician into the care of my mother and her boyfriend and
24       the Order did not call for me to be held there.  I left the
25       facility under their care.
```

19

1  Q  You understood, however, I gather, because you participated

2     in the hearing at which the Order was issued, that there

3     was an Order requiring that you enter a treatment facility

4     to be determined by the Taylor County Department of Human

5     Services once you were discharged from the hospital.

6  A  Umm, but it stated -- it did state to me that I could be

7     discharged by the physician's order.

8  Q  Discharged from the hospital you are talking about;

9     correct?

10 A  And into the care of my mother.

11 Q  Well, you say you understand that's what Mr. Krug's Order

12    indicated, that you could be discharged from the hospital

13    into the care of your mother?

14 A  Umm, that's what reports that I have --

15 Q  Okay.

16 A  -- that have been given that stated that I could leave

17    under those circumstances.

18 Q  All right.  Anything else that you want to tell me?

19 A  Umm --

20               THE COURT:  Apparently not.

21               Mr. Shiffler, questions.

22               MR. SHIFFLER:  Just a couple questions,

23    your Honor.

24 EXAMINATION BY MR. SHIFFLER:

25 Q  Ms. Loertscher, you testified that you didn't receive a

20

1    copy of the Order prior to your --

2                    THE COURT:  Excuse me.

3                    Mr. Ellner, I'm going to --

4                    MR. ELLNER:  Sorry.

5                    THE COURT:  -- have you leave the courtroom

6    if I catch you doing that again.

7                    MR. ELLNER:  Sorry.

8                    THE COURT:  You are able to sit here and

9    watch the proceedings, but you are not able to mouth

10   instructions to Ms. Loertscher.

11                   MR. ELLNER:  Sorry, your Honor.

12                   THE COURT:  Go ahead.

13                   MR. SHIFFLER:

14   Q  Ms. Loertscher, you testified that you didn't receive a

15   copy of the Order prior to your discharge from the

16   hospital.  Have you received a copy of the Order before

17   today?  Have you had a chance to read Mr. Krug's Order?

18   A  I've read the allegations in the Order, yes.

19   Q  And you've failed to cooperate with Taylor County Human

20   Services?

21   A  Well, I would like to say, umm, my -- the labs also --like

22   if that comes into -- I mean they say it's negative.  If

23   you look at the lab reports for everything that was tested,

24   it shows negative.  So --

25   Q  But to my question, you've failed to cooperate with Human

21

1    Services?  When they've asked to meet with you, you've

2    declined?

3  A  Well, I just got a letter in the mail after the last court

4    date.  That was the first contact that I've had wanting to

5    meet with Julie.  Umm --

6  Q  And you haven't met with her?

7  A  No, 'cuz then all of a sudden I'm issued another warrant,

8    and they tried to arrest me at my home again.  So I didn't

9    have time to do much of anything.

10 Q  And you've failed to go to a treatment facility to be

11   evaluated as to whether or not you have a --

12 A  I don't believe --

13 Q  -- a drug addiction?

14 A  I don't believe I need to because I don't have a problem.

15               MR. SHIFFLER:  Okay.  I have no further

16   questions, your Honor.

17               THE COURT:  Anything else that you want to

18   tell me?

19               THE WITNESS:  Just that we have, you know,

20   the reports and the evidence there that states that I left

21   under my own will and the doctors -- the doctor released me

22   into the care of my parents and the lab reports that show

23   that everything that they are accusing me of are negative.

24               THE COURT:  Okay.  All right.  You may step

25   down.

22

1                    Mr. Shiffler.

2                    MR. SHIFFLER:  Your Honor, it's my position

3     that there is -- that there is contempt here, that the

4     Order was clear.  Ms. Loertscher willingly violated it by

5     failing to go to the treatment facility, failing to

6     cooperate with Human Services.  Umm, the Court required her

7     to do these things.  The Court didn't give her the

8     discretion to choose whether she thought it was necessary.

9     It was a court order.

10                    I'm requesting that she be held in contempt

11    and that she be allowed to purge the contempt by submitting

12    to a TB test and complying with the other prerequisites for

13    her admission to a licensed treatment facility and then she

14    commence her placement at a treatment facility,

15    specifically the Fahrman Center in Eau Claire, and that she

16    cooperate with the Taylor County Human Services and sign

17    all releases requested by Human Services that are necessary

18    to facilitate treatment and otherwise comply with the

19    Temporary Physical Custody Order or, alternatively, that

20    one or more of the remedial sanctions provided for under

21    Wis. Stat. sec. 785.04 be imposed on her.

22                    Now, if the Court finds her in contempt,

23    I'll defer to the discretion of the Court as to what

24    sanctions would be appropriate.

25                    THE COURT:  Okay.  Ms. Loertscher, before I

23

1    invite your comments, just let me explain to you a bit

2    about the procedure so that you understand what the issues

3    are here today.

4                        The Court issued the Temporary Placement

5    Order that we're dealing with today, Mr. Krug's Order of, I

6    think it was, August 5 that required, among other things,

7    that you be placed at a licensed treatment facility to be

8    determined by the Department.  They, apparently, determined

9    that this Fahrman facility was the appropriate one.  And

10   Mr. Shiffler is arguing that you are in contempt of that

11   Order.  "Contempt" means the willful violation of a court

12   order without any lawful excuse.

13                       Mr. Shiffler says you did violate it and

14   that you have no lawful excuse and that I ought to hold you

15   in contempt.  And the way contempt works, this type of

16   contempt, is if I find you in contempt then I would impose

17   a sanction.  It could be a monetary sanction.  It could be

18   sending you to jail.  But that I allow you to purge that

19   contempt, meaning to get out from under that sanction, by

20   doing what I tell you to do.  Mr. Shiffler is suggesting

21   that I tell you to do what the Order says you are to do.

22                       So, anyway, that's the issues.  Now I

23   invite your comments in response to Mr. Shiffler's

24   comments.

25                       MS. TAMARA LOERTSCHER:  I just don't feel

24

1    like there is any contempt because I -- you know, I -- I

2    don't even know what to say.  Like there is just no

3    contempt because I want to be a good mom and I am a good

4    mom and I don't have a problem.

5                    THE COURT:  Well, the question isn't

6    whether you have a problem or, for that matter, whether you

7    are a good mom or not.  The question is whether you

8    violated the Order and whether you had a reason for doing

9    so.

10                    I understood from some of the comments that

11   you made while you were on the witness stand that you did

12   not feel it necessary to go to this treatment facility

13   because you don't feel that you have a problem.

14                    Right?

15                    MS. TAMARA LOERTSCHER:  Yeah.  I felt like

16   I was treated very terribly and --

17                    THE COURT:  Well, the problem with that

18   logic is when a court orders you to do something you have

19   to do it or you have to get the Order changed.  You can't

20   determine that you don't like the Order or you think the

21   Order is wrong or that you choose not to follow the Order.

22   You need to follow court orders or you need to get them

23   changed or you need to appeal them.  You need to do

24   something other than ignore the Order.  And it sounds to me

25   that you've -- you chose in this case to ignore the Order

25

1   that you enter a treatment facility to be selected by the

2   Department and that you cooperate with the Department.

3           You may disagree with that.  It might be a

4   good order, it might be a bad order, but it's the Court's

5   order; and unless and until that Order is changed, you need

6   to obey it; and if you don't, then unpleasant things

7   happen.

8           I often tell people I don't have the power

9   to make a person obey an order; I only have the power to

10  make them wish they had.  And that's an honest statement.

11  I can't make you obey that Order.  I can't have the

12  deputies hog-tie you and take you to that treatment center.

13  That's a decision that you'll have to make.  But I can

14  punish you if you decide not to obey that Order, and I will

15  do so because I'm going to enforce that Order.

16          So I do find that this Court, in the person

17  of Court Commissioner Krug, entered an order on August 5,

18  2014, which provided, among other things, that

19  Ms. Loertscher upon her discharge from the hospital -- I

20  understand she was then at Luther Hospital -- that

21  Ms. Loertscher be placed at a licensed treatment facility

22  until the program directors deem it appropriate to release

23  her, that she comply with that facility's assessment and

24  treatment recommendations, and that upon discharge she

25  continue to comply with treatment recommendations,

26

1    including complete sobriety, random urinalysis, and that

2    she cooperate with Taylor County Department of Human

3    Services, as well as some other things.

4              It appears that Ms. Loertscher did not obey

5    that Order, that she refused to take a TB test.  She says,

6    I didn't refuse it, I just refused the one they were

7    wanting me to take.  Well, that's not a -- that's not a

8    defense.

9              If the medical provider is wanting to

10   provide that TB test in whatever form they deem

11   appropriate, you have to cooperate with that.  That's

12   consistent with the Court's Order.

13             And, in any event, that she did not enter

14   the Fahrman facility, which is the treatment facility that

15   the Department determined was the appropriate one, and

16   further, that she has failed to cooperate with the

17   Department of Human Services.  So, that's a violation of

18   the Order.

19             Ms. Loertscher has offered as her rationale

20   the fact that she disagrees with the Order, feels the Order

21   is ill-considered and unnecessary.  Those may all be

22   legitimate opinions for her to hold, but they constitute no

23   legitimate excuse for failing to abide by the Court's

24   Order.  Thus, I find her failure to obey the Order to be

25   contemptuous and without any legal justification.  I,

27

1    therefore, find her in contempt.

2              Now, I'm going to order that you be

3    committed to the Taylor County Jail for a period of 30

4    days, but I'm going to stay that Order.  I'm not going to

5    send you to jail now.  I'm going to stay the Order and

6    allow you to purge that Order by obeying the August 5 Order

7    of Mr. Krug.  And that means immediately at the conclusion

8    of this hearing in consultation with Ms. Clarkson or such

9    other agents of Taylor County Department of Human

10   Services --

11             Mr. Ellner -- Mr. Ellner, you, too, may

12   disagree with my Order, but I don't want you to sit there

13   shaking your head and acting disrespectfully because there

14   is another form of contempt that I have at my disposal

15   which is different than the remedial contempt that I'm

16   dealing with now and I will resort to that if I need to if

17   you continue that behavior.

18             Any questions?

19             MR. ELLNER:  No.

20             THE COURT:  Okay.

21             Now, as I was saying, Ms. Loertscher, you

22   need to consult with Ms. Clarkson at the conclusion of this

23   hearing and cooperate with her in respect to your admission

24   into the Fahrman facility.  You need to cooperate with

25   them.  It may well be that you don't have any treatment

28

```
1    needs, but you need to cooperate with them to find that
2    out.  You need to undergo an assessment, and you need to
3    follow their recommendations.
4              If they agree with you that you have no
5    treatment needs or no treatment needs in their facility,
6    then they can discharge you to your home with whatever
7    discharge recommendations they have.  You'll still be under
8    obligation to follow those recommendations, if they are
9    making recommendations to you.  But you need to cooperate
10   with that and submit to that assessment and follow through
11   with treatment, and you need to cooperate with the Taylor
12   County Department of Human Services.
13              Okay?
14              MR. ELLNER:  Your Honor, could I speak?
15              THE COURT:  No.
16              MR. ELLNER:  No?
17              THE COURT:  Do you have any questions?
18              MS. TAMARA LOERTSCHER:  (Shook head.)
19              THE COURT:  All right.  We are adjourned.
20              Mr. Shiffler, you will prepare an Order,
21   please.
22              (WHICH CONCLUDED THE PROCEEDINGS AT 2:05
23   O'CLOCK P.M.)
24
25
```

29

1          I, Alis A. Fox, Official Court Reporter for Price

2     County, Wisconsin, do hereby certify that I took in

3     shorthand the proceedings in the above-entitled matter at

4     the Courthouse in the City of Medford, Wisconsin, on the

5     4th day of September, 2014, commencing at 1:26 o'clock

6     p.m., and that the foregoing is a true and correct

7     transcript of my shorthand notes and of the whole thereof.

8

9     _____

10                                    Alis A. Fox
                                     Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25