UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

TAMARA M. LOERTSCHER

            Plaintiff,                      CIVIL ACTION

    v.                                      Case No. 14-cv-870

**J.B. VAN HOLLEN**, in his official capacity as
ATTORNEY GENERAL OF THE
STATE OF WISCONSIN, and
**ELOISE ANDERSON**, in her official capacity as
SECRETARY OF THE DEPARTMENT OF
CHILDREN AND FAMILIES

            Defendants.

---

### PLAINTIFF'S BRIEF IN OPPOSITION TO PLAINTIFF'S COMPULSORY MOTION TO FILE UNDER SEAL

---

      Plaintiff Tamara Loertscher respectfully submits this Memorandum of Law in Opposition to the accompanying Compulsory Motion to File Under Seal. Although Wisconsin state law provides that proceedings under Chapter 48, Wisconsin's Children's Code, shall not be disclosed except upon an order of the Wisconsin state circuit court, *see* Wis. Stat. § 48.396(2)(a), these proceedings pertain to Ms. Loertscher herself, and the public's right of access to the records in this matter—which document multiple constitutional violations inflicted upon an adult pregnant woman by Defendants under the guise of a juvenile court proceeding—outweighs any interest Defendants can assert in keeping their conduct shielded from public examination.

      As a matter of public policy, court proceedings are presumptively open for public inspection. Public access to these records is imperative to ensure the integrity and honesty of the legal system and expose improper governmental conduct. Ultimately, this ensures that the unconstitutional, counterproductive, and damaging impacts of a legislative scheme and its

enforcement are not insulated from public knowledge and review. Given the gravity of the constitutional violations inflicted upon Ms. Loertscher's under the auspices of 1997 Wisconsin Act 292, codified at, *inter alia*, Wis. Stat. § 48.133 *et seq.* (hereinafter "the Act"), the public interest in an open record in this case outweighs any countervailing interest Defendants may assert. Furthermore, Ms. Loertscher wishes these records, which document the proceedings against her, to be made public as part of her legal challenge. Plaintiff therefore respectfully requests that her own Compulsory Motion to Seal be denied and that the exhibits to her Complaint be placed in the public record.

## ARGUMENT

Records of civil and criminal proceedings are presumptively open for public inspection. *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978) (recognizing the "general right to inspect and copy public records and documents, including judicial records and documents"); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (holding that the presumption of access to criminal court proceedings extends to civil cases). The Seventh Circuit has recognized that "this presumption is of constitutional magnitude," and has explained that the public right of access to judicial records is "fundamental to a democratic state" and serves the important function of "insuring quality, honesty and respect for our legal system." *In re Cont'l Ill. Sec. Litig.*, 732 F.2d at 1308 (internal citations omitted). Indeed, the presumption of open courts plays such a key role in the proper functioning of the legal system that courts will strongly favor disclosure unless the party opposing disclosure provides specific and compelling facts to counter that presumption. *Id*. at 1313 (finding that the court "must be firmly convinced that disclosure is inappropriate if we are to reject demands for access").

When determining whether to make records public, the Seventh Circuit requires district courts to balance the public interest in open records against the opposing party's interest in maintaining the confidentiality of the records. *Id*. at 1313-14. This analysis requires a court to consider three important factors: (1) the general interest in understanding disputes that are presented in a public forum for resolution; (2) the public's interest in assuring that courts are fairly run and that judges are honest; and (3) the public's right of access, guaranteed by the First Amendment, to information before the court relating to matters of public interest. *Id*. at 1314. The party opposing disclosure cannot overcome the presumption against sealing judicial records simply by pointing to the existence of a protective order by another court. *See, e.g., Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011). Instead, the party seeking to seal the records must provide clear facts to demonstrate that there is a real and substantial interest in nondisclosure. *See, e.g.*, *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

In this case, the public's interest in placing the transcripts on the public record far outweighs any interest Defendants may assert in maintaining confidentiality. A fundamental issue in this constitutional challenge to the Act is whether adult women who become pregnant can be deprived of their physical liberty and other constitutional rights in judicial and administrative proceedings intended for children, and then, in addition, limited in their ability to challenge those proceedings because the proceedings are closed to the public and the media. Placing the exhibits to Ms. Loertscher's Complaint in the public record as evidence in this constitutional challenge to the Act is supported by each of the *Continental* factors, as well as by the general presumption in favor of open courts. These factors are not outweighed by any

legitimate confidentiality interests Defendants can assert, particularly because the individual who is the subject of the proceedings wishes for these records to be disclosed.

**(1)** *Continental Factor 1: The public has a crucial interest in understanding the unconstitutional nature of the Wisconsin Act and its application to Plaintiff.*

The Seventh Circuit recognizes that the public has an interest in understanding disputes that are presented in a public forum for resolution. The public interest is particularly strong in a case such as this one where the dispute arises out of the implementation of an unconstitutional statute, Wis. Stat. § 48.133 *et seq*., (the Act) and where state actors have used state law to hide their unconstitutional actions behind the confidentiality of juvenile court proceedings. The evidence contained in the exhibits to the Complaint powerfully demonstrates the way in which the Act operates to deprive women of their constitutional rights to physical liberty, self-determination, privacy, and autonomy, among others—information that is relevant to all women of childbearing age.

If the records of the proceedings against Ms. Loertscher are kept hidden from public view, the public will be unable to hold the government accountable for the enactment and implementation of a law that substantially intrudes on the constitutional rights of Wisconsin women without advancing any legitimate state interest in maternal, fetal, or child health. Indeed, as the Seventh Circuit has recognized, open courts serve the important function of "safeguard[ing] against any attempt to employ our courts as instruments of persecution." *United States v. Edwards*, 672 F.2d 1289, 1294 (7th Cir. 1982). Shielding the unconstitutionality of the Wisconsin Act from the public view is exactly the type of situation that the presumption of open courts is intended to address.

**(2) *Continental* Factor 2: The public has a compelling interest in accessing the records in order to understand the operations of the courts and the actions of the Defendants in this Matter.**

The presumption of open courts is also essential for allowing the public to monitor the functions of the courts and the executive branch to ensure that they operate in the interest of justice. Any effort to withdraw the judicial process from public view requires "compelling justification." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). Efforts to hide these proceedings behind the confidentiality of juvenile court records only serves to undermine public confidence in the operation of that system, particularly in a cases, like this one, where an adult woman is the subject of a juvenile proceeding.

Moreover, the records of the proceedings against Ms. Loertscher demonstrate that Defendants are currently implementing an unconstitutional law against the women of Wisconsin, a matter of vital public importance about which there has been little public debate precisely because Defendants actions take place in confidential proceedings. Indeed, the Seventh Circuit has held that the presumption in favor of open courts is particularly strong when the government is a party: "[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Smith v. U.S. Dist. Court for S. Dist. of Il*l. 956 F.2d 647, 649-50 (7th Cir. 1992) (internal citations omitted).

Public access to these records also implicates the functioning of the electoral process in Wisconsin. Disclosure of these records allows the public to understand the Act and how it is implemented by the Defendants. Thus, disclosing these records provides the public with an opportunity to assess the workings of the legislative and executive branches of the state

government and improve the likelihood that future legislative and executive acts will comply with the federal constitution.

Finally, because the records at issue in this motion reveal multiple constitutional violations in the way that the Act authorizes state actors to conduct judicial and administrative proceedings under its auspices, they will be central to this Court's decision in this case. Accordingly, and they should be publicly available to allow the public to understand this Court's own actions and to ensure the public's confidence in judicial remedies. *See Edwards*, 672 F.2d at 1294.

### *(3)   Continental Factor 3: Disclosure of the Records is required under the First Amendment.*

Placing the exhibits to Ms. Loertscher's Complaint on the open record is also mandated by the First Amendment right of the public to access judicial proceedings.  The First Amendment creates a strong presumption that documents submitted in connection with a judicial proceeding are open to the press and the general public. *See, e.g., United States v. Peters*, 754 F.2d 753, 763 (7th Cir. 1985); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d at 1308-09. The Supreme Court recognizes that the press's First Amendment right "serves . . . as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve" and was "deliberately selected to improve our society and keep it free." *Mills v. Alabama*, 384 U.S. 214, 219 (1966). The Seventh Circuit instructs that when a First Amendment interest is at stake, courts must resolve all doubts in favor of disclosure. *In re Cont'l Ill. Sec. Litig.*, 732 F.2d at 1313. The First Amendment right to access judicial proceedings applies with special force in this action because disclosing unconstitutional state actions to the public is of paramount importance.

The unconstitutional actions in this case took place effectively in secret because they occurred in connection with what state has designated as "juvenile proceedings." Although juvenile court proceedings have traditionally been confidential, juvenile court proceedings are frequently subject to disclosure in the public interest. In Wisconsin, courts may order disclosure of confidential records from juvenile court proceedings when they deem that the public interest will be served by this disclosure, even when some harm to a juvenile could result, which is not the case in this matter. *See, e.g., State ex rel. Herget v. Circuit Court for Waukesha Cnty.*, 267 N.W.2d 309, 316-17 (Wis. 1978) (state court could order the disclosure of juvenile court records when the requesting party's need for the information outweighed the interest in confidentiality). Indeed, a number of states have extended the full presumption of public access to juvenile or family courts in recognition of the important First Amendment right of public access. See Kelly Crecco, "Striking a Balance: Freedom of the Press Versus Children's Privacy Interests in Juvenile Dependency Hearings," 11 *First Amendment L. Rev.* 490, 506-11 (2013) (discussing the trend of increasing public access to juvenile or family court proceedings in Oregon, New York, Pennsylvania, Florida, Minnesota, Arizona, and Connecticut).

In sum, the public has a strong overriding interest in disclosure of the records that is not undermined by the fact that traditional juvenile court proceedings are, at times, kept confidential.

***(4)    The State has no legitimate interest in keeping the transcripts confidential as the traditional justifications for sealing juvenile court records are inapplicable to the facts of this case.***

The presumption of open courts plays such a key role in the proper functioning of the legal system that courts will strongly favor disclosure unless the opposing party provides specific and compelling facts to counter that presumption. *In re Cont'l Ill. Sec. Litig.,* 732 F.2d at 1313

(finding that the court "must be firmly convinced that disclosure is inappropriate if we are to reject demands for access"). No such justification exists here.

Juvenile court records are traditionally sealed in order to protect a young person from having his past "bad acts" follow him into adulthood, giving him the opportunity for a fresh start upon reaching adulthood. *See, e.g., Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 107 (1979) (Rehnquist, J., concurring) ("This insistence on confidentiality [of juvenile court proceedings] is born of a tender concern for the welfare of the child, to hide his youthful errors and bury them in the graveyard of the forgotten past.") (internal citations omitted). This case does not involve a juvenile delinquency hearing. There is no juvenile criminal record being created and there are no "youthful errors" contained in the records that could later negatively affect a child if revealed. *Daily Mail Publ'g Co.*, 443 U.S. at 107. Indeed, the individual who is the subject of these proceedings, Ms. Loertscher herself, seeks to have these records disclosed to the public. A confidentiality provision designed to protect the privacy of juvenile individuals should not be used to bar an adult woman from disclosing her own records as part of a constitutional challenge to the proceedings to which she was subjected. The only errors being hidden are those of the Defendants—and those constitutional violations put Ms. Loertscher and her pregnancy at risk. Here, placing the exhibits to the Complaint in the public record will protect the integrity of and public confidence in the courts by allowing the public to scrutinize the application of the Act.

## CONCLUSION

For the foregoing reasons, Plaintiff Tamara Loertscher respectfully requests that her Compulsory Motion to Seal be denied.

Dated this 15th day of December, 2014.

Respectfully submitted,

**PERKINS COIE, LLP**

By:   s/ *Freya K. Bowen*

David J. Harth
dharth@perkinscoie.com
Freya K. Bowen
fbowen@perkinscoie.com
Joshua L. Kaul
jkaul@perkinscoie.com
1 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

**NATIONAL ADVOCATES FOR PREGNANT WOMEN**
Lynn M. Paltrow *\*Admission pending*
  NY Bar No.: 1920156
lmp@advocatesforpregnantwomen.org
Sara Ainsworth *\*Admission pending*
  WA Bar No.: 26656
sla@advocatesforpregnantwomen.org
15 W. 36th Street, Suite 901
New York, NY 10018
Telephone: (212) 555.9252
Facsimile: (212) 225-9253

**CARR CENTER FOR REPRODUCTIVE JUSTICE**
Sarah E. Burns *\*Admission pending*
  DC Bar No.: 2212413
sarah.burns@nyu.edu
Washington Square Legal Services, Inc.
NYU School of Law
245 Sullivan Street, 5th Floor
New York, New York 10012

*Attorneys for the Plaintiff,*
*Tamara Loertscher*