# APPENDIX 6



The American College of Obstetricians and Gynecologists
*Women's Health Care Physicians*

# COMMITTEE OPINION

Number 473 • January 2011

**Committee on Health Care for Underserved Women**
*This information should not be construed as dictating an exclusive course of treatment or procedure to be followed.*

# Substance Abuse Reporting and Pregnancy: The Role of the Obstetrician–Gynecologist

**Abstract:** Drug enforcement policies that deter women from seeking prenatal care are contrary to the welfare of the mother and fetus. Incarceration and the threat of incarceration have proved to be ineffective in reducing the incidence of alcohol or drug abuse. Obstetrician–gynecologists should be aware of the reporting requirements related to alcohol and drug abuse within their states. They are encouraged to work with state legislators to retract legislation that punishes women for substance abuse during pregnancy.

A disturbing trend in legal actions and policies is the criminalization of substance abuse during pregnancy when it is believed to be associated with fetal harm or adverse perinatal outcomes. Although no state specifically criminalizes drug abuse during pregnancy, prosecutors have relied on a host of established criminal laws to punish a woman for prenatal substance abuse (1). As of September 1, 2010, fifteen states consider substance abuse during pregnancy to be child abuse under civil child-welfare statutes, and three consider it grounds for involuntary commitment to a mental health or substance abuse treatment facility (1). States vary in their requirements for the evidence of drug exposure to the fetus or newborn in order to report a case to the child welfare system. Examples of the differences include the following: South Carolina relies on a single positive drug test result, Florida mandates reporting newborns that are "demonstrably adversely affected" by prenatal drug exposure, and in Texas, an infant must be "addicted" to an illegal substance at birth. Most states focus only on the abuse of some illegal drugs as cause for legal action. For instance, in Maryland, the use of drugs such as methamphetamines or marijuana may not be cause for reporting the pregnant woman to authorities (2). Some states also include evidence of alcohol use by a pregnant woman in their definitions of child neglect.

Although legal action against women who abuse drugs prenatally is taken with the intent to produce healthy birth outcomes, negative results are frequently cited. Incarceration and the threat of incarceration have proved to be ineffective in reducing the incidence of alcohol or drug abuse (3–5). Legally mandated testing and reporting puts the therapeutic relationship between the obstetrician–gynecologist and the patient at risk, potentially placing the physician in an adversarial relationship with the patient (6, 7). In one study, women who abused drugs did not trust health care providers to protect them from the social and legal consequences of identification and avoided or emotionally disengaged from prenatal care (8). Studies indicate that prenatal care greatly reduces the negative effects of substance abuse during pregnancy, including decreased risks of low birth weight and prematurity (9). Drug enforcement policies that deter women from seeking prenatal care are contrary to the welfare of the mother and fetus.

Seeking obstetric–gynecologic care should not expose a woman to criminal or civil penalties, such as incarceration, involuntary commitment, loss of custody of her children, or loss of housing (6). These approaches treat addiction as a moral failing. Addiction is a chronic, relapsing biological and behavioral disorder with genetic components. The disease of substance addiction is subject to medical and behavioral management in the same fashion as hypertension and diabetes. Substance abuse reporting during pregnancy may dissuade women from seeking prenatal care and may unjustly single out the most vulnerable, particularly women with low incomes and women of color (10). Although the type of drug may differ, individuals from all races and socioeconomic strata have similar rates of substance abuse and addiction (11).

Pregnant women who do not receive treatment for drug dependence cannot be assumed to have rejected treatment (12). The few drug treatment facilities in the United States accepting pregnant women often do not provide child care, account for the woman's family responsibilities, or provide treatment that is affordable. As of 2010, only 19 states have drug treatment programs for pregnant women, and only nine give priority access to pregnant women (1).

Obstetrician–gynecologists have important opportunities for substance abuse intervention. Three of the key areas in which they can have an effect are 1) adhering to safe prescribing practices, 2) encouraging healthy behaviors by providing appropriate information and education, and 3) identifying and referring patients already abusing drugs to addiction treatment professionals (13). Substance abuse treatment programs integrated with prenatal care have proved to be effective in reducing maternal and fetal pregnancy complications and costs (14).

The use of the legal system to address perinatal alcohol and substance abuse is inappropriate. Obstetrician–gynecologists should be aware of the reporting requirements related to alcohol and drug abuse within their states. In states that mandate reporting, policy makers, legislators, and physicians should work together to retract punitive legislation and identify and implement evidence-based strategies outside the legal system to address the needs of women with addictions. These approaches should include the development of safe, affordable, available, efficacious, and comprehensive alcohol and drug treatment services for all women, especially pregnant women, and their families.

## Resource

Guttmacher Institute. Substance abuse during pregnancy. State Policies in Brief. New York (NY): GI; 2010. Available at: http://www.guttmacher.org/statecenter/spibs/spib_SADP.pdf. Retrieved September 10, 2010.

This report lists policies regarding prosecution for substance abuse during pregnancy and drug abuse treatment options for pregnant women for each state. It is updated monthly.

## References

1. Guttmacher Institute. Substance abuse during pregnancy. State Policies in Brief. New York (NY): GI; 2010. Available at: http://www.guttmacher.org/statecenter/spibs/spib_SADP.pdf. Retrieved September 10, 2010.

2. Paltrow LM, Cohen DS, Carey CA. Governmental responses to pregnant women who use alcohol or other drugs: year 2000 overview. New York (NY): National Advocates for Pregnant Women; Philadelphia (PA): Women's Law Project; 2000.

3. Poland ML, Dombrowski MP, Ager JW, Sokol RJ. Punishing pregnant drug users: enhancing the flight from care. Drug Alcohol Depend 1993;31:199–203.

4. Chavkin W. Drug addiction and pregnancy: policy crossroads. Am J Public Health 1990;80:483–7.

5. Schempf AH, Strobino DM. Drug use and limited prenatal care: an examination of responsible barriers. Am J Obstet Gynecol 2009;200:412.e1–412.e10.

6. At-risk drinking and illicit drug use: ethical issues in obstetric and gynecologic practice. ACOG Committee Opinion No. 422. American College of Obstetricians and Gynecologists. Obstet Gynecol 2008;112:1449–60.

7. Legal interventions during pregnancy. Court-ordered medical treatments and legal penalties for potentially harmful behavior by pregnant women. JAMA 1990;264:2663–70.

8. Roberts SC, Nuru-Jeter A. Women's perspectives on screening for alcohol and drug use in prenatal care. Womens Health Issues 2010;20:193–200.

9. El-Mohandes A, Herman AA, Nabil El-Khorazaty M, Katta PS, White D, Grylack L. Prenatal care reduces the impact of illicit drug use on perinatal outcomes. J Perinatol 2003;23:354–60.

10. Maternal decision making, ethics, and the law. ACOG Committee Opinion No. 321. American College of Obstetricians and Gynecologists. Obstet Gynecol 2005;106:1127–37.

11. Chasnoff IJ, Landress HJ, Barrett ME. The prevalence of illicit drug or alcohol use during pregnancy and discrepancies in mandatory reporting in Pinellas County, Florida. N Engl J Med 1990;322:1202–6.

12. Flavin J, Paltrow LM. Punishing pregnant drug-using women: defying law, medicine, and common sense. J Addict Dis 2010;29:231–44.

13. Safe use of medication. ACOG Committee Opinion No. 331. American College of Obstetricians and Gynecologists. Obstet Gynecol 2006;107:969–72.

14. Armstrong MA, Gonzales Osejo V, Lieberman L, Carpenter DM, Pantoja PM, Escobar GJ. Perinatal substance abuse intervention in obstetric clinics decreases adverse neonatal outcomes. J Perinatol 2003;23:3–9.

Copyright January 2011 by the American College of Obstetricians and Gynecologists, 409 12th Street, SW, PO Box 96920, Washington, DC 20090-6920. All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, posted on the Internet, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without prior written permission from the publisher. Requests for authorization to make photocopies should be directed to: Copyright Clearance Center, 222 Rosewood Drive, Danvers, MA 01923, (978) 750-8400.

Substance abuse reporting and pregnancy: the role of the obstetrician–gynecologist. Committee Opinion No. 473. American College of Obstetricians and Gynecologists. Obstet Gynecol 2011;117:200–1.