IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TAMARA M. LOERTSCHER,

      Plaintiff,

      v.                          Case No. 14-C-870

BRAD D. SCHIMEL, in his official
capacity as ATTORNEY GENERAL
OF THE STATE OF WISCONSIN,
and ELOISE ANDERSON, in her
official capacity as SECRETARY OF
THE DEPARTMENT OF CHILDREN
AND FAMILIES,

      Defendants.

---

## DEFENDANTS' BRIEF IN SUPPORT
## OF COMPULSORY MOTION TO FILE UNDER SEAL

---

Defendants oppose the unsealing of Plaintiff's exhibits upon several grounds.[1]  First, pursuant to Wisconsin and federal law, records regarding juvenile and Child in Need of Protection or Services ("CHIPS") cases must be kept confidential and only open to inspection by certain statutorily identified persons or entities.  Second, the cases cited by Plaintiff in support of her

---

[1]Defendants will be filing a motion to dismiss this matter on January 28, 2015. Nothing in this brief waives their arguments to be expressed in that motion. Moreover, there is no urgency to the motion to unseal; it could be ruled upon following a decision on the motion to dismiss.

motion to unseal are inapt and easily distinguished from cases which affirm Wisconsin's mandate that confidentiality of these records is the rule and disclosure the exception.   Finally, even though inapplicable, the factors listed in *In re Continental Illinois Securities Litigation*, 732 F.2d 1302 (7th Cir. 1984), *reh'g and reh'g en banc denied* (1984) (hereinafter "*Continental*"), weigh against disclosure because there was no public or open forum in which the records were presented, it is not necessary for Plaintiff's prosecution of this facial challenge to unseal these records, the First Amendment does not grant the press and public an absolute right to see these records, and Wisconsin's Legislature has recognized the State's paramount interest in preserving children's privacy rights.

Moreover, this motion should have been filed in the state circuit court where the action concerning Plaintiff's unborn child is, to Defendants' knowledge, still pending.   Only a court "assigned to exercise jurisdiction under" Wis. Stat. ch. 48 may order the disclosure of such records. Wis. Stat. § 48.396(2)(a).  Not only has Plaintiff filed this motion in the wrong court, but she has failed to provide notice and an opportunity to be heard by interested parties, to wit, the unborn child (who is represented by a guardian ad litem in the state court proceeding) and Taylor County.  Accordingly, due to its fatal flaws, the motion to unseal must be denied.

Should, in the alternative, this Court determine that it may rule on this motion, Defendants request that any disclosure be limited in scope to this Court's in camera review.  Under no circumstances should these records be made available to the public and the media.

## I. Wisconsin and federal law dictate that these records should be kept confidential and only opened for inspection by certain parties.

Proceedings under Wisconsin Statute Chapter 48 (the Wisconsin Children's Code) are generally confidential.  *Cf.* Wis. Stat. § 48.299(1).  This applies as well to juvenile proceedings.[2]  Only under limited exceptions, set forth in Wis. Stat. § 48.396(2)-(6), are those confidential records subject to inspection by specific individuals and entities.  None of those exceptions apply here.  Moreover, under no circumstances are the confidential records ever subject to general public disclosure or to disclosure to the media.  Wis. Stat. § 48.396(2)(ag) and (aj).

All of the records Plaintiff seeks to reveal to the public and media are from either the CHIPS case or the administrative matter regarding Loertsher and her unborn child.  To the best of Defendants' knowledge, both of these cases are still pending in Taylor County, Wisconsin.  Only a court "assigned to exercise jurisdiction under" Wis. Stat. ch. 48 may order the limited disclosure

---

[2]*See* Wis. Stat. ch. 938 (the Wisconsin Juvenile Justice Code) which, in relevant part, mirrors the Children's Code with respect to confidentiality.

of such records. Wis. Stat. § 48.396(2)(a).  That court would be the Taylor County Circuit Court where the CHIPS action is pending.

Wisconsin's statutes regarding the confidentiality of records under the Children's Code are very clear: "Those records shall not be open to inspection or their contents disclosed except by order of the court assigned to exercise jurisdiction under [the Children's Code] . . . ." Wis. Stat. § 48.396(2)(a).

Thus, Loertscher may ask the circuit court to open for inspection the CHIPS record and the circuit court will do so unless the court finds, after notice and a hearing, that inspection of the records would result in imminent danger to anyone. Wis. Stat. § 48.396(2)(aj) and (ap).  Significantly, inspection is limited to the person who is the subject of the court record and to person(s) to whom he or she gives written permission to inspect the record. *Id*.  The record is not open to the general public.  *Id*.

Wisconsin promulgated this law in response to the federal Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. § 5106a, which requires states to preserve the confidentiality of all records to protect the rights of the child and the child's parents or guardians and limits disclosure of confidential information to government entities under certain circumstances.  42 U.S.C. § 5106a(b)(2).  *See also* 45 C.F.R. § 1340.14(i) which was promulgated to limit the State's ability to disclose information outside a narrow class of persona and agencies.

Applications to inspect closed children's court records must be made to the juvenile or children's court. *State v. Miller*, 35 Wis. 2d 454, 473, 151 N.W.2d 157 (1967). *See also State v. Bellows*, 218 Wis. 2d 614, 629, 582 N.W.2d 53 (Ct. App. 1998); *In the Interest of K.K.C.*, 143 Wis. 2d 508, 509, 422 N.W.2d 142 (Ct. App. 1988). The procedure is for the juvenile or children's court, upon receipt of a motion or application to inspect confidential documents, to conduct an in camera review of the documents before exercising its discretion. *In re the Termination of Parental Rights to Caleb J.F.*, 2004 WI App. 36, ¶ 39, 269 Wis. 2d 709, 676 N.W.2d 545. Moreover, the *Caleb J.F.* court "conclude[d] that the juvenile [or children's] court must provide notice of such a request to the juvenile and provide an opportunity to be heard." *Id*.

Accordingly, due to the fact that Plaintiff has not filed a motion with the proper court, this motion to unseal must be denied. A further review of Plaintiff's cases and arguments lead to the same conclusion.

## II. The cases cited by Plaintiff are inapt and do not apply in children's cases.

Not one of the cases cited by Plaintiff involves confidentiality of child abuse/maltreatment records in the civil context; only two cases concern juvenile records at all, albeit in the criminal context. The main cases Plaintiff cites in support of disclosure and open records are easily

distinguishable. The holdings of these cases in favor of open records do not apply in the context of children and juvenile proceedings where the Legislature has already considered the issue and determined that children's best interests are a "paramount goal" in Wisconsin. Wis. Stat. § 48.01(1)(a). Thus, none of these cases are persuasive, much less precedential.

In *Nixon v. Warner Communications, Inc.*, 435 U.S 589 (1978), the issue was whether audio tapes which were played in open court in a civil proceeding could be released for broadcast and sale to the public. Plaintiff cites *Nixon* for the proposition that court records are presumptively open for public inspection; there are two problems with that statement. First, Plaintiff fails to include the following language which tempers the "general" presumption of openness: "It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files . . . ." *Id.* at 598. And, more significantly, *Nixon* covers records from *open* court proceedings (such as civil and criminal) and has no application with respect to a closed proceeding. Interestingly, the *Nixon* court also acknowledged that it is the trial court—or in our case, the children's court—which should make the decision as to non-disclosure in its sound discretion, "a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599.

Plaintiff bases most of her motion to unseal upon *Continental*, another civil case which involved neither confidential proceedings nor statutorily designated confidential records. In fact, in *Continental*, a party sought the release of a report prepared by its own attorneys which was introduced in open court, discussed by witnesses on direct and cross examination and relied upon by the court on the record in its decision-making. 732 F.2d at 1305-06. Moreover, the party seeking its non-disclosure was the one who introduced it into evidence and even read excerpts of it into the record. *Id.* at 1305. Understandably, confidentiality was compromised.

The *Continental* court was charged with "balanc[ing] the public's right of access in documents relied on as evidence in civil proceedings against a party's interest in the confidentiality—based primarily upon the attorney-client privilege—of its investigation into the merits of derivative suits brought on its behalf." *Id.* at 1304. The presumption of access to court documents is to be utilized in the context of criminal or civil cases. *Id.* at 1308. There is no direct reference to closed proceedings—such as those in a children's case—but *Continental* favorably quoted *Crystal Grower's Corporation v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980), which sets forth some of the factors weighing in favor of public disclosure of court documents: "First is the general interest in understanding disputes that are presented in a public forum for resolution. Second is the public's interest in

assuring that the courts are fairly run and judges are honest." *Continental*, 732 F.2d at 1314. The key point emphasized by *Nixon* and *Crystal Grower's* is that there must be a proceeding *in a public forum*. Here, the children's court proceedings are closed and kept confidential to protect the children's privacy interests.[3] Not only are records kept confidential, but no one other than those with a direct interest may attend the hearings and the case information is not even available on the Wisconsin Circuit Court Access Program ("CCAP"), the electronic circuit court access information website.

Finally, by its reference to *United States v. Myers*, 635 F.2d 945 (2d Cir. 1980), the court in *Continental* implicitly recognized the distinction if the records sought are from a closed proceeding. *Continental* notes with favor that *Myers*' presumption of access is not absolute and that it "would not apply to evidence entered under seal because, 'with respect to that item of evidence, the session of court was not public.'" 732 F.2d at 1312 (quoting *Myers*, 635 F.2d at 952 n.4). Both courts, thus, acknowledge that the presumption

---

[3]*Continental*, 732 F.2d at 1312, n.16, also references the privacy interests sought to be protected in *In re Knoxville News-Sentinel Company, Inc.*, 723 F.2d 470 (6th Cir. 1983), where a bank was allowed to remove documents from a court file containing its customers' personal financial records. Unlike the plaintiff in *Continental* which did not have any "analogous personal privacy interests," Defendants here seek to protect the personal privacy interests of children and unborn children in general, and Loertscher's unborn child in particular. In *Knoxville News-Sentinel Company*, the court noted that federal law (the Right to Financial Privacy Act) further supported removal and protection of these records. 723 F.2d at 476. Here, Defendants rely upon both state and federal law (CAPTA) to preserve the confidentiality of these records.

upon which Plaintiff bases her entire motion applies only to documents presented in open sessions of court. This is a logical conclusion because documents admitted into evidence or discussed in open court have already been made available to the public. By allowing their further disclosure, no confidentiality will be breached. The exact opposite would happen in this case.

Plaintiff next cites to *Helm v. Kansas*, 656 F.3d 1277 (10th Cir. 2011), and *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943 (7th Cir. 1999), in support of her claim that Defendants bear the burden to establish why these records should be sealed. But, in this case, it is Plaintiff who bears the burden to show why confidential records should be disclosed. In *Helm*, the party in favor of non-disclosure was not able to "overcome the presumption against sealing judicial records simply by pointing out that the records are subject to a protective order in the district court." 656 F.3d at 1292. A protective order from another court is an entirely different magnitude of inquiry in a case where there is a statutory mandate in favor of confidentiality. And, in *Citizens First National Bank of Princeton*, the court was concerned when a district court had given the parties *carte blanche* to declare any and all documents confidential and subject to a protective order without providing any justification whatsoever. 178 F.3d at 945. Neither of these cases applies to the present circumstances.

- 9 -

Here, Defendants are not seeking to seal public records that have been presented in an open court proceeding, and they are not seeking to enforce a protective order. Rather, Plaintiff is seeking to unseal—to the Court, the public and the media—records that the Legislature has declared to be confidential. Under these circumstances, disclosure is the exception to the rule. *Caleb J.F.*, 269 Wis. 2d 709, ¶ 29.

The remaining cases cited by Plaintiff are equally inapt and easily distinguishable. They all involve records and materials either introduced or discussed on the record during open, public proceedings in criminal or civil trials. None of them involve the Children's Code or its cloak of protection for innocent children. In *United States v. Edwards*, 672 F.2d 1289, 1290 (7th Cir. 1982), the media wanted to copy and broadcast an audio-recording which had been admitted into evidence in open court during a criminal trial. In *Union Oil Company of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000), a party to a settlement agreement wanted to have all records of the agreement under seal and sought to close the oral argument. In declining to seal the records and the oral argument, the court noted that "[w]hat happens in the halls of government is a presumptively public business." *Id.* at 568. Here, the children's court proceeding is presumptively confidential.

In *Smith v. United States District Court for Southern District of Illinois*, 956 F.2d 647, 648 (7th Cir. 1992), a non-party sought disclosure of an internal clerk of court memorandum referenced by the court on the record in a public proceeding.   In *United States v. Peters*, 754 F.2d 753, 755 (7th Cir. 1985), a newspaper sought access during a trial to documents not admitted into evidence.   And, in *Mills v. Alabama*, 384 U.S. 214, 215 (1966), the issue was even more attenuated:  the Court considered whether a state can make it a crime for a newspaper to print an editorial on election day urging people to vote a certain way on a specific issue. None of the cases Plaintiff cites discuss the right to access records statutorily designated as confidential or records presented in a closed hearing—one not open to the public or press.   Accordingly, the presumption for open access to court documents in open court proceedings is not relevant in this case.

Even though the last two cases cited by Plaintiff concern closed juvenile proceedings, they do not support the claim for openness in this case.   In *State ex rel. Hegert v. Circuit Court for Waukesha County*, 84 Wis. 2d 435, 267 N.W.2d 309 (1978), the issue concerned the release of juvenile police records.   *Hegert* actually runs counter to Plaintiff's arguments because it held that only the circuit court in which the juvenile proceeding was held could make the determination as to whether the records should be disclosed (to limited individuals).   *Id.* at 446-48.   The state supreme court noted that it

had "also commented in previous cases that an order of the juvenile court is required to release records of the juvenile court." *Id.* at 448. This is because the "interests of the juvenile must be given paramount consideration." *Id.* at 449 (referencing Wis. Stat. § 48.01(2)).

And in *Smith v. Daily Mail Publishing Company*, 443 U.S. 97 (1979), while juvenile records were at issue, the question was again one of prior public disclosure. The court considered whether a state could make it a crime for a newspaper to print the non-public name of a juvenile offender even if the newspaper acquired the name through other, non-judicial public sources. *Id.* at 98. That ruling was expressly narrow. "There [was] no issue before [the court] of unlawful press access to confidential judicial proceedings . . . ." *Id.* at 105. In fact, the Supreme Court emphasized that it "mean[s] to imply nothing about any constitutional questions which might arise from a state policy not allowing access by the public and press to various kinds of official records, such as records of juvenile-court proceedings." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496, n.26 (1975).

Finally, even the First Amendment Law Review article[4] cited by Plaintiff lends scant support to her argument. Instead, it substantiates that the

---

[4]Kelly Crecco, *Striking a Balance: Freedom of the Press Versus Children's Privacy Interests in Juvenile Dependency Hearings*, 11 First Amend. L. Rev. 490 (2013).

interests of the child (or in this case the unborn child) should be considered by the appropriate court and acknowledges that one legitimate, compelling reason that the courtroom should be closed is the child's request for closure. Crecco, *supra*, at 494.  In fact, "[t]he primary reason for maintaining closed dependency courtrooms is to protect the privacy interests of the children involved in the cases." *Id.* at 519-20.

Given the limitations the Supreme Court has placed upon the presumption of open access to court records, and the fact that none of the cases Plaintiff cites addresses a state law's confidentiality requirements with regard to closed court proceedings (in accord with federal law), it is apparent that these cases are inapplicable to the current issue and that a different calculus must be utilized.  When the weight of Wisconsin public policy—as evidenced by the statute's clear and unambiguous language in support of confidentiality and limited disclosure only after review by the state circuit court with jurisdiction over the children's court matter—is balanced against the public's interest in viewing open court records, there is no doubt that the scale tips in favor of non-disclosure.  At the very least, respectfully, this Court is not the court which should be considering this matter.  A motion should be made to the Taylor County Circuit Court and all interested parties (including the unborn child and Taylor County) must be provided an opportunity to respond.

## III. Even under the *Continental* factors, non-disclosure is appropriate and necessary.

The balancing test outlined in *Continental* does not apply in cases where the court proceeding is closed to the public.  Thus, it doesn't apply here.  Assuming, *arguendo*, that this Court (or more appropriately the state circuit court) opts to follow *Continental's* balancing test, the scales still tip in favor of denying this motion to unseal.

The court in *Continental* established three factors to be examined when weighing whether court documents from an open court proceeding should be disclosed to the public:  (1) "the general interest in understanding disputes that are presented in a public forum;" (2) "the public's interest in assuring that courts are fairly run and judges are honest;" and (3) "the public's right of access, guaranteed by the first amendment, to information before the court relating to matters of public interest."  732 F.2d at 1314.

### A. The records sought to be unsealed were not presented in a public forum.

Plaintiff glides over the first factor and fails to acknowledge that these records are excluded from consideration under that factor alone.   The proceeding during which these records were created was not a *public* forum.  There is no public dispute whose hearing any member of the public or the media might attend.  Merely making a facial constitutional challenge to the

act does not automatically convert closed proceedings into open ones.  Based on this undisputed fact alone, Plaintiff fails to meet the first factor.

Plaintiff's reliance on *Edwards* is also unavailing.[5]  The facts in that case are miles away from those present here.  The issue there was "whether the district court erred in refusing to release to the media, for the purpose of copying and broadcasting to the public during the pendency of a criminal trial, an audio recording which had been admitted into evidence and played in open court."  *Edwards*, 672 F.2d at 1290.  It involved a criminal case and records which were admitted in open court—where the press and public were present.  Thus, the case is not applicable when there is a statutorily closed court proceeding.

---

[5]Plaintiff cites, without attribution, to a quote in *Edwards*, 672 F.2d at 1294, from *United States v. Mitchell*, 551 F.2d 1252, 1258 (1976).  Further research reveals that *Mitchell* was reversed by *Nixon*.  Even acknowledging the *Mitchell* quote regarding support for the disclosure of public records, Plaintiff omits the lead sentence in the paragraph leading up to the quote:  "We recognize, as does the Fifth Circuit, that the right here in question is of non-constitutional origin and that in a given case 'a number of factors may militate against public access.'"  *Edwards*, 672 F.2d at 1294 (quoting *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. 1981)).  *Belo*, a case in which the media sought copies of audio tapes entered into the record at a criminal trial, affirmed the Supreme Court that there is no constitutional right to access public court records, rather there is a common-law right.  654 F.2d at 426-27.  Accordingly, the *Belo* court disapproved of other court's erection of strong (constitutional-like) barriers against those who oppose access to court documents.  *Id.* at 434.  The *Belo* court found courts who erect such barriers are misreading of Supreme Court case law and it declined to follow those cases.  *Id.*

Additionally, Plaintiff's records, which might be of more import[6] during an as-applied challenge, are not necessary for the prosecution of her facial challenge.  There is no need to present the intimate details of what occurred to Plaintiff and her unborn child in order to fully litigate this matter. Much less is there any need to present these details to the public and the press.   Plaintiff's assertions that maintaining Wisconsin's preference for confidentiality is akin to hiding[7] unconstitutional conduct is exaggerated. The state circuit court stands as a safeguard to any unconstitutional conduct; it provides Plaintiff with due process rights and an opportunity to challenge the law in the on-going proceeding.  Even if this Court determines that the matter is properly in federal court,[8] there is still no need to publically disclose these records.

---

[6]Defendants are not conceding that, if this were an as-applied challenge, these records would necessarily need to be disclosed to anyone other than the Court.

[7]Plaintiff asserts that Defendants are trying to hide their conduct, but, Defendants were not involved in any aspect of the pending Taylor County actions, so they could not have been engaged in any alleged misconduct.  Plaintiff has not sued any individuals who were engaged in the alleged misconduct.

[8]In their motion to dismiss, Defendants will ask this Court to abstain from proceeding under the principles of *Younger v. Harris,* 401 U.S. 37 (1971), in addition to other grounds for dismissal.

Finally, Plaintiff ignores that the State has a legitimate state interest in maternal, fetal,[9] and child health which will be advanced by the law. The law review article cited by Plaintiff details how disclosure of confidential records might have a detrimental effect on the child's mental health and psychological well-being. Crecco, *supra*, at 523-34. The author explains that the media sometimes sensationalizes cases and "[t]hough these incidents have occurred infrequently, the presence of the media in the courtroom [in children's cases] raises the possibility that confidential information could be released to the public, resulting in harm to the children involved in the case." *Id.* at 522 (footnotes omitted).

---

[9]The Supreme Court in *Roe v. Wade*, 410 U.S. 113, 162-63 (1973), acknowledges that the State has a legitimate interest in the life of unborn children:

> We repeat, however, that the State does have an important and legitimate interest in preserving and protecting the health of the pregnant woman, . . . and that it has still another important and legitimate interest in protecting the potentiality of human life. These interests are separate and distinct. Each grows in substantiality as the woman approaches term and, at a point during pregnancy, each becomes 'compelling.'

Moreover, the Supreme Court has recognized that "there is a substantial state interest in potential life throughout pregnancy." *Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 876 (1992).

Preserving the unborn child's privacy rights is not an attempt to "shield the unconstitutionality" of the act.  To the contrary, it is a recognition that Wisconsin children have privacy rights that require protection.

> Under the Children's Code, the child's best interests are of paramount importance.  *See* § 48.01(2), Stats.  The interests of the child must be weighed against the need of the party seeking the release of the information.  In order to fairly balance those interests, the child whose confidentiality interests are at stake must be represented.

*State v. Bellows*, 218 Wis. 2d 614, 631, 582 N.W.2d 53 (Ct. App. 1998).

Here, absent a public forum and due to the failure to notify necessary parties, Plaintiff further fails to meet the first *Continental* factor.

### B.   Releasing these records to the public and media will not assure that courts are run fairly and judges are honest.

Plaintiff's effort also fails under the second prong of *Continental*: releasing the records to the public and media is not necessary to assure that the courts are run fairly.  Again, Plaintiff starts with a misstatement.  She is not the subject of the children's proceeding in Taylor County:  her unborn child is the person in need of protection or services.  Plaintiff can challenge the law in the pending state court action where the records are already part of the record and can be more easily considered by the state court which already has knowledge of the case and has had an opportunity to see and hear from the parties.  Just as the court in *Belo* noted, strong barriers should not be constructed against those who—like Defendants—oppose the disclosure of

public court documents.  654 F.2d at 434.  Even more so, there should be strong barriers to support those who seek to maintain the confidentiality of closed court proceedings and court records.

Plaintiff next places mistaken reliance upon *Smith*.  At its heart, *Smith* reflects a belief that records relied upon by a court on the record in *open* court should be accessible to the public.  956 F.2d at 649-50.  Moreover, in *Smith*, the court noted that the party opposing disclosure had "not yet identified any consideration which would justify restricting access to [the] document." *Id.* at 650.  That is the exact opposite from the case presented here; Defendants have identified several considerations which not only justify, but mandate that (1) the state circuit court consider a similarly fashioned motion and (2) there are strong State, public policy, and federal interests which augur against disclosure.

For instance, in *In re K.B.*, 894 N.E.2d 1013, 1016 (Ct. App. Ind. 2008), the appellate court reversed a trial court which had allowed the media to access children's court records "to educate the public, to address the community's interest in the welfare of the children, and to give the public new insight into the workings of the trial court and the [Department of Child Services]."  The court of appeals concluded that, while these are "laudable goals, they need not be achieved at the expense of [the minor children's] privacy interests. . . . Public awareness—either about child abuse, our court system, or the DCS—

does not warrant the disclosure of [the minor's Child in Need of Services] records because awareness can be achieved by a variety of less intrusive measures." *Id.* Here, too, Plaintiff can achieve her goals of public education without jeopardizing the confidentiality of her unborn child's records.

Plaintiff argues that she can litigate her case only if the confidential records from her unborn child's closed state court proceeding are released to the public and the media. This is not the case. This is a facial challenge of a state law—it does not require public dissemination of private records.

Public access will not implicate the functioning of the electoral process. It will not show the workings of the Legislative and Executive branches. These are not adequate grounds upon which a mandate for confidentiality can be overturned.

Plaintiff's case, wherever it is appropriately brought, need not release to the public and media the intimate details of circumstances concerning the gestation of Plaintiff's unborn child. If the law is unconstitutional in its enactment and on its face, there is no need for real life examples. Had Plaintiff sincerely wished to prosecute this case (outside of a media whirlwind), she would have filed it under a pseudonym and have sought permission of the state circuit court to have these records made available to whichever court ended up hearing this challenge. Instead, she filed the lawsuit under her own name, has given press conferences about the case and

has itemized precise details of the confidential children's court proceeding in her complaint.

Plaintiff has already exposed enough confidential information (some in violation of the Wisconsin statutes) for the public and press to understand her claims and to evaluate the law in question.  There is no need to expose more confidential information to effectuate the goals she purports to address.  Therefore, this factor, too, weighs in favor of non-disclosure.

### C.   The First Amendment does not grant the press a right to information about a trial superior to that of the general public.

Finally, plaintiff's argument fails under *Continental's* third factor because the public and the press do not have a right to attend closed children's court or juvenile court proceedings.  Wis. Stat. §§ 48.396 and 938.396.

The public and the press do not have a right to access the records or documents from such proceedings.  *Id.*  The public and the press do not have an absolute First Amendment right which supersedes Wisconsin state law on this point.  In *Pack v. Kings County Human Services Agency*, 89 Cal. App. 4th 821, 832 (Ct. App. Cal. 2001), the press sought information from a juvenile court that was not public.  That court started its discussion by noting that "there is no overarching First Amendment right to unfettered access to juvenile court proceedings." *Id.*

Here, the First Amendment rights of the public and press were considered by the Wisconsin Legislature when it weighed the interests of children and decided to follow CAPTA's dictates and mandate confidentiality for children and juvenile proceedings.   The state circuit court—pursuant to a specific statute (and federal law)[10]—is obligated to resolve doubts in favor of non-disclosure.   The confidentiality statutes "mandate confidentiality as a general principle and disclosure as the exception in this discretionary determination regarding the release of juvenile records." *Bellows*, 218 Wis. 2d at 628; *see also Abreu v. Leone*, 992 A.2d 331, 342 (Ct. App. Conn. 2010) (holding that a similar confidentiality statute regarding children's records "embodies 'a broad legislative declaration of confidentiality.'" (citation omitted).   Accordingly, Plaintiff cannot base her motion upon such as assertion.

Children's proceedings are not secret; they are closed to the general public and press.   "Sections 48.26, 48.38, and 48.78, Stats., which mandate confidentiality of records as the general principle and disclosure as the exception, express the legislature's determination that the best interests of the child and the administration of the juvenile justice system require

---

[10]A specific statute takes precedence over a more general statute. *Brotherhood of Maintenance of Way Employees v. CSX Transp., Inc.*, 478 F.3d 814, 817 (7th Cir. 2007).

protecting the confidentiality of police, court and social agency records relating to juveniles." *Hegert*, 84 Wis. 2d at 450-51 (footnote omitted). "Confidentiality is promised to encourage the juvenile, parents, social workers and others to furnish information which they might not otherwise disclose in an admittedly adversary or open proceeding." *Id.* at 451. In enacting the Children's Code and the confidentiality provisions of Wis. Stat. § 48.396, the Wisconsin Legislature set out their "statutory expression of the strong public interest in promoting the best interests of the child and the administration of the juvenile justice system by protecting the confidentiality of police, court, and social agency records relating to juveniles." *Id.* The Legislature has determined that these proceedings—like the one regarding Plaintiff's unborn child—are to be protected even from society's First Amendment rights.

The state circuit court—the court with jurisdiction over the children's court matter—is required to "balance the plaintiffs' need for the information requested against society's interest in protecting the confidentiality of juvenile police records." *Id.* at 452. No such balancing test has been done by the state circuit court. If such a balancing test were done here, there might be same result as in *Hegert*—the records were kept confidential but a police officer was subject to a narrowly limited deposition. *Id.* at 454.

- 23 -

The Wisconsin statutes regarding the confidentiality of juvenile[11] and children's court records "assist in implementing the goals and policies of the Juvenile Justice Code relating to the confidentiality of such records." *Caleb J.F.*, 269 Wis. 2d 709, ¶ 16.  The *Caleb J.F.* court noted that the *Hegert* "court observed that the statutes mandate confidentiality as the general rule and disclosure as the exception, thus expressing the legislature's determination that the best interests of the child and the administration of the juvenile justice system require protecting the confidentiality of police, court and social agency records relating to juveniles." *Id.* ¶ 29.  Even more noteworthy, "[b]oth *Herget* and *Bellows* rest on two fundamental principles: the importance of the confidentiality of juvenile records and the importance of the juvenile court's role as the "'gatekeeper'" of those records." *Id.* ¶ 33.

The holding of *Continental* is limited to open proceedings, and the Supreme Court acknowledges the distinction between closed and open proceedings.  The Supreme Court has held that even civil and criminal trials which are open to the public and the press may be subject to court-ordered

---

[11]Juvenile court records are in Wis. Stat. ch. 938, but their confidentiality provisions (in Wis. Stat. § 939.396) parallel those of the Children's Code (in Wis. Stat. § 48.396)).  Also, "the *Herget* procedures are now codified in Wis. Stat. §§ 48.396(5) and 939.396(5)." *Caleb J.F.*, 269 Wis. 2d 709, ¶ 36.

limitations and restrictions.   In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 n.18 (1980), the Supreme Court cautioned that even open-to-the-public criminal trials might need to be closed and public access curtailed:

> [B]ut our holding today does not mean that the First Amendment rights of the public and representatives of the press are absolute. *Just as a government may impose reasonable time, place, and manner restrictions* upon the use of its streets in the interest of such objectives as the free flow of traffic, see, *e.g.*, *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), *so may a trial judge, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial.*

(Emphasis added).   If a trial court may close a public criminal trial, it necessarily follows that a state circuit children's court may maintain the statutory dictates and keep a juvenile or children's case closed.

Plaintiff's references to *Peters*, *Continental,* and *Mills* all involved matters not at issue here.   *Continental* involved the admission of a document into evidence during an open civil trial.   *Peters* concerned the exclusion of one reporter from public records.   And *Mills* involved a newspaper's ability to issue editorials on election day.   None of these support a hard-and-fast rule that confidential records from a closed proceeding *must* be released to the public or press.

Even an examination of the law review article cited by Plaintiff does nothing to change the outcome of this motion.  Plaintiff, thus, fails to tilt the third *Continental* factor in favor of disclosure.

## IV. The Wisconsin Legislature has recognized the State's strong, legitimate interest in preserving the privacy rights of children who are entangled in the children and juvenile court system.

Plaintiff disregards the statutory language that, in Wisconsin, it is a "paramount goal" to protect the rights of children and to act so that their best interests are preserved.  Wis. Stat. § 48.01(1)(a).  Nothing in *Continental* can overcome that clear statutory expression.  Even though no further justification need be provided, the cases cited by Plaintiff acknowledge that they are limited to open criminal and civil proceedings.  And, the Supreme Court has not ruled on whether states may pass laws to protect the confidentiality of closed proceedings.  *See Cox Broad. Corp.*, 420 U.S. at 496 n.26.

This case is not a challenge to the confidentiality provisions of Wis. Stat. § 48.396.  Should Plaintiff seek to challenge that statute as well, she must amend her complaint.  Based upon the current pleadings, there is no basis for this Court to step into the shoes of the state circuit court, much less rule that Wisconsin's Children's Code's preference for confidentiality to protect children's best interests is not superior to case law regarding open court proceedings.

Moreover, Wisconsin courts have already considered the constitutionality of the confidentiality provisions of past versions of the Children's Code.  In *Banas v. State*, 34 Wis. 2d 468, 473, 149 N.W.2d 571 (1967), the court referenced previous cases and held that Wis. Stat. § 48.38(1) (which is now replaced by Wis. Stat. § 48.396) was "valid implementation of the strong public policy to protect the child and as being within the legislature's power to make reasonable rules for limiting the admission of evidence and to make valid classifications of people for that purpose."

Plaintiff further mistakes the rationale behind maintenance of confidential juvenile and children's records.  It is not merely to protect children from public disclosure about their bad acts, but it is also to protect them from stigma, emotional distress, embarrassment, and other mental health concerns if information about the abuse or neglect they suffered at the hands of their parents is bandied about in the press.  The statutes don't require confidentiality in only juvenile delinquency hearings.  Wis. Stat. § 938.396.  They require it in cases of neglect, maltreatment, and abuse. Wis. Stat. § 48.396.  Federal law also requires confidentiality for such neglected, maltreated, and abused children.  CAPTA, 42 U.S.C. § 5106a(b)(2).

These children deserve a chance to grow and mature in an environment where no one knows about the potentially horrible treatment they suffered. If Plaintiff were correct, there would be no basis to allow a child who had

been starved, beaten, and left in a closet by a parent who was supposed to love and cherish him, to keep that information from his classmates, and the world at large.   That is not what the Legislative intended.   The plain language contradicts this argument.

As a final plea in support of the unsealing of these records, Plaintiff asserts that *she* seeks to have them disclosed to the public.   This is in direct violation of the statutes and it contradicts public policy which seeks to prevent a parent or guardian from causing further pain and public humiliation to a child by exposing her to potential ridicule for the abuse and neglect suffered.   This confidentiality statute is not designed to bar Plaintiff from releasing her own records; it is designed to give Plaintiff's unborn child an opportunity to protect his/her privacy.

Placing these private records in the public record will not accomplish the goals of Plaintiff in her facial challenge to the law.   It will only serve to injure her unborn child and is in direct contradiction to Wisconsin public policy.

**V.     In the alternative, any disclosure should be limited in scope and not accessible to the public and media.**

Assuming that Plaintiff files her motion in the state circuit court and the records are made available to this Court, Defendants shall move this Court for a protective order so that the records are not released to the public and the media.   That same request will be made to the state circuit court.

If, however, this Court determines that, contrary to state law, it will not require Plaintiff to file her motion in the proper court, but instead will intercede in the pending state court action and rule on this motion to unseal, Defendants respectfully urge this Court to temper the disclosure and to limit it to in camera review by this Court. As addressed above, there is no need for disclosure to the public and the media of records concerning Plaintiff's unborn child.

## CONCLUSION

The Court should grant both of Plaintiff's motions to file under seal. Any motion to unseal these records should be made to the appropriate court—the state circuit court—and any disclosure ordered by that court should be limited in scope and covered by a protective order in both state and federal court.

Dated this 23rd day of January, 2015.

Respectfully submitted,

BRAD D. SCHIMEL
Attorney General


s/Maria S. Lazar
MARIA S. LAZAR
Assistant Attorney General
State Bar #1017150

KARLA Z. KECKHAVER
Assistant Attorney General
State Bar #1028242

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-3519 (MSL)
(608) 264-6365 (KZK)
(608) 267-2223 (Fax)
*lazarms@doj.state.wi.us*
*keckhaverkz@doj.state.wi.us*