# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

---

**TAMARA M. LOERTSCHER**

                Plaintiff,                CIVIL ACTION

      v.                                Case No. 14-cv-870

**BRAD D. SCHIMEL**, in his official capacity as
ATTORNEY GENERAL OF THE
STATE OF WISCONSIN, and

**ELOISE ANDERSON**, in her official capacity as
SECRETARY OF THE DEPARTMENT OF
CHILDREN AND FAMILIES

                Defendants.

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

I.    Equitable Abstention Is Not Warranted In This Case ...................................... 3

    A.    42 U.S.C. § 1983 Empowers Federal Courts To Enjoin State Proceedings .......... 3

    B.    Abstention Is The Exception, Not The Rule ........................................... 4

    C.    Under *Sprint Communications*, *Younger* Abstention Does Not Apply Here ......... 6

        1.    The Proceedings Against Ms. Loertscher Under the Act Are Not Criminal Proceedings ................................................................. 8

        2.    The Proceedings Against Ms. Loertscher Under The Act Are Not "Akin To Criminal Prosecutions" For *Younger* Abstention Purposes ............................................................................. 8

            a.    The Act Is Not "In Aid Of And Closely Related To The State's Criminal Statutes" ........................................... 9

            b.    The Act Is Not Intended To "Sanction" Anyone ......................... 11

            c.    The Act Is Not A "Child Welfare Proceeding," And Thus Case Law Recognizing Federal Abstention From Such Proceedings Is Inapposite ........................................... 15

            d.    The Involvement Of The State And Its Investigative Role In Enforcing The Act Does Not Render It Akin To A Criminal Proceeding .................................................. 17

        3.    The Proceedings Against Ms. Loertscher Under The Act Do Not Fall Within The Third *Sprint Communications* Category ....................... 18

    D.    *Younger* Abstention Should Also Not Apply Because The Act Flagrantly And Patently Violates Constitutional Law ........................................... 19

II.    Ms. Loertscher Has Adequately Stated A Claim For Injunctive And Declaratory Relief Under 42 U.S.C. § 1983 ...................................................................... 21

III.    Brad D. Schimel, Wisconsin's Chief Law Enforcement Officer, Is A Proper Defendant For Ms. Loertscher's Claims For State-Wide Injunctive And Declaratory Relief ........................................................................... 25

IV.    Ms. Loertscher Has More Than Adequately Pled Her First And Fourth Amendment Claims ..................................................................... 28

CONCLUSION ................................................................................................ 29

# TABLE OF AUTHORITIES

Page(s)

CASES

*1st Westco Corp. v. Sch. Dist. of Philadelphia,*
   6 F.3d 108 (3d Cir. 1993)....................................................................................27

*ACRA Turf Club, LLC v. Zanzuccki,*
   748 F.3d (3d Cir. 2014)..........................................................................7, 11, 12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)...................................................................................28, 29

*Bd. of Regents v. Tomanio,*
   446 U.S. 478 (1980).........................................................................................24

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)...................................................................................28, 29

*Bennett v. Schmidt,*
   153 F.3d 516 (7th Cir. 1998) ...........................................................................28

*Cnty of Allegheny v. Frank Mashuda Co.,*
   360 U.S. 185 (1959)............................................................................................5

*Cohens v. Virginia,*
   6 Wheat. 264 (1821) ..........................................................................................5

*Colo. River Water Conservation Dist. v. United States,*
   424 U.S. 800 (1976).......................................................................................4, 5

*Crane by Crane v. Indiana High Sch. Athletic Ass'n,*
   975 F.2d 1315 (7th Cir. 1992) ....................................................................21, 22

*Doe v. Smith,*
   429 F.3d 706 (7th Cir. 2005) ...........................................................................28

*Elrod v. Burns,*
   427 U.S. 347 (1976)..........................................................................................22

*Ex parte Young,*
   209 U.S. 123 (1908)......................................................................................3, 25

*Ezell v. City of Chicago,*
   651 F.3d 684 (7th Cir. 2011) ...........................................................................22

*Haw. Hous. Auth. v. Midkiff*,
    467 U.S. 229 (1984) ..............................................................................7

*Hickey v. Duffy*,
    827 F.2d 234 (7th Cir. 1987) ...............................................................4

*Huffman v. Pursue, Ltd*,
    420 U.S. 592 (1975) .................................................................9, 15, 16

*Jennings Water, Inc. v. North Vernon*,
    895 F.2d 311 (7th Cir. 1989) .............................................................22

*Jett v. Dallas Independent School District*,
    491 U.S. 701 (1989) ...........................................................................26

*Juidice v. Vail*,
    430 U.S. 327 (1977) .....................................................................18, 19

*Liedel v. Juvenile Court of Madison Cnty., Alabama*,
    891 F.2d 1542 (11th Cir. 1990) .........................................................16

*McDaniel v. Bd. of Educ. of City of Chicago*,
    956 F. Supp. 2d 887 (N.D. Ill. 2013) .................................................26

*McReynolds v. Merrill Lynch & Co.*,
    694 F.3d 873 (7th Cir. 2012) .............................................................29

*Middlesex Cnty Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) ...........................................................6, 7, 8, 11

*Mir v. Shah*,
    569 Fed. Appx. 48 (2d Cir. 2014) ........................................................8

*Mitchum v. Foster*,
    407 U.S. 225 (1972) .........................................................................3, 4

*Moore v. Sims*,
    442 U.S. 415 (1979) .................................................................15, 16, 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................5

*Mulholland v. Marion Cnty Election Board*,
    746 F.3d 811 (7th Cir. 2014) ..................................................... passim

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989) ................................................................. passim

- iii -

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
    477 U.S. 619 (1986)................................................................................11

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) ...............................................................26

*Patsy v. Bd. of Regents*,
    457 U.S. 496 (1982)................................................................................24

*Pennzoil Co .v Texaco, Inc.*,
    481 U.S. 1 (1987)...................................................................................19

*Peterson v. Lindner*,
    765 F.2d 698 (7th Cir. 1985) ...............................................................23

*Planned Parenthood of Wisconsin, Inc. v. Van Hollen*,
    738 F.3d 786 (7th Cir. 2013) ...............................................................25

*Preston v. Thompson*,
    589 F.2d 300 (7th Cir. 1978) ...............................................................22

*Readylink Healthcare, Inc. v. State Compensation Insurance Fund*,
    754 F.3d 754 (9th Cir. 2014) .................................................................7

*Reynolds v. Sims*,
    377 U.S. 533 (1964)................................................................................27

*Robinson v. California*,
    370 U.S. 660 (1962)................................................................................15

*Roe v. Wade*,
    410 U.S. 113 (1973)................................................................................15

*Savory v. Lyons*,
    469 F.3d 667 (7th Cir. 2006) ...............................................................24

*Searcy v. Strange*,
    No. 14-02-8-CGN, 2015 WL 328728, ___ F. Supp. ____ (S.D. Ala. Jan. 23,
    2015) .......................................................................................................27

*Sprint Communications v. Jacobs*,
    134 S.Ct. 584 (2013)......................................................................... passim

*State ex rel. Angela M.W. v. Kruzicki*,
    561 N.W.2d 729 (Wis. 1997).................................................................10

*State v. City of Oak Creek*,
    232 Wis. 2d 612 (2000) .........................................................................26

*Steffel v. Thompson*,
 415 U.S. 452 (1974) .................................................................................23

*Swanson v. Citibank, N.A.*,
 614 F.3d 400 (7th Cir. 2010) ............................................................28, 29

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
 252 F.3d 316 (4th Cir. 2001) ...................................................................27

*Women's Emergency Network v. Bush*,
 323 F.3d 937 (11th Cir. 2003) .................................................................27

*Wudtke v. Davel*,
 128 F.3d 1057 (7th Cir. 1997) .................................................................25

*Younger v. Harris*,
 401 U.S. 37 (1971).............................................................................. passim

*Zinermon v. Burch*,
 494 U.S. 113 (1990)..................................................................................24

## STATUTES

28 U.S.C. § 2201 .............................................................................................23

28 U.S.C. § 2283 ...............................................................................................3

42 U.S.C. § 1983 ...................................................................................... passim

42 U.S.C. § 5101 .............................................................................................15

Wis. Stat. § 48.01 ...........................................................................................12

Wis. Stat. § 48.02 ...............................................................................10, 12, 15

Wis. Stat. § 48.133 .....................................................................................13, 14

Wis. Stat. § 48.193 .........................................................................................13

Wis. Stat. § 48.207 .........................................................................................13

Wis. Stat. § 48.347 .........................................................................................13

Wis. Stat. § 48.685 .........................................................................................13

Wis. Stat. § 48.981 .....................................................................................13, 14

Wis. Stat. § 948.01 ................................................................................................10

Wis. Stat. § 948.03 ................................................................................................16

**OTHER AUTHORITIES**

Kenneth A. De Ville & Loretta M. Kopelman, *Fetal Protection in Wisconsin's Revised Child Abuse Law: Right Goal, Wrong Remedy*, 27 J.L. Med. & Ethics 332, 332 (1999) ..................................................................................................10

Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2944 (3d ed.) ..............................21, 22

## INTRODUCTION

Defendants' agents subjected Plaintiff Tamara Loertscher, a Wisconsin citizen, to multiple proceedings under 1997 Wisconsin Act 292 ("the Act") in violation of her federal constitutional rights.  Ms. Loertscher's Complaint contains detailed factual allegations concerning the constitutional torts committed against her by Defendants' agents acting under the authority granted them by the Act.  State actors seized Ms. Loertscher's private medical information and initiated adversarial proceedings against her.  She was then ordered detained, coerced into unwanted medical treatment, and jailed until she signed a consent decree authorizing continued state "supervision" and access to her private medical information.  State officials also issued a "child maltreatment determination" finding that Ms. Loertscher had abused her less-than 14 week old fetus.  All of this happened without appointment of counsel for Ms. Loertscher.

Although Ms. Loertscher gave birth on January 23, 2015, to a healthy baby boy, the consent decree does not terminate nor are its conditions altered by the birth of the child.  By its terms, the consent decree remains in place until March 22, 2015, as does the appointment of the guardian ad litem appointed for Ms. Loertscher's fetus.  The child maltreatment determination will remain in place indefinitely unless it is withdrawn or overturned on appeal.  Moreover, as a Wisconsin woman capable of becoming pregnant, Ms. Loertscher could again be subject to the Act if it remains the law of the state even after the current proceedings are concluded.  Because the constitutional violations Ms. Loertscher suffered are ongoing and capable of repetition, Ms. Loertscher appropriately seeks preliminary and permanent injunctive relief against any enforcement of the Act.  And because the Act, by its terms and through its enforcement

mechanisms, violates numerous constitutional protections, Ms. Loertscher also seeks a declaratory judgment that the Act is facially unconstitutional.

In response to the detailed account of numerous constitutional violations set forth in Ms. Loertscher's Complaint, Defendants filed a motion to dismiss contending this Court should never reach the merits of Ms. Loertscher's constitutional claims.  The primary thrust of Defendants' arguments is that principles of comity and federalism demand that this Court abstain from exercising the jurisdiction granted it by Congress, and that Plaintiff should instead be required to present any grievances she has concerning the Act's enforcement to State authorities.  These arguments, however, are contrary to federal law.

Critically, Defendants ignore the Supreme Court's recent unanimous decision in *Sprint Communications v. Jacobs*, 134 S.Ct. 584, 591 (2013), which held that it is reversible error to apply *Younger* abstention in favor of state proceedings outside the three specific categories expressly recognized by the United States Supreme Court.  *Sprint Communications* effected a sea-change in the application of the *Younger* abstention doctrine and, as has already been expressly recognized by the Seventh Circuit, makes clear that lower federal courts had erroneously attributed far greater breadth to the doctrine than is warranted by Supreme Court precedent.  Nonetheless, Defendants urge this Court to commit the same error the Supreme Court corrected in *Sprint Communications* by applying *Younger* abstention without regard to its now clearly-delineated boundaries.  Because the proceedings against Ms. Loertscher do not fall into one of the three categories of cases warranting *Younger* abstention, the doctrine does not apply here.  Moreover, the flagrantly and patently unconstitutional nature of the Act makes proceedings under its aegis an exception to *Younger* abstention doctrine in any event.

Additionally, Defendants contend that this Court should prohibit Ms. Loertscher from invoking the federal remedies provided by 42 U.S.C. § 1983 until she has first sought relief in the state proceedings brought against her under the Act. But as Defendants concede, no such exhaustion requirement exists for Section 1983 claims. Defendants' remaining arguments all appear to rest upon misunderstandings of applicable law including: the meaning of the term "adequate remedy at law"; the propriety of suing defendants in their official capacity for injunctive relief under the *Ex parte Young* doctrine; and Federal Rule of Civil Procedure Rule 8's notice pleading requirements. Because there is no reason for this Court to abstain from exercising its jurisdiction—in fact, the exercise of such jurisdiction precisely fits the role of the federal courts in vindicating constitutional rights—and because Ms. Loertscher has sued the right defendants and has properly pled her claims, Defendants' motion should be denied.

## I.    Equitable Abstention Is Not Warranted In This Case

### A.    42 U.S.C. § 1983 Empowers Federal Courts To Enjoin State Proceedings

Under 42 U.S.C. § 1983, federal courts are empowered to enjoin ongoing state proceedings where, as here, those proceedings violate the federal plaintiff's constitutional rights. In *Mitchum v. Foster*, 407 U.S. 225 (1972), the Supreme Court held that suits for equitable relief brought under Section 1983 are "expressly authorized by Act of Congress," and are therefore an exception to the Federal Anti-Injunction Act, 28 U.S.C. § 2283, which otherwise bars federal courts from enjoining ongoing state proceedings. As the Court explained, the test for whether a federal statute falls within the "expressly authorized" exception to the Anti-Injunction Act is "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id*. at 238. Applying this test, the Court found that Section 1983's enactment following the Civil War—"for the express purpose of enforcing the Provisions of the Fourteenth Amendment"—was

part of the Reconstruction Era reconfiguration of the federal system during which "the role of the

Federal Government as guarantor of basic federal rights against state power was clearly

established." *Id.* at 239.  Section 1983 by design "opened the federal courts to private citizens,

offering a *uniquely federal remedy* against incursions under the claimed authority of state law

upon the rights secured by the Constitution." *Id.* (emphasis added).  As the Court explained:

> [t]he very purpose of § 1983 was to interpose the federal courts between the States and
> the people, as guardians of the people's federal rights—to protect the people from
> unconstitutional action under color of state law, "*whether that action be executive,
> legislative, or judicial.*"

*Id.* at 242 (emphasis added) (internal citations omitted).  Consequently, the Court held the

equitable remedy provided by Section 1983 could be given its intended scope only if a federal

court is empowered to enjoin ongoing state proceedings that violate the Constitution.  *Id.* at 242-

43;  *see also Hickey v. Duffy*, 827 F.2d 234, 241 (7th Cir. 1987) (recognizing that *Mitchum*

specifically authorized federal courts to enjoin on going state proceedings when needed to

"vindicate the Constitution").   In short, Section 1983 was enacted—and federal courts were

empowered to provide equitable relief—precisely for the purpose of halting the type of

constitutional harm Wisconsin has inflicted and will continue to inflict on Ms. Loertscher and

other Wisconsin citizens who fall within the ambit of 1997 Wis. Act 292.

### B.        Abstention Is The Exception, Not The Rule

For this and other reasons, the Supreme Court has expressly and repeatedly recognized

the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  As the Court

has explained when considering *Younger* abstention:

> Our cases have long supported the proposition that federal courts lack the
> authority to abstain from the exercise of jurisdiction that has been conferred. "We
> have no more right to decline the exercise of jurisdiction which is given, than to

usurp that which is not given.  The one or the other would be treason to the Constitution.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 358 (1989) (citing *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821)).  Accordingly, the Court has reiterated on multiple occasions that "[a]bsention from the exercise of federal jurisdiction is the exception, not the rule," and that the abstention doctrine is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (citing *Colo. River*, 424 U.S at 813); *see also, e.g., NOPSI*, 491 U.S. at 368 ("only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."); *Cnty of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) ("[a]bdication of the obligation to decide cases" can be justified under the abstention doctrine only in "exceptional circumstances").

The Court has further emphasized that "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter."  *Sprint Commc'ns* at 588; *see also Moses H. Cone*, 460 U.S. at 15 ("The pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction.") (quoting *Colo. River*, 424 U.S. at 817); *NOPSI*, 491 U.S. at 373 ("[T]here is no doctrine that the availability or even pendency of state judicial proceedings excludes the federal courts.").  Indeed, a federal court must decide whether to dismiss a federal action in favor of parallel state court litigation "with the balance *heavily* weighted in favor of the exercise of jurisdiction."  *Moses H. Cone*, 460 U.S. at 16 (emphasis added).  Accordingly, federal law requires this Court to exercise jurisdiction over Ms. Loertscher's claims for injunctive and declaratory relief unless those claims clearly fall within one of the narrowly delineated federal abstention doctrines.

- 5 -

### C.  Under *Sprint Communications*, *Younger* Abstention Does Not Apply Here

Defendants contend that the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971), requires this Court to dismiss Ms. Loertscher's claims.  But this position is foreclosed by the Supreme Court's recent unanimous decision in *Sprint Communications v. Jacobs*.  134 S.Ct. 584, 591 (2013).  There, the Court held that *Younger* abstention may be invoked *only* in the three "exceptional" categories of cases previously recognized by the Court in *NOPSI*:   1) pending state criminal proceedings; 2) "particular state civil proceedings that are akin to criminal prosecutions"; and 3) proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts."  *Id*. at 588.  Any application of *Younger* outside of these specific and previously delineated categories of cases, the Court held, is error.  *Id*. at 588, 593-94 ("[T]o guide other federal courts, we today clarify and affirm that *Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, *but no further*.") (emphasis added).

Defendants ignore *Sprint Communications*, and apply an earlier, now superseded, analysis drawn solely from the factors discussed in *Middlesex Cnty Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  Thus Defendants contend that *Younger* abstention applies whenever there is: 1) an ongoing state proceeding; 2) that implicates important state interests; and 3) affords an adequate opportunity to raise constitutional challenges in the state proceeding.  (Def. Br. at 8).  However, this argument invites the same error that the Supreme Court specifically corrected in *Sprint Communications*.  There, the Eighth Circuit concluded that *Younger* abstention was appropriate, reasoning that the doctrine applied whenever these three *Middlesex* conditions exist.  The circuit court's analysis, the Supreme Court explained, erroneously "attribute[s] to this Court's decision in *Middlesex* extraordinary breadth."  *Sprint Commc'ns*, 134 S. Ct at 593.  Instead, the Court held, the *Middlesex* conditions are not

dispositive, but are rather "*additional* factors appropriately considered by the federal court before invoking *Younger*."  *Id.* (emphasis in original).  As the Court explained:

> Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest.  That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule."

*Id.* (citing *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)).

In the year since *Sprint Communications* was decided, federal circuit courts have heeded its directive to apply *Younger* only in favor of state proceedings falling within one of the three recognized categories and have confirmed that abstention is not appropriate simply because the *Middlesex* conditions are present.  Thus the Seventh Circuit held in *Mulholland v. Marion Cnty Election Board*, 746 F.3d 811, 816 (7th Cir. 2014), that, outside the three "exceptional situations" recognized in *Sprint Communications*, "*Younger* abstention is not appropriate even when there is a risk of litigating the same dispute in parallel and redundant state and federal proceedings."  It also expressly recognized that, after *Sprint Communications*, the *Middlesex* factors in themselves do not define the reach of *Younger* abstention, even though this was the approach that had previously been applied in the Circuit.  *Id.*  Likewise, in *Readylink Healthcare, Inc. v. State Compensation Insurance Fund*, 754 F.3d 754, 758 (9th Cir. 2014), the Ninth Circuit acknowledged that the Circuit's previous reliance on the three-part *Middlesex* test alone to determine whether *Younger* abstention applied was no longer viable after *Sprint Communications*, and reversed a district court's application of *Younger* outside of one of the three recognized categories.  *See also ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d, 127, 137 (3d Cir. 2014) (reversing application of *Younger* outside *Sprint* categories and noting that *Sprint* acknowledged "that lower courts were inappropriately treating the three *Middlesex* factors as a

stand-alone test"); *Mir v. Shah*, 569 Fed. Appx. 48, 50 (2d Cir. 2014) (noting that the district

court's analysis using the three-part *Middlesex* test was no longer applicable after *Sprint*).

Thus, after *Sprint Communications*, whether or not the state's asserted interest in

proceedings under the Act may be characterized as "important" does not determine whether

*Younger* abstention applies.  The correct inquiry in this case, then, is whether the proceedings

under the Act fall within one of the three categories of proceedings expressly recognized in

*Sprint Communications* and *NOPSI*.  Neither the Taylor County "unborn child" CHIPS

proceeding nor the child maltreatment determination administrative proceeding—both of which

solely flow from the challenged Act—fall within one of these categories.  Accordingly,

abstention is foreclosed and this Court must exercise its jurisdiction to adjudicate Ms.

Loertscher's claims for equitable and declaratory relief.

### 1.     The Proceedings Against Ms. Loertscher Under the Act Are Not Criminal Proceedings.

Because neither the "unborn child" CHIPS proceeding nor the administrative proceeding

brought against Ms. Loertscher under the Act are criminal proceedings, they do not fall within

the first and original category of cases that give rise to *Younger* abstention.  *See Sprint*

*Commc'ns*, 134 S.Ct at 588.

### 2.     The Proceedings Against Ms. Loertscher Under The Act Are Not "Akin To Criminal Prosecutions" For *Younger* Abstention Purposes

Nor are the proceedings brought against Ms. Loertscher under the Act the type of civil

enforcement proceedings that are "akin to criminal prosecutions," the second category of

proceedings recognized by *Sprint Communications* as giving rise to *Younger* abstention.  *See*

*Sprint Commc'ns*, 134 S.Ct at 592; *Mulholland*, 746 F.3d at 816 (under *Sprint,* "the critical

consideration in evaluating a state civil proceeding is how closely it resembles a criminal

prosecution.").   As the Court explained in *Sprint Communications*, civil proceedings that have

been recognized as quasi-criminal in nature for purposes of *Younger* abstention share certain distinguishing characteristics: 1) they are "in aid of and closely related to the State's criminal statutes"; 2) they "are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act"; 3) a state actor is a party to the proceeding and often initiates the proceedings; 4) investigations are commonly involved, often culminating in the filing of a formal complaint or charges. *Sprint Commc'ns*, 134 S. Ct. at 591-92.

While the latter two conditions apply to proceedings under the Act, the presence of these two factors does not warrant *Younger* abstention after *Sprint Communications*, as the Seventh Circuit made clear in *Mulholland*.  *See* 746 F.3d  at 816-17 (holding proceeding was initiated by state in its sovereign capacity and involved an investigation that could lead to formal charges was not sufficient to render the proceeding quasi-criminal for *Younger* abstention purposes). Rather, the critical inquiry is whether the state proceedings are "in aid of and closely related to the State's criminal statutes,"  and are "initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Sprint Commc'ns*, 134 S. Ct. at 591, 592. Neither of these characteristics is present in the proceedings under the Act at issue here.

### a.    The Act Is Not "In Aid Of And Closely Related To The State's Criminal Statutes"

*Huffman v. Pursue, Ltd*, 420 U.S. 592 (1975), the origin of the "civil *Younger*" doctrine, extended *Younger* to a civil nuisance action brought by state officials to abate the showing of obscene films in a movie theatre on the ground that the nuisance action was "more akin to a criminal prosecution than are most civil cases" because it was "both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials."  *Id*. at 604. Similarly, *Trainor v. Herandez* applied *Younger* abstention in favor of a state action to recover welfare payments allegedly obtained by fraud, explaining that the state also had the option of

- 9 -

vindicating the integrity of its welfare program through criminal prosecutions; therefore the civil enforcement proceeding was akin to a criminal one.  431 U.S. 434, 444 (1977).

Proceedings under the Act have no corollary in Wisconsin's criminal code and are thus markedly different from these civil proceedings warranting *Younger* abstention.  Indeed, none of Wisconsin's criminal prohibitions of child abuse, child neglect, and child maltreatment apply to an "unborn child."  The Act amended Chapter 48, Wisconsin's civil Children's Code, in direct response to the Wisconsin Supreme Court's decision in *State ex rel. Angela M.W. v. Kruzicki*, 561 N.W.2d 729, 740 (Wis. 1997), holding that the definition of a "child" as a "person who is less than 18 years of age" does not include a fetus.  *See* Kenneth A. De Ville & Loretta M. Kopelman, *Fetal Protection in Wisconsin's Revised Child Abuse Law:  Right Goal, Wrong Remedy*, 27 J.L. Med. & Ethics 332, 332 (1999).  Instead, the court held, when the legislature wants to regulate in this context, it must do so explicitly.  *Angela M.W.* 561 N.W. at 740.  The Act thus inserted into the Children's Code  a definition of "unborn child," as distinct from, and additional to, the definition of "child" previously existing in Chapter 48.  *Compare* Wis. Stat. § 48.02(2) ("Child" means "a person who is less than 18 years of age"), *with* Wis. Stat. § 48.02(19) ("'Unborn child' means a human being from the time of fertilization to the time of birth").

But while the Act extended the civil children's code to "unborn children" and their "adult expectant mothers,"  it made no changes to Wisconsin's criminal statutes.  There is no crime of abuse or neglect against a fertilized egg, embryo, or fetus in Wisconsin.  *See* Wisconsin Code Chapter 948 (Crimes Against Children).  Wisconsin's criminal code defines a "child" as "a person who has not attained the age of 18 years,"  and includes no definition of "unborn child."  Wis. Stat. § 948.01(1).  Because *Angela M.W.* holds, as matter of Wisconsin law, that this definition of "child" does not include a fetus, Wisconsin law governing crimes against children

could not apply to "unborn children," as a matter of state law, in the absence of a specific legislative enactment.[1]  Moreover, conduct regulated by the Act has no equivalent criminal sanction under Wisconsin law.  Adult use of alcohol is legal in Wisconsin (as it is in every state ) and the use of controlled substances is not itself the subject of state criminal prohibitions—only possession and efforts at distribution are criminalized under Wisconsin law.  *See* Wis. Stat. § 961.41(1m) (criminalizing illegal "possession with intention to manufacture, distribute or deliver" controlled substances, but not the mere use of a controlled substance).  In short, none of the conduct regulated by the Act is criminalized under Wisconsin law, and thus proceedings under the Act cannot be "in aid of and closely related to" the State's criminal statutes.

### b.    The Act Is Not Intended To "Sanction" Anyone

Under *Sprint Communications* civil proceedings found "akin to criminal prosecutions" for *Younger* abstention purposes were those intended to sanction the federal plaintiff for some wrongful act.  *See* 134 S. Ct at 592.  Thus in *Middlesex* the Court applied *Younger* abstention to a state-bar disciplinary proceeding sanctioning an attorney for alleged misconduct in connection with a criminal prosecution.  457 U.S. 423 (1982).  Likewise, in *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986), *Younger* abstention was found to apply to a state enforcement action seeking sanctions for violation of the state's anti-discrimination statutes.  Yet nothing in the Act's Statement of Legislative Purpose suggests that, like the enforcement proceedings in *Middlesex* or *Dayton*, proceedings under the Act are intended to sanction wrongful conduct.  As the Third Circuit explained in *ACRA Turf Club*, "[s]anctions are retributive in nature and are typically imposed to punish the sanctioned party for some wrongful act."  748 F.3d at 140 (citing *Sprint Commc'ns*, 134 S. Ct. at 592).    Thus the court held that

---

[1] Of course, if such a law were enacted, it would not undermine Ms. Loertscher's arguments in favor of federal jurisdiction over her constitutional claims—such a criminal law would be facially unconstitutional because it too would violate substantive due process rights and equal protection guarantees.

"negative consequences are not the same thing as sanctions," and did not render the proceedings at issue "akin to a criminal prosecution" for purposes of *Younger* abstention. *Id*. What matters, therefore, is whether the law authorizing the state proceedings implements those proceedings as a means of assigning moral culpability and punishment for past acts.

In the present case, although numerous negative consequences flow from Defendants' enforcement of the Act (*see* ECF No. 14), those consequences do not constitute "sanctions" for purposes of *Younger* abstention. This is because, by its terms, the Act is intended to "assist" (not punish) "expectant mothers."[2] The Act's stated goals, as set out in the Statement of Legislative purpose, include "protect[ing]…unborn children" and "assisting…the expectant mothers of unborn children…in fulfilling their responsibilities as…expectant mothers," Wis. Stat. § 48.01(1)(a); "recogniz[ing] that unborn children have certain basic needs which must be provided for," Wis. Stat. § 48.01(1)(am); and "ensur[ing] that unborn children are protected against the harmful effects resulting from the habitual lack of self-control of their expectant mothers in the use of alcohol beverages, controlled substances or controlled substance analogs, exhibited to a severe degree." Wis. Stat. § 48.01(1)(bm). Indeed, all the stated purposes of the Act focus on purportedly ensuring the wellbeing of the fertilized egg, embryo, or fetus (all of which fall within the Act's definition of "unborn child," *see* Wis. Stat. § 48.02(19))—none concern sanctioning the expectant mother for any alleged wrongful conduct.

That pregnant women suffer drastic and unconstitutional deprivations of their civil liberties under the Act—constitutional violations which form the basis for this suit—is no evidence that the Act is designed to sanction such women. To the contrary, all losses of pregnant women's civil liberties under the Act are purportedly incidental to measures designed to promote

---

[2] Of course, what Ms. Loertscher experienced in this case was nothing remotely akin to "assistance"—but the Act's violation of constitutional rights does not convert it, for *Younger* abstention purposes, into a state law intended to sanction conduct.

fetal health. *See, e.g.*, Wis. Stat. §§ 48.193(1)(a)-(c) & 48.133 (pregnant woman may be ordered into custody based on "showing satisfactory" to a judge that, *inter alia*, "there is a substantial risk that the physical health of the unborn child, and of the child when born, will be seriously affected or endangered unless the expectant mother receives prompt and adequate treatment for that habitual lack of self-control"); Wis. Stat. § 48.207(1m) (listing places where adult expectant mother found to meet criteria of Section 48.133 may be involuntarily held in custody); Wis. Stat. § 48.347 (listing authorized "dispositions" of "unborn child of adult expectant mothers" falling under Section 48.133, including involuntary court-mandated counseling, supervision, placement outside her home at an inpatient drug treatment facility, or other "special treatment or care"). In short, none of the state actions authorized by the Act are directed at sanctioning expectant mothers.

The "child maltreatment" administrative finding issued against Ms. Loertscher in this case does not alter this analysis and does not convert proceedings under the Act into the kind of quasi-criminal proceeding that warrants *Younger* abstention. One of the many additions to Wisconsin's Children's Code under the Act was the amendment of Wisconsin Statute Section 48.981—which sets out procedures for reporting,  investigating, and substantiating allegations of child abuse and neglect—to also include "abused unborn children." *See* 1997 Wis. Act 292, § 260 (Wis. Stat. 48.981 title amended to read "Abused or neglected children *and abused unborn children*."). Thus, under the Act, the pre-existing statutory mechanism for substantiating charges of child abuse, and issuing findings of proven child abuse that preclude employment in designated caregiving professions, *see* Wis. Stat. §§ 48.685(4m)(a) & (b)(4); 50.065(4m)(a)(4) & (b)(4), is used against women like Ms. Loertscher with respect to eggs, embryos, or fetuses. *See* (Compl., ECF No. 1 ¶¶ 73-74; Ex. M, ECF No. 1-14; Ex. N, ECF No. 1-15); eWiSACWIS

- 13 -

database, http://dcf.wisconsin.gov/wisacwis/knowledge_web/ (Wisconsin Statewide Automated

Child Welfare Information System database and registry, which includes records of proceedings

under Wis. Stat. § 48.981).

However, nothing in the Act's extensive Statement of Legislative Purpose addresses this

amendment, or suggests any intention to use the pre-existing Children's Code to sanction

pregnant women for conduct believed to be wrongful.  The mechanisms established by the

Children's Code predated the Act and were necessarily designed to encompass conduct that

could also be criminal, namely child abuse and neglect.  In that context, administrative findings

of child abuse and neglect of might form part of liability and sanctions imposed for past

misconduct.  But the Act's use of the same infrastructure does not compel the same conclusion.

This is because the Act, as previously noted, had no backwards looking purpose whatever—

instead, it purportedly was designed solely to promote the health and development of fetuses and

to "assist" their pregnant mothers.  The Act merely made use of existing administrative

procedures, and the specific proceeding in this case does not constitute a quasi-criminal action in

its own right.

Moreover, the administrative finding issued in Ms. Loertscher's case cites as its sole

basis an alleged "violation" of Wisconsin Statute 48.133.  (Compl., Ex. M, ECF No. 1-14).  The

statute cited, however, simply empowers a juvenile court to exercise *jurisdiction* over an adult

expectant mother who purportedly meets the statutory criteria, and does not set out any

prohibitions on *conduct*.  *See* Wis. Stat. § 48.133 (juvenile court has jurisdiction over expectant

mother who "habitually lacks self-control in the use of alcohol beverages, controlled substances

or controlled substance analogs, exhibited to a severe degree, to the extent that there is a

substantial risk that the physical health of the unborn child, and the child when born, will be

- 14 -

seriously affected or endangered unless the expectant mother receives prompt and adequate treatment for that habitual lack of self-control." )  Thus, on its face, the determination itself makes clear that it cannot be intended to sanction wrongful conduct, since no conduct is prohibited by the statute cited.[3]

**c.    The Act Is Not A "Child Welfare Proceeding," And Thus Case Law Recognizing Federal Abstention From Such Proceedings Is Inapposite**

Defendants rely heavily on *Moore v. Sims*, 442 U.S. 415 (1979), and other cases involving challenges to state child welfare proceedings, for the proposition that federal courts should abstain from enjoining state proceedings involving "domestic relations." (Def. Br. at 8-9). Having no connection to an asserted state concern with fertilized eggs, embryos, or fetuses, these cases are all inapposite.  Instead, they involved challenges to state proceedings involving the welfare of a child in being, and all of them concerned allegations of conduct that was the subject of state criminal prohibitions—the physical abuse of an existing child.  A fertilized egg, embryo, or fetus is not a child—not under the federal constitution, *see Roe v. Wade*, 410 U.S. 113, 158 (1973); the federal Child Abuse Prevention and Treatment Act, *see* 42 U.S.C. § 5101, *et seq*; and not even under Wisconsin's civil Children's Code, which clearly distinguishes the two, *see* Wis. Stat. §§  48.02(2) &  48.02(19) (providing separate definitions for "child" and "unborn child").

In *Moore*, the Supreme Court determined that *Younger* abstention applied to a state proceeding removing children from a home on the grounds of alleged battery by their father, noting that "removal of a child in a child-abuse context is, like the public nuisance statute involved in *Huffman*, 'in aid of and closely related to criminal statutes,'"  which of course

---

[3] Instead, the determination purports to rest entirely on Ms. Loertscher's status as a person over whom the juvenile court has exercised jurisdiction pursuant to the Act.  Therefore the administrative proceeding under the Act cannot be "akin to a criminal proceeding" for the additional reason that status offenses cannot give rise to criminal liability. *See Robinson v. California*, 370 U.S. 660 (1962) (statute making it a criminal offense for a person to be addicted to the use of narcotics violates constitution).

criminalize physical battery.  442 U.S. 415, 423 (1979) (quoting *Huffman*, 420 U.S. at 604); *see id*. at 419 (medical examination revealed that the children subject to the challenged proceeding had sustained extensive physical injuries, and one was hospitalized for 11 days).  Applying *Moore*, in *Brunken v. Lance*, the Seventh Circuit determined that *Younger* abstention applied to a father's constitutional challenge to a state child custody proceeding arising out of his alleged sexual abuse of his three-year-old daughter.  807 F.2d 1325, 1327, 1330-31 (7th Cir. 1986).  In so doing, the court noted the close relationship between the child custody proceedings at issue and state criminal proceedings.  *Id*. at 1330.  Of course, like physical battery, sexual assault on a child is criminalized in every state.  *See, e.g.,* Wis. Stat. §§ 948.03(2) (intentionally causing bodily harm to a child is a felony); 948.02 (sexual assault on a child is a felony).  Similarly, following *Moore*, the Eleventh Circuit applied *Younger* abstention to a stepfather's constitutional challenge to a child welfare proceeding involving his alleged physical abuse of his minor stepson on the ground that cases involving child abuse are "in aid of and closely related to state criminal statutes."  *Liedel v. Juvenile Court of Madison Cnty., Alabama*, 891 F.2d 1542, 1546 (11th Cir. 1990).

Here, unlike the proceedings at issue in the *Moore* line of cases, there is no criminal statute addressing the conduct that can bring a pregnant woman within the ambit of the challenged Act and, in fact, none of the conduct alleged in the current state proceedings against Ms. Loertscher could subject her to criminal prosecution.  Moreover, a grant of the relief Ms. Loertscher seeks in this federal civil rights action—an injunction prohibiting any enforcement of the Act in Wisconsin—in no way interferes with the State's ability to remedy neglect and abuse of a child in being, which was the important state interest recognized in *Moore*. The Act was simply grafted onto the existing statutory infrastructure for civil child abuse and neglect

proceedings, and an injunction prohibiting enforcement of the Act would leave these pre-existing enforcement statutes entirely intact.  Indeed, unlike in *Moore*, 442 U.S at 422-23, where the federal due process challenge was directed at "virtually every aspect of child-abuse proceedings in Texas," here Ms. Loertscher's challenge concerns only the Act itself, which is entirely severable from the pre-existing Children's Code upon which it was grafted.

> **d.    The Involvement Of The State And Its Investigative Role In Enforcing The Act Does Not Render It Akin To A Criminal Proceeding**

Finally, as *Mulholland* makes clear, the fact that the proceedings at issue in this case were initiated by the State in its sovereign capacity and involve some amount of investigation does not render them "akin to criminal proceedings" for purposes of *Younger* abstention.  In that case, a candidate for public office had commenced an action in federal court to enjoin further proceedings by a county election board related to an alleged violation of Indiana's anti-slating statute, which made it a crime to distribute lists endorsing multiple political candidates during a primary election without the consent of those candidates.  746 F.3d at 814-15. The district court granted the board's motion to dismiss on *Younger* abstention grounds.  The Seventh Circuit reversed on the ground that, after *Sprint Communications*, the election board proceeding was "not the type of quasi-criminal proceeding that would warrant *Younger* abstention."  *Id*. at 816. The court explained that although the board proceeding was initiated by the state to investigate a violation of state law, and the board had the coercive authority to subpoena witnesses in connection with the investigation, the proceeding was nonetheless not sufficiently akin to a criminal proceeding to warrant *Younger* abstention because the board had limited authority to sanction offenders.  *Id*. at 817.

In this case, because the Act is not intended to sanction offenders or to punish wrongdoing at all, it is even further removed from a criminal proceeding than was the election

- 17 -

board proceeding in *Mulholland*, which was expressly undertaken for the purpose of investigating violations of state law.  Moreover, the alleged wrongdoing in *Mulholland* actually constituted a crime under state law, as distinct from the accusations of alcohol or drug use that which bring a pregnant woman within the ambit of the Act.  Therefore, under *Sprint Communications* and *Mulholland*, the proceedings under the Act are not "akin to a criminal prosecution" for *Younger* abstention purposes.

> **3.     The Proceedings Against Ms. Loertscher Under The Act Do Not Fall Within The Third *Sprint Communications* Category**

Proceedings under the Act do not fall within the third *Sprint Communications* category: proceedings that implicate a state's interest in enforcing the orders or judgments of its courts.  *See Sprint Commc'ns*, 134 S. Ct. at 588; *NOPSI*, 491 U.S. 350 at 368.  In *Juidice v. Vail*, 430 U.S. 327 (1977), the origin of this third category, the Court applied *Younger* abstention to a federal action brought by a judgment debtor to enjoin the operation of state contempt proceedings.  In so doing, the Court explained that the state contempt procedures warrant particular comity-related protection because they are essential to a state's enforcement of its judgments.  *Id.* at 335-36.  Here, of course, Ms. Loertscher is not challenging the State's authority to issue contempt sanctions for violations of the orders of its courts; she is merely challenging the constitutionality of the Act that gave rise to the court orders in her case.  That is, Ms. Loertscher challenges the Act underlying the state court's orders, not the authority of a state court to enforce any judgment it is issuing under a valid law.  Although Ms. Loertscher was incarcerated for 18 days as a remedial contempt sanction for declining to submit to involuntary in-patient drug treatment as commanded by the juvenile court's August 5, 2014, order (*see* Compl., ECF No. 1 ¶¶ 53, 55, 57; Ex. H, ECF No. 1-8; Ex. K ECF No. 1-12), that court's general authority to issue this sanction for violations of its orders is not in question (or jeopardized) in

this case.  This federal civil rights action concerns only the constitutionality of the Act under which the juvenile court's orders were issued, and an injunction forbidding further enforcement of the challenged Act would not impact the contempt statute or in any way impede the state court's general authority under that statute to compel compliance with its orders.

*Pennzoil Co .v Texaco, Inc*., 481 U.S. 1 (1987), the other case to fall within the third *Sprint Communications* category, confirms that this category does not apply here.  In that case, a judgment debtor brought suit in federal court to enjoin the enforcement of state judgment lien and appeal bond requirements in connection with commercial tort litigation in state court.  In applying *Younger* abstention, the court explained that *Juidice* controlled because both cases "involve challenges to the process by which the State compels compliance with the judgments of its courts." *Pennzoil*, 481 U.S. at 13-14.  Accordingly, because Ms. Loertscher's challenge does not implicate the process by which the State enforces its orders or judgments, it does not fit within the third category of cases warranting *Younger* abstention.

### D.     *Younger* Abstention Should Also Not Apply Because The Act Flagrantly And Patently Violates Constitutional Law

This Court should also decline to abstain from adjudicating Ms. Loertscher's claims for injunctive and declaratory relief because, in addition to falling outside the recognized categories for *Younger* abstention, the Act falls within the separate exception to the *Younger* doctrine for state laws that flagrantly and patently violate constitutional prohibitions.  "The *Younger* exception to the rule that federal courts hear the cases before them is at bottom an equitable doctrine, and it contains its own equitable exceptions." *Mulholland*, 746 F.3d at 818.  *Younger* itself recognized that an exception to the comity principles underlying the doctrine would exist if a federal court were faced with a state statute that was "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever

manner and against whomever an effort might be made to apply it," *Younger*, 401 U.S. at 53-54.
Of course, in *Younger*, the Supreme Court recognized that federal review of every alleged
unconstitutional act implicated in state criminal proceedings would overly involve the federal
courts in state law enforcement.  Accordingly, the *Younger* court articulated only a narrow
exception based on unconstitutionality of a statute.

Nonetheless, "flagrant" statutory unconstitutionality remains an important exception to
*Younger* abstention.  The Supreme Court in *NOPSI* thus acknowledged that a "*facially
conclusive*" claim of statutory invalidity may trigger this exception to *Younger* abstention.
*NOPSI*, 491 U.S. at 367 (emphasis in original).  *Mulholland* also observed that this exception
would apply "in a situation in which a law's unconstitutionality seems obvious but has not yet
been decided by a court."  746 F.3d at 818-819.  While the courts in *NOPSI* and *Mulholland*
found the underlying state proceeding at issue did not warrant *Younger* abstention for other
reasons, both courts characterized the flagrant unconstitutionality exception as an independent
basis for declining to abstain from the exercise of federal jurisdiction.

Although no cases have directly relied upon this exception to the *Younger* doctrine,
Plaintiff is aware of no federal court being confronted, in the *Younger* abstention context, with a
state statute as replete with clear and profound constitutional defects as the Act challenged in this
case.  Indeed, Wisconsin is the only state in the nation that has used its civil child welfare
apparatus, with its attendant secrecy, to confer rights on fertilized eggs, embryos, and fetuses
while simultaneously depriving adult women of their physical liberty and numerous other well-
established constitutional rights.  As set forth in Plaintiff's brief in support of her motion for a
preliminary injunction, the constitutional violations flowing from the Act—which are apparent
on the face of the statute—are extreme, multi-various, and pervasive.  (*See* ECF No. 14).  Thus

- 20 -

not only is the Act facially invalid, it is so infected with incurable constitutional infirmities that it meets the higher standard of constitutional invalidity recognized as an exception to the application of *Younger* abstention.  In short, the Act is that extraordinarily rare state law that truly is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."  *See Younger*, 401 U.S. at 53-54.   Consequently, even if proceedings under the Act fell within the *Younger* abstention doctrine, which they do not, the "flagrantly unconstitutional" exception applies.

## II.     Ms. Loertscher Has Adequately Stated A Claim For Injunctive And Declaratory Relief Under 42 U.S.C. § 1983

Defendants' argument that Plaintiff's complaint should be dismissed because she allegedly has an "adequate remedy at law" (Def. Br at 12-13) is wrong for multiple reasons. First, Defendants misconstrue the requirement that a plaintiff seeking equitable relief must have "no adequate remedy at law"; it is *not* a requirement that a federal civil rights plaintiff must demonstrate she has no option to challenge the proceedings against her in state court.  The term "no adequate remedy at law" simply means that a legal remedy—*i.e.*, monetary damages, the remedy historically available in courts of law when they were distinct from courts of equity—is inadequate to fully redress the harm alleged by the plaintiff.  *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2944 (3d ed.); *Crane by Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315, 1326 (7th Cir. 1992) (Plaintiff seeking injunctive relief in federal court can show "the inadequacy of the legal remedy by demonstrating that damages would not adequately compensate him.").

A plaintiff may demonstrate that she has "no adequate remedy at law" in many ways. Demonstrating that irreparable injury will occur as a result of a defendant's actions, the

requirement for a grant of *preliminary* injunctive relief, necessarily meets this standard.  But this is just one of several means of showing that no adequate remedy at law exists for the purpose of obtaining *permanent* injunctive relief.  *See* Wright & Miller at § 2944;  *Crane*, 975 F.2d at 1326 ("[I]rreparable injury is not an independent requirement for obtaining a permanent injunction; it is only one basis for showing the inadequacy of the legal remedy.") (citing *Jennings Water, Inc. v. North Vernon*, 895 F.2d 311, 318 n.6 (7th Cir. 1989)).  Permanent injunctive relief is also warranted when the injury is of a continuing nature or has the potential to recur, or whenever an award of damages alone would not fully remedy the harm to the plaintiff.  *See Crane*, 975 F.2d at 1326; Wright & Miller at § 2944.

Ms. Loertscher has amply met the requirement of showing that she has no adequate remedy at law for the constitutional violations inflicted upon her under the Act.  She has demonstrated she is suffering and will continue to suffer irreparable harm from the constitutional violations inflicted upon her because violations of core constitutional liberties always constitutes irreparable harm.  (*See* ECF No. 14); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (loss of constitutional "freedoms…unquestionably constitutes irreparable injury"); *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (infringement of constitutional rights causes irreparable harm); *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of irreparable harm.").  Moreover, the potential that Ms. Loertscher, as a Wisconsin woman capable of becoming pregnant, could be subject to future unconstitutional proceedings under the Act is sufficient to demonstrate she is entitled to permanent injunctive relief even after the current proceedings have concluded.  *See, e.g.*, *Crane*, 975 F.2d at 1319.  Therefore she has satisfied the requirement that she have "no

adequate remedy at law" in connection with her claims for both preliminary and permanent injunctive relief.

Second, Defendants' argument ignores Ms. Loertscher's claim for a declaratory judgment, which is independent of her claims for injunctive relief.  (*See* Compl.,  ECF No. 1 at ¶¶ 80 & 87(b)).  The federal Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Thus "the propriety of granting federal declaratory relief may properly be considered independently of a request for injunctive relief."  *Steffel v. Thompson*, 415 U.S. 452, 462 (1974);  *accord* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.").  Indeed, "the congressional scheme that makes federal courts the primary guardians of constitutional rights, and the express congressional authorization of declaratory relief," empowers a federal court to issue a declaratory judgment that a challenged state action is unconstitutional even if the particular circumstances of the case do not warrant injunctive relief.  *Steffel*, 415 U.S. at 463; *see also Peterson v. Lindner*, 765 F.2d 698, 703 (7th Cir. 1985)  ("[A] party may seek and be granted a declaratory judgment regardless of whether for various reasons it chooses not to pursue a coercive remedy, or does pursue coercive relief, either as an alternative to, or in addition to, the declaration of rights.") (citation omitted).  Therefore, regardless of whether Ms. Loertscher has an "adequate remedy at law" with respect to her claims for equitable relief, which she does not, her request for a declaratory judgment is a stand-alone claim which is not subject to that requirement and is thus not subject to dismissal on that basis.

- 23 -

Finally, Defendants erroneously conflate the requirement that there be no adequate remedy at law in order to obtain injunctive relief with a requirement that Plaintiff must first present her grievances in the state proceedings.  Defendants concede, as they must, that Section 1983 imposes no such exhaustion requirement on federal claimants.  (*See* Def. Br. at 12).  Nonetheless, they contend that Ms. Loertscher is required to avail herself of whatever remedies the Defendants assert are available to her in the state proceedings before she can invoke the federal remedy expressly created by Section 1983 to permit a state's citizens to seek redress in federal court for constitutional violations they are subjected to at the hands of state actors under color of state law.  This position is contrary to well-established law.

*Monroe v. Pape* held that state judicial remedies need not be exhausted prior to institution of a federal court Section 1983 action:  "[t]he federal [§1983] remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."  365 U.S. 167, 183 (1961), *overruled in part on other grounds by Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 664-689 (1978); *see also Bd. of Regents v. Tomanio*, 446 U.S. 478, 491 ("This Court has not interpreted § 1983 to require a litigant to pursue state judicial remedies prior to commencing an action under this section."); *Savory v. Lyons*, 469 F.3d 667, 674 (7th Cir. 2006) ("Unlike habeas corpus, § 1983 does not require exhaustion in state courts.").  The Supreme Court has likewise held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."  *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982).  Consequently, "overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983."  *Zinermon v. Burch*, 494 U.S. 113, 124 (1990).  As Seventh Circuit explained, "once a wrong has properly been characterized as a constitutional tort, the fact that it may also be redressible under state law

- 24 -

does not bar the victim from bringing an action under § 1983." *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997).  In short, whether or not Ms. Loertscher is able to seek relief in state court is irrelevant to whether she has stated a claim under Section 1983.

### III.   Brad D. Schimel, Wisconsin's Chief Law Enforcement Officer, Is A Proper Defendant For Ms. Loertscher's Claims For State-Wide Injunctive And Declaratory Relief

Brad D. Schimel, the Attorney General of Wisconsin—acting in his official capacity—is an appropriate defendant in this action.  The relief Ms. Loertscher seeks is a state-wide injunction prohibiting further enforcement of the Act and a declaratory judgment that the Act is unconstitutional on its face.  (Compl., ECF No. 1 at ¶ 87).   In Wisconsin, the Attorney General is a state-wide office elected independently from the Governor, Wis. Const. art. VI, § 1, and as Wisconsin's top law-enforcement official, Mr. Schimel is an appropriate defendant in a case challenging the constitutionality of a state statute and seeking a state-wide injunction prohibiting its enforcement.  *See Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786, 788 (7th Cir. 2013) (affirming preliminary injunction against "the Attorney General of Wisconsin and other state officials involved in enforcing" a state statute).

Moreover, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), enables federal courts in Section 1983 actions to grant prospective relief compelling state officials to comply with the federal constitution.  As the Court explained, "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Id*. at 157.  As the law enforcement officer elected to state-wide office with the responsibility for state-wide enforcement of Wisconsin law, Attorney General Schimel is an appropriate defendant for the state-wide injunctive and declaratory relief sought by Ms. Loertscher.

The cases cited by Defendants are inapposite.  *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), concerned a section 1983 suit for damages brought against state officials in their individual capacities and has no bearing on whether Attorney General Schimel is appropriately sued in his official capacity for injunctive and declaratory relief only.  *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001), concerned a constitutional challenge to a state statute making abortion providers liable to patients in tort for any damage occasioned by abortions.  The Fifth Circuit held that the state Attorney General was not an appropriate defendant for injunctive relief in that case because he would have no authority to enforce an injunction prohibiting claims by private litigants.  *Id.* at 409.  Here, of course, proceedings brought under the Act are not private tort actions but are instead brought by state officials acting under color of state law.  As Wisconsin's top law enforcement officer, Attorney General Schimel has the authority to carry out an injunction forbidding enforcement of the Act by law enforcement officials anywhere in Wisconsin.[4]

Defendants' reliance on *McDaniel v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 887 (N.D. Ill. 2013), is likewise misplaced.  In *McDaniel*, the Illinois legislature had specifically divested the defendant city of the power to oversee school closings—the state action at issue in the case—and had granted that power exclusively to independent boards of education.  *Id.* at 894.  Thus the court held that the city was not an appropriate defendant for the plaintiffs' claim for injunctive relief because it did not have the authority to carry out an injunction keeping schools open, the relief requested by the plaintiffs.  *Id.*  Here, Defendants point to no statutory provision specifically divesting Wisconsin,  or its law enforcement officials, of the power to enforce the

---

[4] Defendants' reliance on *State v. City of Oak Creek*, 232 Wis. 2d 612 (2000) is unavailing.  (*See* Def. Br. at 14-15).  That case merely holds that the Attorney General is prohibited as a matter of Wisconsin law from attacking the constitutionality of a state statute.   It does not concern any constraint on the Attorney General's authority to carry out an injunction issued by a federal court prohibiting the enforcement of an unconstitutional state statute.

Act.  Indeed, Taylor County, when carrying out state functions, has no independent sovereignty and its law enforcement officials are agents of the State.  *See Reynolds v. Sims*, 377 U.S. 533, 575 (1964) ("Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions.").

Because Attorney General Schimel has the authority to carry out an injunction prohibiting any enforcement of the Act in Wisconsin, he is an appropriate defendant, in his official capacity, for Ms. Loertscher's claims for injunctive and declaratory relief. [5]  Indeed, a federal district court in Alabama recently issued an injunction against that state's Attorney General, named as a defendant in his official capacity, forbidding enforcement of the Alabama Sanctity of Marriage Amendment and the Alabama Marriage Protection Act on the ground that those state enactments prohibiting same-sex marriage violate the federal constitutional rights of Alabama's same-sex couples.  *See Searcy v. Strange*, Civil Action No. 14-02-8-CGN, 2015 WL 328728, ___ F. Supp. ____ (S.D. Ala. Jan. 23, 2015).  An injunction forbidding Attorney General Schimel, in his official capacity, from enforcing 1997 Wisconsin Act 292 is likewise appropriate here.

---

[5] Defendants' citations to cases in the Third, Fourth, and Eleventh Circuits are unavailing because none concern an enforcement action under a challenged statute initiated by a state in its sovereign capacity.  *See 1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108, 113-14 (3d Cir. 1993) (Attorney General not appropriate defendant for suit by private contractor seeking payment of monies by school district); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (Governor not appropriate defendant for suit challenging cap on the amount of waste that may be accepted at state landfills); *Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) (Governor not appropriate defendant for suit challenging distribution of state funds).

**IV.** **Ms. Loertscher Has More Than Adequately Pled Her First And Fourth Amendment Claims**

Defendants' argument that Ms. Loertscher's First and Fourth Amendment claims should be dismissed under Federal Rule of Civil Procedure 8 is meritless.  Rule 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipses omitted).  While Defendants' acknowledge this basic rule of civil procedure (*see* Def. Br. at 16) they err in applying that rule to the Complaint.

First, Defendants assert, with the respect to Ms. Loertscher's First and Fourth Amendment claims, that the Complaint contains "almost generic causes of action," suggesting that the legal theories underlying Ms. Loertscher's First and Fourth Amendment claims are not sufficiently well developed in the Complaint.  But a complaint need not "identify legal theories." *Bennett v. Schmidt*, 153 F.3d 516, 518-19 (7th Cir. 1998); *accord id.* at 519 ("[H]aving stated a discrimination claim the complaint need not offer specifics about which rules of law, state or federal, racial discrimination offends."); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) ("Plaintiffs . . . need not plead law[.]").  Indeed, the Seventh Circuit explained, in the wake of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that "abstract recitations of the elements of a cause of action or conclusory legal statements do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law" and that "[s]uch statements therefore *do not add to the notice that Rule 8 demands*." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (emphasis added) (internal quotation marks and citation omitted).  Thus, to the extent that Defendants assert that Ms. Loertscher has not sufficiently

described the First and Fourth Amendment doctrines that are violated by the facts alleged in the Complaint, Defendants' argument misapprehends Rule 8's pleading requirements. [6]

Second, Defendants assert that "[n]o facts are presented that address [Ms. Loertscher's] claimed violations of the First and Fourth Amendments." (Def. Br. at 17). This assertion is simply inaccurate. The Complaint contains numerous factual allegations concerning state-coerced speech, *see, e.g.*, Compl., ECF No. 1 ¶¶ 27, 44, 55, 72, as well as numerous allegations concerning unreasonable searches and seizures, *see, e.g., id.* at ¶¶ 25, 28, 33, 37-38, 40-41, 43, 53, 72, 74. Because Ms. Loertscher supplies factual allegations far exceeding the detail demanded under Rule 8's notice pleading requirements, her First and Fourth Amendment claims are more than adequately pled and should not be dismissed.

## CONCLUSION

Because Defendants have not established that any of Ms. Loertscher's claims should be dismissed, Defendants' Motion to Dismiss should be denied.

---

[6] The change to the pleading standards resulting from *Twombly* and *Iqbal* is of no moment here. The plausibility standard set forth in those cases simply requires a plaintiff to "give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. Defendants do not suggest that Ms. Loertscher's allegations do not hold together. In addition, while *Iqbal* clarified that "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion," *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012), that clarification *undermines* Defendants' arguments, as set forth above. In any event, Defendants concede that "Ms. Loertscher provides a detailed statement of the facts." (Def. Br. at 17).

Dated this 18th day of February, 2015.      Respectfully submitted,

**PERKINS COIE, LLP**

By:   *s/ Freya K. Bowen*

David J. Harth
dharth@perkinscoie.com
Freya K. Bowen
fbowen@perkinscoie.com
Joshua L. Kaul
jkaul@perkinscoie.com
David R. Pekarek Krohn
dpekarekkrohn@perkinscoie.com
1 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

**NATIONAL ADVOCATES FOR
PREGNANT WOMEN**
Lynn M. Paltrow
lmp@advocatesforpregnantwomen.org
Sara Ainsworth
sla@advocatesforpregnantwomen.org
Farah Diaz-Tello
fdt@advocatesforpregnantwomen.org
15 W. 36th Street, Suite 901
New York, NY 10018
Telephone: (212) 255-9252
Facsimile: (212) 225-9253

**CARR CENTER FOR
REPRODUCTIVE JUSTICE**
Sarah E. Burns
sarah.burns@nyu.edu
Avram D. Frey
freya@exchange.law.nyu.edu
Washington Square Legal Services, Inc.
NYU School of Law
245 Sullivan Street, 5th Floor
New York, New York 10012
Telephone: (212) 998-6464
Facsimile: (212) 995-4031

*Attorneys for the Plaintiff,
Tamara Loertscher*

- 30 -