IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TAMARA M. LOERTSCHER,

      Plaintiff,

    v.                          Case No. 14-C-870

BRAD D. SCHIMEL, in his official
capacity as ATTORNEY GENERAL OF
THE STATE OF WISCONSIN, and
ELOISE ANDERSON, in her official
capacity as SECRETARY OF THE
DEPARTMENT OF CHILDREN AND
FAMILIES,

      Defendants.

---

## DEFENDANTS' REPLY BRIEF IN
## SUPPORT OF MOTION TO DISMISS

---

Despite Loertscher's attempts to cloud the issue, this single fact remains:

the Court should abstain from hearing this federal case based upon ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ There

are no exceptions which would preclude abstention in this case. Moreover,

Loertscher lacks standing to bring this action against Attorney General Brad

Schimel. Finally, based upon the vague allegations in the complaint and the

lack of any specific facts with respect to the causes of action under the First

and Fourth Amendment, those claims must be dismissed regardless of

whether the Court abstains in general.

# ARGUMENT

**I. This Court should abstain from proceeding under the *Younger* abstention doctrine.**

*Younger* abstention is warranted because it easily fits into the quasi-criminal category of cases outlined in *Sprint*, and it meets the additional factors for abstention articulated in *Middlesex*. *Sprint Commc'ns v. Jacobs*, 134 S.Ct. 584, 591-93 (2013); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

*Sprint* was a reaction to a long pendulum swing in favor of abstention, whereby the *Middlesex* factors had been expanded so broadly that most parallel state criminal, civil, or administrative actions would satisfy them. *Sprint* provided a framework for evaluating abstention issues, but it was merely a restatement of abstention principles found in the Supreme Court's existing precedent. *Sprint* did not supersede or reverse *Middlesex*. ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**A. *Sprint* confirms that abstention is appropriate.**

The Supreme Court's decision in *Sprint* confirms that *Younger* abstention is appropriate. Specifically, *Sprint* reaffirmed the Court's longstanding position that abstention is appropriate where—as here—there is an ongoing "civil enforcement proceeding." *Sprint*, 134 S.Ct at 591; *see also Middlesex*,

457 U.S. at 432; *Moore v. Sims*, 442 U.S. 415, 419-20 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977).

In *Sprint*, the Court identified several common features of civil enforcement proceedings— █████████████████████████████ A civil enforcement proceeding is generally (1) initiated by a state actor; (2) preceded by an investigation that culminates in the filing of a formal complaint or charge; and (3) brought to sanction the federal plaintiff for wrongful conduct. *Sprint*, 134 S.Ct. at 592. *See also Mulholland v. Marion Cnty. Election Bd*, 746 F.3d 811, 816-17 (7th Cir. 2014).

Loertscher claims that there is an additional factor: that the state proceeding be "in aid of and closely related to the State's criminal statutes." (Dkt. 44:9). Loertscher dug this "factor" out of a single line in the *Sprint* Court's summary of a past case. *See Sprint*, 134 S.Ct. at 591. Notably, the *Sprint* Court did not actually apply this factor in its decision. *See id.* Indeed, since *Sprint*, the Federal Courts of Appeals have also not relied on this factor in their *Younger* analyses. *See, e.g., Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176, 181 (3d Cir. 2014); *ReadyLink Heathcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759-60 (9th Cir. 2014); *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138-40 (3d Cir. 2014); *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 816-17 (7th Cir. 2014). Loertscher's overreliance on this single factor is misguided.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████ This important fact alone distinguishes this case from *Sprint*. In *Sprint*, the Court emphasized that the proceeding had not been initiated by "the State in its sovereign capacity," but by a private actor. *Sprint*, 134 S.Ct. at 592 (quoting *Trainor*, 431 U.S. at 444).████████

███████████████████████████████████████

█████████████████████████ This immediately distinguishes this case from *Sprint* and another case on which Loertscher relies, *ReadyLink Healthcare,* 754 F.3d at 760.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Relying on *ACRA Turf Club, L.L.C. v. Zanzuccki*, Loertscher argues that "negative consequences are not the same thing as sanctions." 748 F.3d 127, 140 (3d Cir. 2014). But *ACRA* is significantly different from this case. In *ACRA*, the Second Circuit held that *Younger* abstention did not apply because "[t]he state proceeding at issue . . . [did] not bear any of the hallmarks that *Sprint* and its predecessors identify with quasi-criminal actions." *Id.* at 138. Unlike this case, the state action in *ACRA* was not initiated by the state and no state actor conducted an investigation or filed any type of formal complaint or charges. *Id.* at 138-39. Instead, the state

action in *ACRA* was initiated by private entities when they voluntarily submitted petitions demonstrating their progress toward opening off-track wagering facilities in order to avoid forfeiting their rights to license such facilities. *Id*. at 129-30, 139. The state proceeding was not commenced to sanction the plaintiffs; rather, the requirements were intended to encourage economically beneficial conduct. *Id*. at 139. █████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███ ███ ██ ███ ██ ██ ███ ███ ███ ███ ██ ███

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████

 ████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

 ████████████████████████████████████

███████████████████████████████████████

█████ *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986) (proceedings to enforce state civil rights laws); *Middlesex*, 457 U.S. at 423 (proceedings against lawyer for violation of state ethics rules); *Moore*, 442 U.S. at 415 (proceeding to gain custody of children allegedly abused by their parents); *Trainor*, 431 U.S. at 434 (proceeding to recover welfare payments defendants had allegedly obtained by fraud); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), (proceeding to enforce obscenity laws).

For example, in *Moore*,[1] the Supreme Court held that *Younger* abstention was appropriate because there was an ongoing child dispute in state court— ███████████████████████████████████████████ *Moore*, 442 U.S. at 415. In *Moore*, state officials seized the plaintiffs' children under provisions of the Texas Family Code, which were designed to protect children in emergencies. *Id.* at 419-20. The parents first attempted to recover custody in a state proceeding, but eventually turned to federal court to challenge the constitutionality of the Texas Family Code. *Id.* at 421. The Supreme Court ruled that *Younger* was applicable. *Id.* at 423. The Court did so even though the ongoing state proceeding was not strictly criminal. *Id.*

Similarly, even post-*Sprint*, the Third Circuit found that abstention was appropriate where there was a quasi-criminal ongoing state proceeding. *See Gonzalez*. In *Gonzalez*, the Waterfront Commission of the New York Harbor— an arm of the State of New Jersey—investigated and charged Gonzalez, a Commission detective, with making false statements, which in turn triggered an administrative disciplinary hearing to sanction Gonzalez. *Id.* at 182. According to the Third Circuit, this proceeding was a "textbook example" of a civil enforcement proceeding under *Sprint*. *Id.* at 423.

---

[1]*Moore* was cited in *Sprint* as a civil enforcement action of the kind to which *Younger* was properly extended. *See Sprint*, 134 S.Ct. at 592.



**B.**     **The *Middlesex* factors still bear on the abstention analysis.**

Loertscher's effort to sweep *Middlesex* under the rug is misplaced. In *Sprint*, the Court made clear that the *Middlesex* factors are "*appropriately considered by the federal court before invoking Younger*." *Sprint*, 134 S.Ct. at 593 (emphasis added). Following suit, the Seventh Circuit has also announced that, after *Sprint*, the *Middlesex* factors "remain relevant" to the abstention analysis. *Mulholland*, 746 F.3d at 816.

For example, in *Brucken*, the Seventh Circuit abstained from hearing a father's constitutional claims when he was involved in an ongoing state court child custody dispute over his daughter whom he allegedly abused. 807 F.2d at 1330-31. The court did not mention any potential criminal penalties for the abuse. *Id*. Instead, the court focused on the fact that the state was "heavily involved" in the proceedings to determine the custody of the child. *Id*. at 1330. In particular, under relevant state law, the state could file a petition to begin the process of undertaking a shelter care hearing and adjudicating custody of the child. *Id*. The court explained how the state's role in a child custody case was analogous to its role in a criminal proceeding:

> Wholly apart from its role as a provider of a forum to resolve a dispute between the parties, the State has an independent interest – the welfare of the child. In a practical sense the State is a party to the proceedings in a fashion analogous to its role in a standard criminal proceeding. This role of the State, plus its very strong interest in the

health and welfare of the child, . . . warrant the conclusion that *Younger* applies to the type of state proceeding at issue in the instant case.

*Id*. at 1330 (internal citation omitted). ██████████████████████████
████████████████████████████████████. Therefore, the

first two *Middlesex* factors are met. *Middlesex*, 457 U.S. at 432.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ "[A]bstention is appropriate unless state law

clearly bars the interposition of the constitutional claims." *Moore*, 442 U.S. at

425-26. ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████. Therefore, this case

should be dismissed based on *Younger* abstention.

    **C.**  ████████████████████████████████████████
        ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

An ongoing administrative proceeding triggers *Younger* abstention if the proceeding (1) is judicial in nature and (2) offers an adequate opportunity for review of constitutional claims. *Dayton Christian Schs.*, 477 U.S. at 627; *Stroman Reality, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007). ████████

███ ██ ███ ████ ████████ ████ ██████ ████ ██ ████ █

████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███ ████ ███ ███ ███ ███ ███ ███ ███ ███ ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Under well-established

Seventh Circuit precedent, state-court administrative review constitutes an

adequate opportunity to raise constitutional challenges. *See Stroman*, 505 F.3d at 662; *Green v. Benden*, 282 F.3d 661, 666 (7th Cir. 2002). This is true so long as the federal plaintiff *could have* brought the constitutional challenges along with the claim for administrative review. *See Greene*, 282 F.3d at 666-67. It is immaterial whether those claims were actually raised. *Id.*; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

████████  ██████  ███  █████  █████  █  ███  ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████ "A constitutional issue must be raised and the record developed before the agency, even if the agency has no power to decide this issue." *Linse v. Labor and Indus. Review Comm'n.*, 135 Wis. 2d 399, 405 n. 1, 400 N.W.2d 481 (Ct. App. 1986). For example, in *Linse*, the Wisconsin Court of Appeals held that a constitutional attack on a statute for vagueness could not be raised on appeal because it had not been raised before the agency. *Id.*

███████████████████████████████████████████████████

██████  ███  ███  ████  █████  ████  █  ███  ████  ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████  ████████████████████

**D. The Act is not flagrantly and patently unconstitutional in every way such that it meets an exception to the *Younger* abstention doctrine.**

Loertscher attempts to contort this law into the *Younger* "flagrant" exception, but that is not appropriate. The Court in *Younger* referred back to a 1941 Supreme Court decision that raised the possibility of a law so flagrantly and patently unconstitutional that abstention would be unwarranted. Even that case, however, found the possibility extremely unlikely. *Younger*, 401 U.S. at 53 (discussing *Watson v. Buck*, 313 U.S. 397, 402 (1941)). The *Younger* Court went on to explain that "possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." *Younger*, 401 U.S. at 54; *see also Pincham v. Ill. Judicial Inquiry Bd.*, 872 F.2d 1341, 1350 (7th Cir. 1989).

Loertscher's reference to *Mulholland* in support of this limited exception actually shows why it does not apply here. In *Mulholland*, a federal district court had already declared the law unconstitutional before the Election

Board chose to enforce it against Mulholland. As the Court held, "[t]his shaves very close to harassment or bad faith prosecution." *Mulholland*, 746 F.3d at 818. That is not the case here. Even Plaintiff concedes that "no cases have directly relied upon this exception to the *Younger* doctrine." (Dkt. 44:20). That is because no other cases have defendants who enforce laws already declared unconstitutional or have laws which directly abrogate constitutional freedoms.

This law has been in effect in Wisconsin for over 14 years and Loertscher has not alleged that there are any new significant increases in enforcement or that the law has ever been widely enforced. Loertscher has also not alleged that there is any new initiative to enforce the law more aggressively. In fact, the complaint has no allegations concerning the enforcement of the Act against anyone other than Loertscher. Nor does Loertscher contend that this is the most "repressive" law in the country in her complaint.

More to the point, in her response to this motion to dismiss, Loertscher points—not to her complaint—but to her brief in support of her motion for a preliminary injunction (Dkt. 14) which was filed on January 7, 2015, for her assertions that the Act flagrantly and patently violates the Constitution. A motion to dismiss, however, is tied to, and only based upon, allegations made in the complaint.

Protection of the pregnant woman's health as well as that of the unborn child has been recognized as a legitimate state interest since *Roe v. Wade,* 410 U.S. 113, 162-63 (1973), which acknowledged that the State has a legitimate interest in the life of unborn children:

> We repeat, however, that the State does have an important and legitimate interest in preserving and protecting the health of the pregnant woman, . . . and that it has still another important and legitimate interest in protecting the potentiality of human life. These interests are separate and distinct. Each grows in substantiality as the woman approaches term and, at a point during pregnancy, each becomes 'compelling.'

Moreover, the Supreme Court has recognized that "there is a substantial state interest in potential life throughout pregnancy." *Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 876 (1992).

In Wisconsin, the Legislature has provided other legal protections for unborn children. For instance, it is a crime to commit battery to an unborn child. Wis. Stat. § 940.195. A parent may act as a fiduciary to bind the interests of an unborn child. Wis. Stat. § 701.0303(6). Motor vehicle operator's licenses may be revoked if an individual is convicted of causing the death of an unborn child. Wis. Stat. §§ 343.31(3)(c) and (f). It is also considered an aggravating factor, for sentencing purposes, if an intoxicated driver kills or injures an unborn child who was present in the motor vehicle. Wis. Stat. § 973.017(7). And, there is no evidentiary privilege for information contained in a report of abuse to an unborn child. Wis. Stat. § 905.04(4)(e).

Courts in other jurisdictions have upheld similar laws which protect the interests and fetal safety of unborn children. In *In the Matter of Unborn Child/Sierra K.*, the family court determined that an unborn child was a "personality which is afforded the protection of the Family Court Act, Article 10" in the context of a challenge by a pregnant woman who was using drugs while pregnant to a law which protected the unborn child. 683 N.Y.S.2d 366, 371 (N.Y. 1998), The pregnant woman balked at being required to stop her illegal drug use (while pregnant) and to enroll in and complete a rehabilitation program. *Id.* at 367. The court held that

> [I]t would be incongruous to imagine the Family Court's Act clear purpose being anything other than to protect children, including unborn children, from harm. Making a child endure an unsafe environment in the womb is ludicrous, when this same child is afforded protection from illegal drugs and an unsafe environment the moment it takes its first breath outside the womb.

*Id.* at 370.

A fetal protection policy in the workplace context was upheld as being reasonably necessary to industrial safety in *International Union, United Automobile, Aerospace and Agriculture Implement Workers of America v. Johnson Controls, Inc.*, 886 F.2d 871 (7th Cir. 1989), *rev'd on other grounds*, 499 U.S. 1987 (1991). Unborn children have been protected in other contexts as well. *See United States v. Denoncourt*, 751 F. Supp. 168 (Hawaii 1990)

(rights and interests of unborn child of woman in third trimester of pregnancy should be considered when sentencing the pregnant woman).

Accordingly, there is no flagrant or patently unconstitutional statute here. Had there been, this law would surely have been challenged before during the 14 years it has been enforced. ████████████████

████████████████████████████████████

██████ This extremely narrow *Younger* exception does not apply here.

## II. Loertscher cannot sue Attorney General Schimel because Schimel has no specific authority to enforce the law Loertscher seeks to enjoin.

████ ████ █ ███ ██ █████ █ █ █████ █ ███ ████ ████

████████████████████████████████████

██ ██ ██ █████. She wants to hold the Wisconsin Attorney General responsible for the enforcement of the injunction based on his alleged general authority to enforce the laws of the state. (Dkt. 1 at ¶ 78). But this is not enough to make Attorney General Schimel a proper party to this litigation.

"A plaintiff challenging the validity of a state statute may bring suit against the official who is charged with the statute's enforcement only if the official has either enforced, or threatened to enforce, the statute against the plaintiffs." *1st Westco Corp. v. Sch. Dist. of Philadelphia,* 6 F.3d 108, 113 (3d Cir. 1993). "General authority to enforce the laws of the state is not

sufficient to make government officials the proper parties to litigation challenging the law." *Id.*

In Wisconsin, the Attorney General has no power to generally enforce the laws; he only has those powers proscribed by statutory law. *State v. Oak Creek*, 2000 WI 9, ¶¶ 18-21, 232 Wis. 2d 612, 605 N.W.2d 526. Even if the Attorney General had general enforcement power, that would not be enough. For example, in *1st Westco*, a contractor sued a school district that terminated its contract for public school construction alleging that a statute requiring that only Pennsylvania residents work on public school construction projects violated the U.S. Constitution. *1st Westco Corp.,* 6 F.3d at 111-12. The Third Circuit analyzed whether the state officials – and in particular the attorney general – had the authority to enforce the statue at issue. *Id.* at 113-14. The court concluded that the officials did not have specific authority to enforce the statute and their general duty to enforce the laws of the state did not supply the proper predicate for liability. *Id.* at 114.

Loertscher claims that "Defendants point to no statutory provision specifically divesting Wisconsin, or its law enforcement officials, of the power to enforce the Act." (Dkt. 44:33). But it is Loertscher who must "demonstrate that the defendant to be enjoined has the authority to effectuate the injunction." *McDaniel v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 887, 893 (N.D. Ill. 2013). Loertscher must show that the Attorney General has

some specific duty to enforce the Act and that there is some realistic potential that the connection will be employed against her interests. *Id.* at 114. Loertscher has not, and cannot, make such a showing.[2]

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ ██ █████ █ ██ ████ ████ ████ Such general authority conferred by virtue of state sovereignty is no different than the broad power to enforce law, which is insufficient to supply the necessary connection to the challenged Act. For example, in *Women's Emergency Network v. Bush*, the Eleventh Circuit held that the governor's authority over the Department of Highway Safety and Motor Vehicles – an arm of the state – was too attenuated to establish that he was responsible for enforcement of the challenged law involving distribution of state funds from specialty license plates. 323 F.3d 937, 949-50 (11th Cir. 2003). ████████████████████

---

[2]Loertscher argues that in *Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786, 787 (7th Cir. 2013), the Seventh Circuit affirmed a preliminary injunction against the Wisconsin Attorney General and other state officials involved in enforcing a state statute that required abortion providers to have hospital admitting privileges. *Planned Parenthood* is distinguishable because the statute at issue imposed "heavy penalties," which included forfeitures the Attorney General may have been obligated to enforce. Wis. Stat. § 253.095(3) (forfeiture penalty for violation of admitting privileges requirement); § 978.05(2) (district attorney prosecutes all state forfeiture actions); § 978.045 (special prosecutor). Thus, there was a connection between the statute and the Attorney General's enforcement powers. No similar connection exists here.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████ Therefore, he has no power to enforce the injunction Loertscher seeks, and he must be dismissed from this case.

### III. Loertscher fails to plead sufficient facts to give Defendants fair notice of her claims under the First and Fourth Amendments and the grounds upon which those claims rest.

Loertscher ignores the rules of pleading set forth in *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 698-699 (2009); *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). She has failed to give the Defendants "fair notice" of her claims under the First and Fourth Amendments. *Id.* Loertscher provides a lengthy statement of facts. But she does not tie those facts in any way to her claims under the First and Fourth Amendments.

In her response brief, Loertscher attempts to cure the defects in her complaint by pointing to factual allegations which she claims are examples of "coerced speech" and "unreasonable searches and seizures." (Dkt. 44:36). Significantly, this is the first indication Loertscher has given of which allegations relate to each cause of action. Regardless, these allegations shed little light on the situation.

Loertscher's Fourth Amendment claim is not much better. ▮▮

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

Loertscher is not required to plead the elements of her legal claim. But she is required to give the defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Iqbal*, 556 U.S. at 698-699; *Twombly*, 550 U.S. at 555. While Loertscher has stated facts and she has stated violations of the law, there is no connection between the facts and the law such that the Defendants are on notice of the actual claims against them with respect to the First and Fourth Amendments. It is too late to try to bolster the inadequacies in the complaint during the pendency of this motion. Therefore, Loertscher fails to state a claim under the First and Fourth Amendments, and those claims must be dismissed in their entirety.

## CONCLUSION

This Court should dismiss the complaint in its entirety. If the Court decides that abstention does not apply, it should dismiss the First and Fourth Amendment causes of action, and it should also dismiss Defendant Attorney General Brad D. Schimel.

Dated March 2, 2015.

Respectfully submitted,

BRAD D. SCHIMEL
Attorney General

s/Maria S. Lazar*
MARIA S. LAZAR
Assistant Attorney General
State Bar #1017150

KARLA Z. KECKHAVER
Assistant Attorney General
State Bar #1028242

Attorneys for Defendants Brad D.
Schimel and Eloise Anderson

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-3519 (MSL)
(608) 264-6365 (KZK)
(608) 267-2223 (Fax)
*lazarms@doj.state.wi.us*
*keckhaverkz@doj.state.wi.us*

*Counsel for the Defendants acknowledges and appreciates the assistance of University of Wisconsin Law School extern Nicholas Bullard on this brief.