IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TAMARA M. LOERTSCHER,

                    Plaintiff,

      v.

BRAD D. SCHIMEL, in his official capacity
as Attorney General of the State of Wisconsin, and
ELOISE ANDERSON, in her official capacity
as Secretary of the Department of Children and Families,

                    Defendants.

OPINION & ORDER

14-cv-870-jdp

Pursuant to 1997 Wis. Act 292, state authorities may treat a fetus of any gestational age as a child in need of protective services (CHIPS) if the "expectant mother's habitual lack of self-control in the use of alcohol beverages, controlled substances or controlled substance analogs, exhibited to a severe degree, [poses] a substantial risk of harm" to the fetus. Wis. Stat. § 48.193.

Plaintiff Tamara Loertscher filed this case when she was an expectant mother subject to a state court CHIPS order issued under the authority of the Wisconsin Children's Code, as amended by Act 292. Under the authority of the CHIPS order, Loertscher was detained for several days in a hospital, and later incarcerated for 18 days, until she signed a consent decree requiring her to submit to drug monitoring and treatment by county authorities. She gave birth in January 2015. Her consent decree has since expired, and all proceedings against her have terminated. But Loertscher persists in her challenge to Act 292, which she contends is facially unconstitutional because it is void for vagueness and because it violates her substantive due process rights, procedural due process rights, First Amendment rights, Fourth Amendment rights, and her right to equal protection. She seeks no damages, but she asks this

court to declare Act 292 unconstitutional and to enjoin its enforcement. Loertscher brings this case under 42 U.S.C. § 1983, which authorizes suits in federal court to redress violations of federal constitutional or statutory rights by state actors. Loertscher's allegations, many of which are fully documented, tell a disturbing story of her treatment by Taylor County authorities under Act 292.

But before getting to the merits, the court must address two difficult jurisdictional issues that defendants have presented in motions to dismiss. Dkt. 40 and Dkt. 48. First, because Loertscher asked this court to enjoin an ongoing state proceeding, defendants contend that the court must abstain from the matter under *Younger v. Harris*, 401 U.S. 37 (1971), which limits the authority of federal courts to interfere in certain types of state proceedings. Second, because the state proceedings against Loertscher have now terminated, defendants contend that the matter is moot, and so the court must dismiss it for lack of an actual case or controversy.

The court concludes that this case does not require abstention. The CHIPS proceeding is a type that the Supreme Court has deemed to be "akin to a criminal prosecution," a category commonly requiring abstention. But the weight of well-reasoned authority indicates that when a proceeding is no longer "ongoing," the concern motivating abstention—namely, respecting the independence and autonomy of state courts—is eliminated. The court also concludes that the case is not moot because it is one "capable of repetition yet evading review." Defendants' motions to dismiss, Dkt. 40 and Dkt. 48, will therefore be denied on these issues.

Several additional motions are also before the court. Loertscher has moved to make public the records of the CHIPS proceeding, which under Wisconsin law would be sealed to

2

protect the child. Dkt. 15. The court will grant Loertscher's motion because the public has a legitimate interest in knowing how Act 292 has been enforced against her, and defendants have not shown a significant interest in preventing disclosure. Loertscher has also moved, without opposition, to withdraw her motion for preliminary injunction. Dkt. 54. That motion will be granted, and thus the motion for preliminary injunction, Dkt. 13, will be stricken. Loertscher's additional motions to be heard, Dkt. 47 and Dkt. 59, will be denied as unnecessary. Finally, the court will set a schedule for the remainder of this case.

## FACTUAL BACKGROUND

The following facts are drawn primarily from the allegations in the complaint, which are accepted as true for the purposes of a motion to dismiss. *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). Where it is useful, the court has supplemented this background with the history of Act 292.

Under Wisconsin's Children's Code, the state Department of Children and Families and county social service departments have the responsibility to protect children who are being abused or neglected. If the county social service department deems it necessary, such a child may be the subject of a petition concerning a child in need of protective services—commonly known as a CHIPS petition—filed with the juvenile court of that county. If the court grants the CHIPS petition, then protective services may be ordered for the child. In severe cases, the child may be removed from the parents' home and placed in protective custody.

The Wisconsin Supreme Court held in *State ex rel. Angela M.W. v. Kruzicki*, 209 Wis. 2d 112, 561 N.W.2d 729 (1997), that a viable fetus was not a "child" within the meaning of

the Children's Code, and thus the Children's Code did not authorize CHIPS proceedings directed at expectant mothers who used illegal drugs. In response to the *Angela M.W.* case, the Wisconsin legislature passed 1997 Wisconsin Act 292, which amended the Children's Code to authorize CHIPS petitions for the benefit of any "unborn child" who might be endangered by the mother's habitual use of drugs or alcohol. Act 292 defined "unborn child" to mean "a human being from the time of fertilization to the time of birth." Wis. Stat. § 48.02(19). The act took effect on January 1, 1998. Under the Children's Code, as amended by Act 292, a fetus can be the subject of a CHIPS petition based on the expectant mother's habitual use of drugs or alcohol. If the expectant mother refuses services to protect the fetus, then she may be taken into custody.

Loertscher lives in Taylor County, Wisconsin. In February 2014, Loertscher had just lost her job and, as a result, her health insurance. She was then 29 years old, with severe thyroid problems, the symptoms of which included serious depression. She had no substantial history of drug use, although she had used marijuana a few times. Without her prescribed medications, Loertscher resorted to methamphetamine to counteract her depression and she continued occasional use of marijuana. When she thought she might be pregnant, around the end of July 2014, she stopped her drug use.

On August 1, Loertscher sought treatment for her hypothyroidism and severe depression from the Taylor County Department of Human Services (TCDHS). TCDHS recommended that she go to the Mayo Clinic Health System in Eau Claire, and she did so. She provided a urine sample, which confirmed that Loertscher was pregnant. The specimen was also tested for drugs (without Loertscher's knowledge), and it showed traces of methamphetamine, amphetamine, and marijuana. That evening, she voluntarily admitted

4

herself to the clinic's Behavioral Health Unit for short-term inpatient psychiatric and medical care.

Over the next few days, Loertscher learned that her pregnancy was healthy and that she was approximately 14 weeks along. She was counselled about her drug use. She refused to sign a release allowing disclosure of her medical records to TCDHS, and when Loertscher expressed her desire to leave the Behavioral Health Unit, a nursing manager told her that there was a "hold" on her and that she was not free to leave.

Although Loertscher had not consented to the disclosure of her medical records, clinic personnel provided Loertscher's medical information to TCDHS. And while Loertscher was in the Behavioral Health Unit, Taylor County corporation counsel Courtney Graff prepared a petition under Wis. Stat. § 48.133, to take physical custody of Loertscher. The Taylor County juvenile court appointed Michael Shiffler as guardian ad litem (GAL) for Loertscher's fetus.

On August 5, Taylor County court commissioner Greg Krug convened a hearing to determine if there was probable cause to take Loertscher into custody. Loertscher had no advance notice of the hearing. She was taken to a conference room at the clinic, told that a judge was on the telephone, and given a copy of the Petition for Protection or Care of an Unborn Child, which alleged that Loertscher risked endangering her fetus through habitual lack of self-control in the use of alcohol or controlled substances. Loertscher refused to participate without a lawyer. The court commissioner deemed Loertscher to have voluntarily waived her right to participate in the hearing, and the hearing proceeded without her.

The court commissioner took evidence and ordered that Loertscher be placed in temporary physical custody, requiring Loertscher to stay at the Mayo Clinic until she was

"cleared," and then to be placed at a treatment facility to be selected by her doctors and TCDHS. Dkt. 1-3. But a day or so later, Loertscher was given prescriptions for thyroid medication and anti-depressants, and she was released from the Mayo Clinic. It is not clear whether Commissioner Krug's order had been provided to Loertscher.

On August 11, the GAL filed a motion for contempt against Loertscher for her failure to comply with the August 5, 2014, order for temporary physical custody. Dkt. 1-4. On August 13, Corporation Counsel Graff filed a motion to take Loertscher into custody. The court granted the motion to take Loertscher into custody and set a hearing on the contempt order for August 25, 2014, which was later rescheduled for September 4, 2014, after Loertscher requested a new judge. Dkt. 1-7.

Loertscher appeared voluntarily at the September 4 contempt hearing with her family, but without counsel. The GAL admitted to the charges against Loertscher on behalf of the fetus. The court, with Price County Judge Douglas Fox presiding, took testimony from TCDHS employees and from Loertscher. At the close of the hearing, Judge Fox found Loertscher in contempt of the August 5, 2014, order for temporary physical custody. He ordered her to serve 30 days in jail, unless she purged the contempt by submitting to a blood test and by accepting placement at the Fahrman Center, a drug treatment facility. Dkt. 1-8.

Loertscher believed that she did not need drug treatment and she was unwilling to place herself at the Fahrman Center. So that evening, September 4, Loertscher surrendered herself to the Taylor County Jail, where she was held for 18 days. Jail medical staff would not provide pre-natal care unless Loertscher submitted a urine specimen to confirm her pregnancy. She refused to provide the specimen, and she received no pre-natal care during her incarceration, despite the fact that she reported pain, cramping, and vaginal discharge.

And after she refused to provide the urine specimen, she was placed in solitary confinement for 36 hours.

From jail, Loertscher was able to arrange counsel from the Office of the State Public Defender to represent her in the contempt proceeding. Her counsel negotiated a consent decree with TCDHS and the GAL, which required Loertscher to schedule an AODA assessment, comply with AODA-recommended treatment, submit to drug tests, attend prenatal appointments, seek health insurance, cooperate with the supervision of a social worker, and agree to release her information. Dkt. 1-13. Loertscher signed the consent decree, and Judge Fox ordered Loertscher released from jail on September 22. Dkt. 1-12.

On September 29, TCDHS issued to Loertscher a Notice Child Maltreatment Determination and Right of Appeal. Dkt. 1-14. According to this Notice, TCDHS had completed its assessment and determined that Loertscher had abused her unborn child through her habitual use of drugs and alcohol. The notice further stated that the maltreatment determination could be used to deny Loertscher a license, contract, or employment involving the care of children or other vulnerable persons unless she successfully completed a rehabilitation program. Loertscher appealed the determination on October 29; the determination was affirmed on November 10. Dkt. 1-15.

Loertscher gave birth to a healthy boy on January 23, 2015. The consent decree has since expired, and Taylor County has rescinded the child maltreatment determination because it has discovered that the Children's Code does not authorize such determinations for alleged maltreatment of a fetus.

ANALYSIS

The court begins its analysis with the two threshold jurisdictional issues: whether the court must abstain under *Younger*, and whether Loertscher's claims are moot. After concluding that *Younger* abstention is not appropriate and that Loertscher's claims are capable of repetition yet evading review, the court will reach the remaining aspects of the parties' motions.

## A. Abstention

Federal courts have a duty to hear and decide cases over which they have jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 590 (2013). But they have an equally compelling duty to decline to take up matters over which they do not have jurisdiction.

The Supreme Court articulated one important limit on federal jurisdiction in *Younger v. Harris*, which prohibits federal courts from interfering in ongoing state criminal prosecutions, absent extraordinary circumstances. 401 U.S. 37, 43-46 (1971). *Younger* abstention is rooted in the principle of comity, which is to say that it is "designed to permit state courts to try state cases free from interference by the federal courts." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (citations and internal quotation marks omitted). In *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-05 (1975), the Supreme Court extended *Younger* to certain state civil proceedings that the Court regarded as more akin to a criminal proceedings than ordinary civil litigation between private parties.

But *Younger* abstention is the exception, not the rule. The Supreme Court clarified that *Younger* abstention is appropriate only when ongoing state proceedings fall within one of three categories: (1) ongoing state criminal proceedings; (2) certain state civil enforcement proceedings that are "akin to a criminal prosecution"; and (3) pending state civil proceedings

8

involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 134 S. Ct. at 591-92. Once a court determines that a case falls into one of these three categories, it must abstain from interfering when the proceedings are ongoing, implicate important state interests, and give the plaintiff an opportunity to raise her constitutional challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The first and third *Sprint* categories do not apply in this case, but Loertscher's state proceedings fall neatly in category two: the CHIPS proceeding and the administrative proceeding are akin to criminal prosecution for purposes of the court's *Younger* analysis. Under *Sprint*, the defining characteristics of civil enforcement proceedings akin to criminal prosecution are: (1) they are often meant to sanction the federal plaintiff for some wrongful act; (2) a state actor/authority often initiates the proceedings; (3) investigations are commonly involved; and (4) the investigation typically culminates in the filing of a formal complaint or charges. 134 S. Ct. at 592. In *Sprint*, the Supreme Court determined that *Younger* abstention was not appropriate because the state proceedings at issue in that case did not resemble criminal prosecution: a *private* corporate initiated the underlying proceedings, and no state authority conducted an investigation or lodged a formal complaint. *Id.*

Here, the Taylor County proceedings against Loertscher satisfy all four factors. At the time Loertscher filed her federal complaint, she was subject to two state proceedings: a CHIPS proceeding, pursuant to Wis. Stat. § 48.133; and an administrative proceeding concerning Loertscher's alleged maltreatment of her unborn child.[1] Taylor County actors

---

[1] Although the record before the court indicates that the TCDHS Agency Director affirmed the administrative maltreatment determination on November 10, 2014, Loertscher indicated that at the time she filed her federal complaint, she intended to "challenge the child

initiated the proceedings; they did so after conducting an investigation; and the investigation culminated in a formal petition and a maltreatment charge against Loertscher. Although the primary purpose of the CHIPS proceeding was to protect Loertscher's fetus, the proceedings resulted in coercive actions against Loertscher: she was subjected to involuntary medical treatment, required to attend a plea hearing and enter a plea, and confined in jail for contempt. The maltreatment determination was plainly a sanction for misconduct. The state proceedings against Loertscher meet the four factors identified in *Sprint* and constitute civil enforcement proceedings akin to criminal prosecution.

The court's conclusion is confirmed by one of the "category two" examples cited in *Sprint*: *Moore v. Sims*, 442 U.S. 415 (1979). In *Moore*, Texas authorities initiated a "suit for emergency protection of the children" after a school reported alleged instances of child abuse. *Id.* at 419. While the "suit affecting the parent-child relationship" was pending in Texas state court, the parents filed an action in federal court challenging the constitutionality of the applicable state statutes and seeking a temporary restraining order. The *Moore* Court determined that *Younger* abstention was appropriate because the "temporary removal of a child in a child-abuse context is . . . in aid of and closely related to criminal statutes." *Id.* at 423 (citation and internal quotation marks omitted). Essentially, the state proceeding in *Moore* was a CHIPS proceeding similar to the one Loertscher faced.

Loertscher attempts to distinguish her case from *Moore* on the grounds that the proceedings against her were not "in aid of and closely related to criminal statutes." Loertscher is correct that there is no Wisconsin statute criminalizing the precise behavior of which she was accused. (Drinking while pregnant is not illegal, although possession of

maltreatment finding in an administrative proceeding." Dkt. 1, ¶¶ 74-75.

methamphetamine is, even if one is not pregnant.) But the court is not persuaded that this distinction makes a difference because *Sprint* did not mention it. *Sprint* spelled out four factors, and they are met here. The court concludes that the Taylor County proceedings are akin to criminal prosecutions for purposes of *Younger* abstention.

Before abstaining, however, the court must consider whether the state proceedings satisfy the three *Middlesex* factors. The second and third factors are not controversial. With respect to the second factor, the state proceedings plainly implicated Wisconsin's interest in protecting children and families, an interest generally regarded as at the core of state, rather than federal, concern. The third *Middlesex* factor—whether the underlying state proceedings presented an adequate opportunity for plaintiff to challenge the constitutionality of the applicable statutes—is also satisfied. Defendants persuasively demonstrate that Loertscher had the opportunity to challenge the constitutionality of Act 292 in state court during or after either the CHIPS proceeding or the administrative action.

The first factor presents a more difficult question: whether the state proceedings are "ongoing." The state proceedings appear to have concluded since Loertscher filed her federal complaint. But Loertscher initiated her federal case when the state proceedings *were* ongoing, expressly asking this court to enjoin the state proceedings. The question is whether the status of the state proceeding must be judged strictly at the filing of the federal complaint.

*Huffman* strongly suggests that the status of the state proceedings at the time of filing dictates whether they are "ongoing" for purposes of *Younger* abstention:

> As a matter of state procedure, the judgment presumably became final, in the sense of being nonappealable, at some point after the District Court filing, possibly prior to entry of the District Court's own judgment, but surely after the single judge stayed the state court's judgment. We need not, however, engage in such inquiry. For regardless of when the Court of

11

> Common Pleas' judgment became final, we believe that a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies *before seeking relief in the District Court*, unless he can bring himself within one of the exceptions specified in *Younger*.

420 U.S. at 608 (emphasis added) (rejecting appellee's argument that *Younger* abstention did not apply because by the time the district court acted, the state court proceedings were no longer "pending"). *Huffman* also indicated that it made no difference whether state appellate remedies remained available at the time the district court below issued its permanent injunction. *Id.* at 618, n.22 ("[A]ppellee may not avoid the standards of *Younger* by simply failing to comply with the procedures of perfecting its appeal within the Ohio judicial system."). But *Huffman* did not concern the precise issue now before the court. Rather, *Huffman* considered the implications of a federal court inserting itself into state court proceedings between the trial and appellate process; the *Huffman* Court held that the district court should not have entertained an action to enjoin execution of a state court judgment prior to exhaustion of state appellate remedies.[2]

Other Seventh Circuit authority suggests that a state case may not be ongoing for *Younger* purposes if it is resolved during the pendency of the federal litigation. In *Leaf v. Supreme Court of State of Wisconsin*, the Seventh Circuit determined that although state

---

[2] Other courts, including the Seventh Circuit, have also taken this approach, evaluating whether a state proceeding is ongoing at the time of filing. *See Crenshaw v. Supreme Court of Ind.*, 170 F.3d 725, 728 (7th Cir. 1999) (evaluating whether state proceedings were ongoing at the time plaintiff filed the federal complaint); *see also Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012) ("[T]he relevant time for determining if there are ongoing state proceedings is when the federal complaint is filed.") (citing *Beltran v. State of California*, 871 F.2d 777, 782 (9th Cir. 1989)). However, *Crenshaw* did not concern state proceedings that concluded *after* the plaintiff filed a federal complaint but *before* the court had the opportunity to address *Younger* abstention. It addressed state proceedings that may not have initiated in time to be considered "ongoing" at the time the plaintiff filed the federal complaint.

proceedings were ongoing at one point in the federal litigation, the state proceedings had resolved by the time the court considered dismissing the action, rendering abstention inappropriate. 979 F.2d 589, 595-96 (7th Cir. 1992) ("The state proceedings terminated before the district court's dismissal and before this decision. Therefore, the time for abstention has expired.") (citing *Allee v. Medrano*, 416 U.S. 802, 817 (1974) (finding no evidence in the record that state court proceedings were pending at the time the district court issued its decision)). In *Greening v. Moran*, the Seventh Circuit recognized that although abstention would have been appropriate earlier in the case, the court's opportunity to abstain expired, so to speak, upon conclusion of the underlying state proceedings. 953 F.2d 301, 305 (7th Cir. 1992) (holding that abstention was "no longer appropriate" after the state court proceedings had concluded); *see also Perkins v. Cnty. of Cook*, No. 13-cv-2430, 2014 WL 4783015, at *3 (N.D. Ill. Sept. 24, 2014) ("Shortly after Defendants' motions to dismiss were fully briefed, the Circuit Court of Cook County issued a final judgment in favor of Defendants. Thus, the state court proceedings are no longer 'ongoing' and, as a result, Defendants' arguments concerning *Younger* abstention do not apply."). This is precisely the factual scenario that the court now confronts.

None of those Seventh Circuit cases considered *Huffman* in this context. However, the analogous procedural postures of *Leaf* and *Greening* persuade the court that abstention in this case is no longer appropriate. Not only have Loertscher's state proceedings concluded, as in *Greening* and *Leaf*, but *Younger*'s larger policy concerns are no longer at issue: the court is not at risk of interfering in Loertscher's state proceedings because the proceedings have concluded. Accordingly, the court will not abstain.

## B. Mootness

The fact that the state proceedings have ceased raises the question of mootness, which defendants present in a supplemental motion to dismiss. Dkt. 48. A case is moot when the underlying problem has resolved or concluded and nothing remains for the court to adjudicate. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982). Mootness is a constitutional bar on this court's jurisdiction: "the parties must continue to have a personal stake in the ultimate disposition of the lawsuit. . . . There is thus no case or controversy, and a suit becomes moot, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (internal citations and quotation marks omitted). As the party asserting mootness, defendants bear the burden of persuasion on the issue. *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004).

Defendants contend that this case is now moot because both the CHIPS proceeding and the maltreatment determination have been dismissed. But Loertscher responds that her case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine.[3] As the Supreme Court articulated the doctrine in *Weinstein v. Bradford*, cases that are otherwise moot remain live if: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." 423 U.S. 147, 149 (1975) (per curiam). The Court refers to these types of disputes as

---

[3] Loertscher does not raise the "voluntary cessation" exception to mootness. *See generally* Dkt. 56. "Voluntary cessation," which does not moot a case, happens when a defendant ceases a challenged proceeding or activity for purposes of evading judicial review. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000). Nothing in the record of this case suggests that defendants terminated or withdrew any action against Loertscher for the purpose of evading this court's review.

"capable of repetition, yet evading review," but the doctrine applies only in exceptional situations. *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal citations omitted). The capable of repetition exception is "kept under tight control to keep it from swallowing the general prohibition on deciding moot cases." *Aslin v. Fin. Indus. Regulatory Auth., Inc.*, 704 F.3d 475, 479 (7th Cir. 2013). The mere possibility of reoccurrence is not sufficient to overcome a mootness challenge. *Murphy*, 455 U.S. at 482. Otherwise, "virtually any matter of short duration would be reviewable. Rather, [the Supreme Court has] said that there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.*

All agree that the first element of the capable of repetition exception is met here: the challenged action was over before it could be fully litigated. But the second element presents a more difficult question. In general, the capable of repetition exception requires that the *same plaintiff* face a reasonable expectation of repeated injury. *Weinstein*, 423 U.S. at 149; *Brandt v. Bd. of Educ. of Chi.*, 480 F.3d 460, 464 (7th Cir. 2007) ("[The plaintiffs] could not invoke the exception, to the normal rule of mootness, for claims that are 'capable of repetition, yet evading review,' . . . because it requires that the claim be repeatable by the same plaintiff."). Although it is theoretically possible that Loertscher could once again face a petition under the authority of Act 292, she has not shown (or even alleged facts that would suggest) any reasonable expectation that she will face such a petition in the future. And the number of contingent events that would have to occur, in sequence, makes it simply too speculative that Loertscher would again be subjected to the injury that she alleges in this case. *Cf. Eichwedel v. Curry*, 700 F.3d 275, 281 (7th Cir. 2012) (assertion of a reoccurring injury was "based on several interdependent contingencies, each of which is entirely speculative in

nature. . . . The possibility of such a situation occurring is, to put it mildly, speculative and therefore far from the 'reasonable expectation' required by the prevailing test").

The court will not assume that Loertscher might repeat the conduct that led to the CHIPS petition. *C.f. Honig v. Doe*, 484 U.S. 305, 320 (1988) ("Our cases reveal that, for purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury."). True, she may get pregnant again (despite her thyroid condition). But this would be only the first of several steps that would have to occur before Loertscher would suffer the same injury. Once pregnant, a third-party would have to become concerned enough about Loertscher's past drug use to report her to state authorities. Those authorities would then have to decide to initiate a CHIPS proceeding. Finally, a court commissioner or judge would have to find that jurisdiction exists under Wis. Stat. § 48.133. The capable of repetition doctrine does not require Loertscher to show that it is highly probable that she would face a CHIPS petition again, but she has not explained how her chances rise above a mere theoretical possibility.

Loertscher relies on *McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015), to argue that uncertainty surrounding future CHIPS petitions does not preclude applying the capable of repetition exception. But this case is not binding precedent and, in any event, it is distinguishable. *McCormack* involved a woman who became pregnant and then self-terminated that pregnancy by taking pills that her sister ordered online. 788 F.3d at 1022. State prosecutors charged the woman with a felony for "submit[ting] to an abortion in a manner not authorized by statute." *Id.* at 1022 n.2. The criminal charges were eventually dismissed for lack of probable cause, and prosecutors offered the woman transactional immunity for the

16

abortion. *Id.* at 1022-23. When the woman filed a civil rights suit, the defendant contended that the offer of immunity mooted her claim. *Id.* at 1024. The Ninth Circuit affirmed the district court's conclusion that the woman's claims qualified for the capable of repetition exception (as well as two other exceptions to the mootness doctrine). *Id.* at 1025-26.

The string of events that would have had to occur for re-injury in *McCormack* is of a different character than the contingencies at issue in this case. For example, in *McCormack*, the requisite contingencies, i.e., becoming pregnant, having an abortion, and ordering pills online, are generally the woman's own actions. Loertscher's re-injury depends almost entirely on the actions of *others*, including, critically, a judge or court commissioner finding that Act 292's standard for jurisdiction is satisfied. Loertscher cannot show that she has a reasonable expectation of being subjected to the alleged injury again in the future.

But this does not end the mootness inquiry. Although Loertscher herself—the "complaining plaintiff"—is not reasonably expected to face re-injury in the future, the court recognizes that in some contexts, courts have been less strict with the requirement that an injury must reoccur with respect to the same complaining party. *See Majors v. Abell,* 317 F.3d 719, 723 (7th Cir. 2003) ("[W]hile canonical statements of the exception to mootness for cases capable of repetition but evading review require that the dispute giving rise to the case be capable of repetition *by the same plaintiff* . . . the courts, perhaps to avoid complicating lawsuits with incessant interruptions to assure the continued existence of a live controversy, do not interpret the requirement literally, at least in abortion and election cases.") (original emphasis). Particularly in cases concerning pregnancy and election law, courts have broadened their reoccurrence inquiries and considered whether there is a reasonable expectation that a member of the public at large will experience the same injury. *See, e.g.*, *Roe*

17

*v. Wade*, 410 U.S. 113, 125 (1973) (abortion); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973) (election law). And the Seventh Circuit has indicated that it is willing to extend this relaxed inquiry to other types of cases as well. *See, e.g., Jones v. Ill. Dep't of Rehab. Servs.*, 689 F.2d 724, 728 (7th Cir. 1982) (in the education context).

Loertscher invokes these principles and asks the court to consider whether *other women*, generally, stand to incur alleged injuries under Act 292. Defendants protest that this case is not about abortion rights and does not qualify for the "broadened inquiry" because this case involves more than just pregnancy, which is the Supreme Court's "classic justification for a conclusion of nonmootness." *Roe*, 410 U.S. at 125.

This is a close question, but Loertscher has the better argument. *Roe* held that

> when, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid.

*Id.* This case does not directly involve abortion. However, pregnancy is an absolute precondition for a proceeding under Act 292—had Loertscher not been pregnant, none of the injuries alleged in this case would have happened. As in *Roe*, pregnancy is therefore a "significant fact" in this case, and the capable of repetition inquiry should therefore entail examining whether other women in Wisconsin reasonably expect to be subjected to an injury similar to the one that Loertscher suffered.

Loertscher has cited statistics in official reports concerning the extent to which Wisconsin has used Act 292's provisions to institute some sort of proceeding against pregnant women. *See* Dkt. 56, at 15. Defendants quibble with the statistics, Dkt. 57, at 5

n.2, but they do not dispute that Wisconsin officials are actively implementing Act 292's provisions. Moreover, given the confidentiality of CHIPS proceedings, it is difficult to ascertain the full extent to which Wisconsin is applying the challenged statutes.

Loertscher's own re-injury may be too speculative to overcome a mootness challenge. But given the scope of Act 292, it is appropriate to consider whether the public at large has a reasonable expectation of being subjected to the challenged conduct. The court concludes that, with this broader perspective, Loertscher's case is capable of repetition yet evading review. To conclude otherwise would effectively put Act 292 beyond federal review.

## C. Plaintiff's motion to seal

When Loertscher filed this case, she attached as exhibits to her complaint some of the records from the underlying CHIPS proceeding. Loertscher's purpose in filing this suit is to challenge the constitutionality of the law that authorized the proceeding against her, but she would also like to tell the story of what happened to her under the auspices of Act 292. Her story provides a vivid example of what she contends is the abuse of the rights of pregnant women that inevitably flows from enforcement of the law.

Loertscher would like her story to be open to the public and, for the most part, it already is—Loertscher describes what happened to her in detail in her complaint, and she has spoken to the media about her experience. But Loertscher also wants the public to see the actual records of the underlying proceeding. She was constrained to file those records with a motion to seal them, Dkt. 2, because under Wisconsin law, proceedings under the Children's Code are confidential. Wis. Stat. § 48.396(2). Loertscher has opposed her own motion to seal the records, asking this court to make them public. The court provisionally granted the

motion to seal the records and asked for briefing from both sides concerning whether they should remain under seal. Dkt. 6.

In a second motion to seal, Dkt. 15, Loertscher requests that some of her own medical records remain sealed, namely, those submitted as Exhibits B and C with her motion for preliminary injunction. Dkt. 16-2 and Dkt. 16-3. Defendants do not oppose this request. The court will allow Loertscher to redact from her medical records any private information that is not pertinent to the CHIPS proceeding. But Exhibits B and C also include pertinent documentation of Loertscher's drug tests, her depression, her evaluation by a clinic physician, and her response to that evaluation. This material should be part of the public record because this evidence informed the Taylor County court's decisions to enforce Act 292 against Loertscher.

Turning now to the main issue, the court considers whether the records of the proceedings against Loertscher, which have been filed with this court, should remain under seal in this case. Defendants contend that both Wisconsin law and federal law require that those records remain sealed and that this court does not have the authority to unseal them. Defendants also argue that even if this court has the authority to unseal the records, it should keep them sealed to protect the interests of Loertscher's child.

Defendants are correct that under Wisconsin law, the record of a CHIPS proceeding—like most proceedings involving juveniles—is presumptively confidential. There are circumstances under which some of the records of a CHIPS proceeding may be disclosed to specified interested parties, such as a parent or guardian, but there is no provision of Wisconsin law that would allow the record of a CHIPS proceeding to be disclosed in open

court so that the public would have access to it. If Wisconsin law governs, then this court would have to deny Loertscher's motion to unseal the CHIPS record.

The court is less persuaded by defendants' argument concerning federal law. The federal Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5106a, sets standards for state child protective programs, and those standards include confidentiality provisions that limit the disclosure of juvenile records. 42 U.S.C. § 5106a(b)(2). Unlike Wisconsin's Children's Code after Act 292, CAPTA does not apply to proceedings involving a fetus. Defendants have not pointed to any provision in CAPTA that would prohibit disclosure of the records of a CHIPS proceeding involving an expectant mother.

Loertscher contends that the confidentiality provisions of Wisconsin's Children's Code do not bind this court, as the court has the inherent authority to seal or unseal its own filings, guided by the principles expressed in *Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1314 (7th Cir. 1984). Loertscher cites a well-reasoned district court decision holding that confidentiality provisions of state child protective laws do not bind a federal court. *Tower v. Leslie-Brown*, 167 F. Supp. 2d 399, 404 (D. Me. 2001). The *Tower* court, relying on *Nixon v. Warner Communications*, 435 U.S. 589, 602 (1978), concluded that it was obligated to identify and balance the interests at stake when deciding whether to seal the records of a child protective proceeding. First Circuit law concerning the presumption of access to federal courts is consistent with Seventh Circuit law. *Compare Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9 (1st Cir. 1998), *with Continental*, 732 F.2d 1302. The *Tower* approach is correct: this court is not automatically obligated to seal the records of Loertscher's CHIPS proceeding simply because Wisconsin law provides that such records are confidential.

21

The court begins its balancing analysis with the strong presumption that the records of this court are open to the public, as it must under *Continental*. But the confidentiality provisions of Wisconsin's Children's Code constitute a strong expression of Wisconsin's interest in the confidentiality of CHIPS proceedings. To decide whether Wisconsin's general interest in confidentiality overcomes the presumption of access, the court will consider the interests at stake in this specific case.

Defendants make a good case that a child involved in a CHIPS proceeding generally has a strong interest in preventing the disclosure of facts concerning the child's abuse or neglect. But that interest is diminished in this case for two reasons. First, Loertscher's child did not suffer the type of abuse or neglect that would typically be severely humiliating to a child if disclosed. Although Loertscher's child would probably not take pride in the fact that his mother used drugs while pregnant, this disclosure is simply not on par with allegations of, for example, sexual abuse or severe neglect. The court will not go so far as Loertscher, who argues that her child has *no* interest in the confidentiality of the CHIPS proceeding because he was not, at the time, an actual child. But the future interests of Loertscher's child in maintaining the confidentiality of the CHIPS proceeding involving his mother are highly attenuated.

Second, and more importantly, keeping the records under seal in this court will not prevent Loertscher from disclosing the details of the CHIPS proceeding. Wisconsin law does not prevent the parents in a CHIPS proceeding from talking about what happened to them, although in most cases they probably would not do so. But this is an unusual CHIPS case in that Loertscher has willingly disclosed the details of her experience in her complaint and to

22

the media. In light of the fact that Loertscher's story is already out, keeping the records of the CHIPS proceeding sealed will not protect Loertscher's child.

Keeping the records sealed will, however, keep the public from seeing the details of how Taylor County officials pressed their case against Loertscher. Defendants argue that these details are unnecessary because Loertscher's challenge to Act 292 is a facial challenge that does not depend on her individual circumstances. This will be a fair argument to make on the merits of Loertscher's case. But in the context of Loertscher's motion to unseal the records of the CHIPS proceeding, it is beside the point. Wisconsin has no legitimate interest in shielding the work of Taylor County officials from public scrutiny. To the contrary, the public has a compelling interest in seeing the records of the CHIPS proceeding involving Loertscher. Public disclosure of those records will not impair any interest that Loertscher's child might have in his privacy because the information critical to him has already been disclosed. The court will grant Loertscher's motion and unseal the records of the CHIPS proceeding.

**D. Remaining issues in defendants' motions to dismiss**

Because neither abstention nor mootness will prevent this case from going forward, the court must address the remaining aspects of defendants' motions to dismiss.

### 1. Failure to state a claim under 42 U.S.C. § 1983

Defendants contend that Loertscher fails to state a claim under § 1983 because she has adequate state law remedies. Dkt. 41, at 12-13.[4] By "adequate state law remedies," defendants refer to Loertscher's opportunity to challenge the constitutionality of Act 292 in

---

[4] Defendants appear to abandon this argument because they do not address it in their reply. *See generally* Dkt. 57.

Wisconsin state court. But this implies an exhaustion requirement that does not exist. *Armstrong v. Daily*, 786 F.3d 529, 542 (7th Cir. 2015) ("The federal remedy under § 1983 is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.") (internal citations and quotation marks omitted). To bring a claim under § 1983, a plaintiff need not demonstrate that federal court is her only avenue for relief.

The requirement that Loertscher have "no adequate remedy at law" to pursue her claims for equitable relief simply refers to the fact that legal remedies must be unable to sufficiently address Loertscher's alleged harm. Loertscher has plausibly alleged that monetary damages would be insufficient to redress her injury; indeed, she requests only injunctive relief. At any rate, as Loertscher notes, she also requests declaratory judgment, which is not subject to the requirement that there be no adequate remedy at law. Thus, the court concludes that Loertscher's complaint states a claim upon which relief may be granted under § 1983.

### 2.   Proper parties

Defendants contend that Attorney General Schimel is not an appropriate defendant in this case because he lacks the specific authority to enforce or enjoin Act 292.[5] However, a recent § 1983 case challenging the constitutionality of a Wisconsin abortion-related statute and seeking to enjoin its enforcement named then-Attorney General J.B. Van Hollen as a defendant "involved in enforcing the statute." *See Planned Parenthood of Wis., Inc. v. Van*

---

[5] Defendants frame this issue as one of standing, Dkt. 41, at 13, but they do not argue that Loertscher lacks an injury in fact, a causal connection between her injury and enforcement of the challenged statute, or redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). They merely argue that the Attorney General is an inappropriate defendant.

*Hollen*, 738 F.3d 786, 788 (7th Cir. 2013) (affirming the district court's preliminary injunction of the statute), *cert. denied*, 134 S. Ct. 2841 (2014). That case is very similar to this one. Like Attorney General Van Hollen once was, Attorney General Schimel is now Wisconsin's top law enforcement official. He has the power to enforce a state-wide injunction, which is exactly the relief that Loertscher seeks. He is therefore a proper defendant in this case.

### 3. Failure to provide a short and plain statement of a claim for relief under Federal Rule of Civil Procedure 8

Finally, defendants contend that Loertscher fails to plead sufficient facts under Rule 8 to give fair notice of her First and Fourth Amendment claims. Loertscher is not required to plead her legal theories. *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006). Nevertheless, defendants contend that Loertscher fails to tie specific facts from her narrative to her allegations regarding state-coerced speech and an unreasonable search and seizure. Dkt. 41, at 17. Although it is true that Loertscher does not explicitly tie specific facts to each claim, she has given defendants fair notice of her allegations and their factual bases and, in her responsive brief, she identifies paragraphs that relate to her First and Fourth Amendment claims. The court concludes that Loertscher has plead sufficient facts under Rule 8, and dismissal is not appropriate on these grounds.

### E. Conclusion

Because abstention is no longer appropriate and because Loertscher's case is capable of repetition yet evading review, Loertscher's claims are not moot and will go forward. Loertscher's motion to unseal the majority of the records from the CHIPS proceeding, Dkt. 15, will be granted. Loertscher has moved, without opposition, to withdraw her motion

for preliminary injunction. Dkt. 54. That motion will be granted, and thus the motion for preliminary injunction, Dkt. 13, will be stricken. Loertscher's additional motions to be heard, Dkt. 47 and Dkt. 59, will be denied as unnecessary. The court will set a schedule to hear the merits of her constitutional challenge in a subsequent order.

ORDER

IT IS ORDERED that:

1. Defendants Brad Schimel and Eloise Anderson's motions to dismiss, Dkt. 40 and Dkt. 48, are DENIED.

2. Plaintiff Tamara Loertscher's second motion to seal, Dkt. 15, is GRANTED.

3. Plaintiff's motion to withdraw her motion for preliminary injunction, Dkt. 54, is GRANTED.

4. Plaintiff's withdrawn motion for preliminary injunction, Dkt. 13, is STRICKEN.

5. Plaintiff's motion for a scheduling conference, Dkt. 47, is DENIED as moot.

6. Plaintiff's motion for oral argument or sur-reply, Dkt. 59, is DENIED as moot.

Entered September 30, 2015.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge