**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

**TAMARA M. LOERTSCHER**

Plaintiff,

CIVIL ACTION

v.

Case No. 14-cv-870

**BRAD D. SCHIMEL**, in his official capacity as
ATTORNEY GENERAL OF THE
STATE OF WISCONSIN, and

**ELOISE ANDERSON**, in her official capacity as
SECRETARY OF THE DEPARTMENT OF
CHILDREN AND FAMILIES

Defendants.

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ....1

I. MS. LOERTSCHER'S CURRENT RELOCATION OUT OF STATE IS IMMATERIAL TO THIS COURT'S HOLDING THAT THIS CASE IS CAPABLE OF REPETITION, YET EVADING REVIEW ....2

A. The Interests of the Public at Large Are Unaffected by Ms. Loertscher's Presence In or Out of Wisconsin .... 2

B. The Case Law Cited by State Defendants Does Not Apply To or Alter This Court's Finding of Justiciability in the Present Case .... 6

II. THIS COURT'S RULING ON THE STATE DEFENDANTS' FIRST MOOTNESS CHALLENGE IS THE LAW OF THE CASE ....10

III. MS. LOERTSCHER'S CURRENT RELOCATION OUT OF STATE DOES NOT MAKE HER MEANINGFULLY LESS LIKELY TO BE SUBJECT TO THE ACT IN THE FUTURE ....10

CONCLUSION....13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Artway v. Attorney Gen.*,
81 F.3d 1235 (3rd Cir. 1996) ....................................................................................11

*Avitia v. Metropolitan Club*,
49 F.3d 1219 (7th Cir. 1995) ....................................................................................10

*Bishop v. Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n*,
686 F.2d 1278 (8th Cir. 1982) ....................................................................................8

*Camreta v. Greene*,
131 S. Ct 2020 (2011)....................................................................................................7

*Christianson v. Colt Indus. Operating Corp*.,
486 U.S. 800 (1988)....................................................................................................10

*Cloak v. Cody*,
449 F.2d 781 (4th Cir. 1971) ......................................................................................8

*Cooley v. Granholm*,
291 F.3d 880 (6th Cir. 2002) ......................................................................................7

*Dawes v. Walker*,
239 F.3d 489 (2d Cir. 2001)........................................................................................8

*Higgason v. Farley*,
83 F.3d 807 (7th Cir. 1996) ........................................................................................7

*In re A.C.*,
573 A.2d 1235 (D.C. Ct. App. 1990).....................................................................4, 5

*In re Ballay*,
482 F.2d 648 (D.C. Cir. 1973)...................................................................................13

*Jackson v. Carlson*,
707 F.2d 943 (7th Cir. 1983) ....................................................................................13

*Jones v. Ill. Dep't of Rehab. Servs*.,
689 F.2d 724 (7th Cir. 1982) ......................................................................................3

*Kopff v. District of Columbia Alcoholic Beverage Control Board*,
381 A.2d 1372 (D.C.1977) ..........................................................................................4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lucero v. Trosch*,
121 F.3d 591 (11th Cir. 1997) ....................8

*Majors v. Abell*,
317 F.3d 719 (7th Cir. 2003) ....................3

*Moore v. Thieret*,
862 F.2d 148 (7th Cir.1988) ....................7

*Oregon Advocacy Ctr. v. Mink*,
322 F.3d 1101 (9th Cir. 2003) ....................9

*Parker v. Franklin County Community School Corp.*,
667 F.3d 910 (7th Cir. 2012) ....................6, 7

*Roe v. Wade*,
410 U.S. 113 (1973)....................2

*Rosario v. Rockefeller*,
410 U.S. 752 (1973)....................3

*Sierra Club v. Khanjee Holding (US) Inc.*,
655 F.3d 699 (7th Cir. 2011) ....................10

*Ukrainian-American Bar Ass'n v. Baker*,
893 F.2d 1374 (D.C. Cir. 1990)....................9

*United States v. Howard*,
480 F.3d 1005 (9th Cir. 2007) ....................9

*United States v. Reyes-Gutierrez*,
No. 08-M-67, 2008 U.S. ....................9

**STATUTES**

Wis. Stat. § 961.01(4) ....................12

Wis. Stat. § 961.16....................12

Wis. Stat. § 961.18....................12

Wis. Stat. § 961.20....................12

Wis. Stat. § 961.22....................12

Wis. Stat. § 48.02(19) ....................12

Wis. Stat. § 48.133 ........ 11

Wis. Stat. § 48.193(1)(d)(2) ........ 11

Wis. Stat. § 48.205(1m) ........ 11

Wis. Stat. § 48.981(2) ........ 12

Wis. Stat. § 148.133 ........ 12

**OTHER AUTHORITIES**

DCF, Wisconsin Child Abuse and Neglect Annual Reports (1999-2013), *http://dcf.wisconsin.gov/cwreview/reports/CAN-Y.htm* ........ 5

Federal Rule of Civil Procedure 10(c) ........ 3

**INTRODUCTION**

Despite previous rejection of a motion to dismiss on similar grounds, State Defendants once again ask this Court to dismiss Ms. Loertscher's constitutional challenge to the 1997 Act 292 changes to Wisconsin's Children's Code, codified at Wis. Stat. Ann. Chapt. 48 et seq.[1] ("The Act"), based on mootness. But their sole basis for renewing their mootness challenge is the fact that Ms. Loertscher is presently living out of state. This fact does nothing to undermine this Court's previous ruling that this case is not moot because it is capable of repetition, yet evading review. As this Court previously held, while proceedings against Ms. Loertscher have ended, and the risk of future State action against her under this law may be relatively low, "the public at large" retains an important interest in this litigation because the State continues to enforce this unconstitutional law against other Wisconsin women. This analysis remains the same, whether Ms. Loertscher lives in Wisconsin or elsewhere. Thus, this Court's prior reasoning applies with equal force. Furthermore, the ruling that Ms. Loertscher's claims are not moot is the law of the case, and nothing has changed that would justify revisiting that decision, let alone reversing it.

Moreover, the fact that Ms. Loertscher has relocated out of state for the time being makes her no less likely to be subjected to the Act in the future. Indeed, Wisconsin is her domicile, where her mother, grandparents, and other family members remain. She also retains a significant personal stake in this litigation because she is subject to the Act's enforcement any time she

[1] As Plaintiff explained in her Complaint and Amended Complaint, she is specifically challenging Wisconsin's 1997 amendments, referred to as Act 292, to its Children's Code, codified at Wis. Stat. Ann. Chapt. 48 et. seq. The legislation made multiple changes throughout the Children's Code, creating a scheme that permits the state of Wisconsin to arrest, detain, and otherwise violate the fundamental liberties of pregnant women who have allegedly used alcohol or controlled substances. For ease of discussion, Ms. Loertscher refers to that legislation as "1997 Wisconsin Act 292" or "the Act." As an aid to identifying its specific changes to the Children's Code, the Act can be found here: *https://docs.legis.wisconsin.gov/1997/related/acts/292*; (*See also* ECF 1-1).

returns to her home state, even for a family visit. In short, Ms. Loertscher's current living situation does not change this Court's correct analysis that this case is not moot, as it fits squarely within the "capable of repetition yet evading review" exception to the mootness doctrine.

Accordingly, Ms. Loertscher respectfully requests that this Court deny State Defendants' latest motion.

## I. MS. LOERTSCHER'S CURRENT RELOCATION OUT OF STATE IS IMMATERIAL TO THIS COURT'S HOLDING THAT THIS CASE IS CAPABLE OF REPETITION, YET EVADING REVIEW

This Court rejected the State's previous motion to dismiss (ECF 48), holding that the controversy at issue in this case is "capable of repetition yet evading review" because issues of broad public interest would remain unaddressed unless the Court retained jurisdiction. (ECF 61 at 19). This Court thus rejected Defendants' mootness challenge even though all of the original state proceedings against Ms. Loertscher had already concluded and notwithstanding the limited likelihood that Ms. Loertscher herself would personally be subjected to the Act again. State Defendants now claim that Ms. Loertscher's current living arrangements outside Wisconsin requires a renewed mootness inquiry (ECF 69 at 1), but that is wholly inconsistent with this Court's prior ruling, and the case law cited by State Defendants has no bearing here.

### A. The Interests of The Public at Large Are Unaffected By Ms. Loertscher's Presence In or Out Of Wisconsin

In determining that this case fits the "capable of repetition yet evading review" doctrine, this Court explained, "in some contexts, courts have been less strict with the requirement that an injury must reoccur with respect to the same complaining party." (ECF 61 at 17). Pregnancy cases, in particular, warrant different considerations due to the exceptional nature and short duration of pregnancy. (ECF 61 at 18, citing *Roe v. Wade,* 410 U.S. 113, 125 (1973)); *see also*

*Majors v. Abell*, 317 F.3d 719, 722-23 (7th Cir. 2003). The context of pregnancy, along with the State's continued active implementation of the Act against other pregnant Wisconsin women, led this Court to conclude that the case presented a justiciable controversy because of the "reasonable expectation that a member of the public at large will experience the same injury." (ECF 61 at 17 (citing *Roe v. Wade* 410 U.S. 113, 125 (1973); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973); *Jones v. Ill. Dep't of Rehab. Servs*., 689 F.2d 724, 728 (7th Cir. 1982)). Ms. Loertscher's relocation out of state in no way reduces the risk the Act poses to all Wisconsin women capable of becoming pregnant.

As this Court's ruling and Ms. Loertscher's response to the State Defendants' prior motion demonstrate, there is ample support for finding justiciability on this basis.[2] Since this Court's holding did not rest primarily on the degree of likelihood of Ms. Loertscher being subject to the Act in the future—but rather the high probability that other women would be—whether Ms. Loertscher currently lives in Wisconsin has no bearing on this Court's previous holding.

Moreover, dismissal of the State Defendants would directly undermine the public interests described by this Court and ensure that the alleged unconstitutional actions continue to "evade review" because the State Defendants are solely responsible for the statewide enforcement and implementation of the Act. If State Defendants are dismissed from this case, Ms. Loertscher and this Court will face significant challenges in examining the Act's operation against members of the Wisconsin public. As this Court noted, the confidentiality of proceedings under the Act is a formidable obstacle to public knowledge about this law, including how it is being applied and whom it has harmed. (ECF 61 at 19). The State Defendants are the only

[2] In addition to the authority discussed below, in support of this conclusion, Ms. Loertscher, in accordance with Federal Rule of Civil Procedure 10(c), reiterates and incorporates by reference her prior arguments that this case is "capable of repetition, yet evading review" because pregnancy is an integral part of the Act's enforcement and because the public interest favors review. Plaintiff's Brief in Opposition to Defendants' Supplemental Motion to Dismiss, ECF 56 at 9-18.

parties with access to information concerning statewide application of the Act, including the extent to which the State's preference (expressed in the Act) for supposed fetal wellbeing over women's decisional authority has disrupted the lives, medical decision-making, and constitutional rights of Wisconsin women. As this Court also noted in its opinion, the State Defendants are the appropriate parties for the relief Ms. Loertscher seeks—a statewide injunction against enforcement of the Act—because they are the only parties in this matter with the authority to carry out such an injunction. (ECF 61 at 24-25).

As Ms. Loertscher's case demonstrates, the Act affords women no notice, no guaranteed access to counsel or medical experts acting on their behalf, and no enforceable right to confront evidence prior to the deprivation of their liberty and decisional autonomy, among multiple other wrongs of constitutional magnitude. (ECF 66, ¶¶ 25-39). The Act supplants the pregnant woman's decisions about her pregnancy and the medical treatment arising from any other health condition during her pregnancy. (EFC 66, ¶¶ 25-39). In short, this case is justiciable because of its profound implications for the public at large. Jurisdiction over the State Defendants is both proper and necessary to preserve this Court's opportunity to assess the Act's infirmities and, ultimately, to enjoin them statewide.

The reasoning of *In re A.C.*, 573 A.2d 1235 (D.C. Ct. App. 1990), a District of Columbia Court of Appeals in a case involving a pregnant woman whose death was hastened by a court-ordered caesarean surgery, is instructive here.[3] *In re A.C.* concerned Angela Carder, who was pregnant and suffering from terminal cancer. *Id.* at 1238. At the request of the hospital treating

[3] The District of Columbia has adopted the same case-or-controversy strictures imposed on federal courts by Article III. *See Kopff v. District of Columbia Alcoholic Beverage Control Board*, 381 A.2d 1372, 1377-1378 & n. 11 (D.C.1977) ("Although the District of Columbia Court of Appeals has been established by Congress pursuant to Article I of the Constitution rather than Article III…our jurisdiction is limited by the same "case or controversy" requirement, *see* D.C. Code 1973, s 11-705(b), as that imposed on the Article III courts.") (citations omitted). The reasoning of *In re AC* therefore applies equally to federal constitutional claims.

Ms. Carder, a trial court granted an order forcing her to submit to caesarean surgery in an attempt to save her 26 and ½ week fetus, despite evidence that she would not have agreed to the surgery and over her family's objections. 573 A.2d at1241. Ms. Carder's baby died within 2 and ½ hours of the surgery; Ms. Carder died two days later. *Id*. Upon *en banc* review, the D.C. Court of Appeals reversed the trial court's order and, critically, held that the case was not moot despite the death of Ms. Carder and her baby, in part because the case was "capable of repetition, yet evading review." *Id.* at 1242. As that court explained, there was a "reasonable expectation" that a similar conflict would recur, because the hospital ran a high-risk pregnancy clinic. *Id.* Obviously, the D.C. Court's reasoning was grounded in the likelihood of such *circumstances* recurring and the necessity for the Court to rule on the important questions at stake, not on the likelihood of the same woman facing the same circumstances in the future, which in that case was not merely unlikely but impossible.

Like the hospital in *A.C.*, State Defendants continue to enforce this Act against other women. In fact, the likelihood of cases like Ms. Loertscher's recurring is far greater, as the State's own reports indicate that it enforces the Act against hundreds of women each year. *See* DCF, Wisconsin Child Abuse and Neglect Annual Reports (1999-2013), *http://dcf.wisconsin.gov/cwreview/reports/CAN-Y.htm*. Because of the Act's terms and operation, those proceedings, like the ones against Ms. Loertscher, not only violate the constitutional rights of any woman subjected to them but also occur in confidential proceedings. As this Court explicitly affirmed, the limited duration of pregnancy, the important public interests at stake here, and the Act's operation in secrecy bring this case squarely within the "capable of repetition yet evading review" exception to the mootness doctrine. Whether Ms.

Loertscher's is currently living inside or outside of Wisconsin does not impact this analysis and, is, accordingly, irrelevant.

### B. The Case Law Cited by State Defendants Does Not Apply To or Alter This Court's Finding Of Justiciability in the Present Case

In rejecting the State Defendants' prior motion, this Court relied on the "capable of repetition yet evading review" exception to the mootness doctrine and the special context of pregnancy, which heightens the importance of the public interest analysis. As this Court rightly concluded, where, as here, pregnancy is a "significant fact" in a case, the relevant inquiry for application of the "capable of repetition yet evading review" exception focuses on whether "the public at large" has a reasonable expectation of being subjected to the challenged conduct, not whether the challenged conduct will likely occur to the same plaintiff. (ECF 61 at 17-19). None of the cases cited by State Defendants involve pregnancy, nor do any of them discuss the "capable of repetition yet evading review" doctrine in remotely comparable circumstances (and most of them fail to mention the doctrine at all). In each of the cases cited by State Defendants, the mootness inquiry depended solely on the *specific plaintiff's* subjection to the challenged law.

For example, State Defendants rely on *Parker v. Franklin County Community School Corp.*, 667 F.3d 910, 913 (7th Cir. 2012), which considered claims by a parent that Indiana public schools discriminated against her daughter by scheduling boys high school basketball games on Friday and Saturday nights but relegating girls basketball games to Monday through Thursday. The Court of Appeals allowed plaintiffs to proceed with her claims for compensatory damages but determined without discussion that the claims for injunctive relief were moot because the daughter no longer attended Franklin High School. *Id.* at 915. The Court never discussed the "capable of repetition yet evading review" doctrine, nor did the case involve pregnancy.

Similarly, *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir. 1996), concerned a civil rights lawsuit challenging an inmate's placement in a segregation unit of a particular prison. The Court of Appeals determined that the inmate's transfer from his original prison rendered his claim for injunctive relief concerning the original prison moot, citing Seventh Circuit law that when "a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Id*. at 811 (*citing Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir.1988)). This specific doctrine has no application to constitutional claims involving pregnancy, which do not require a plaintiff to demonstrate the likelihood of a future pregnancy in order to avoid mootness. Instead, as this Court correctly concluded, the critical inquiry regarding pregnancy-related constitutional challenges is whether a "member of the public at large" will experience the same injury. (ECF 61 at 17-19). As a result, *Higgason*, like *Parker*, does not apply here.

Nor do any of the other cases referenced by State Defendants in a long string citation alter this Court's prior ruling, as none of those cases involve pregnancy or apply the "capable of repetition yet evading review" mootness exception within that context. For example, in *Camreta v. Greene*, 131 S. Ct 2020 (2011), the Supreme Court found a challenge to the warrantless interview of a minor to be moot because the minor had grown up and moved out of state, but the case never raised the "capable of repetition yet evading review" doctrine, nor were there any live claims involving a larger municipal or state policy. *See id*. at 2034 ("Whatever interest S.G. might have were her municipal liability claim still pending (an issue we need not and do not decide), we do not think S.G.'s dismissed claim against a different defendant involving a separate legal theory can save this case from mootness."); *see also Cooley v. Granholm*, 291 F.3d 880, 882-83 (6th Cir. 2002) (holding, without discussing "capable of repetition yet evading

review" or any related mootness exception, that a physician's challenge to Michigan's anti-euthanasia statute was both moot and unripe where the physician had moved outside of Michigan, no longer practiced medicine there, and the doctor presently had no terminally ill patient "suffering irremediable pain" whose euthanasia request could not be met by withdrawal of life support or pain medication); *Dawes v. Walker*, 239 F.3d 489, 491 n.2 (2d Cir. 2001) (determining, without discussing "capable of repetition yet evading review" or any related mootness exception, that plaintiff inmate's claim for injunctive relief under the First and Eighth Amendments for alleged retaliation from prison officials was mooted by his transfer to another prison); *Lucero v. Trosch*, 121 F.3d 591, 596 (11th Cir. 1997) (deciding, without discussing "capable of repetition yet evading review" or any related mootness exception, that physician's sale of his abortion clinic and his move out of state rendered his claims for injunctive relief against abortion protesters moot); *Bishop v. Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1285 n. 13 (8th Cir. 1982) (holding that the "capable of repetition, yet evading review" exception did not apply to avoid mootness of the named class representative lawyer's claim that Iowa's rules limiting lawyer advertising violated the First Amendment because the Iowa Supreme Court had revoked the attorney's license to practice law in Iowa and the attorney had moved out of state); *Cloak v. Cody*, 449 F.2d 781, 782 (4th Cir. 1971) (deciding, without discussing "capable of repetition yet evading review" or any related mootness exception, that a father's lawsuit on behalf of his 11-year old son against his son's school for refusing to allow his son to sell newspapers on school property was mooted upon his relocation out of state).

This Court already noted the likelihood that Ms. Loertscher herself may not be subject to the challenged law again but nevertheless denied mootness because of public interest concerns

and because other members of the public might experience the same injury under the Act. (ECF 61 at 19). The key issue is whether injunctive and declaratory relief would be meaningful to the public at large. There is no question that it would, given that Wisconsin is still actively implementing the Act. (ECF 61 at 17-18).

In parallel circumstances, when the plaintiff has challenged an important, continuing government policy, courts have rejected mootness even though the plaintiff was no longer residing under the jurisdiction of the impugned law. *See, e.g.*, *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003) (holding that the case was not moot because the governmental policy at issue was ongoing, even though the particular situation triggering a constitutional challenge to the policy became moot); *Ukrainian-American Bar Ass'n v. Baker*, 893 F.2d 1374 (D.C. Cir. 1990) ("The Government's failure to contest the existence of the alleged policy precludes it from prevailing in the argument that the controversy became moot once [plaintiff] Medvid left the country; the complaint challenges the Government's policy, not merely the Government's handling of the Medvid incident.").

Thus, courts have explicitly held that an injury was "capable of repetition yet evading review" because the continuation of a broader government policy implies repetition of the injury. *United States v. Howard*, 480 F.3d 1005 (9th Cir. 2007) (applying *Ukrainian-American Bar Ass'n* and holding that the case was not moot because, although complainant's controversy had been resolved, the government policy at issue remained in effect); *United States v. Reyes-Gutierrez*, No. 08-M-67, 2008 U.S. Dist. WL 3538575 (E.D. Wis. Aug. 11, 2008) (applying *United States v. Howard* and denying mootness because the injury was "capable of repetition yet evading review" although defendant had been transported out of the district).

## II. THIS COURT'S RULING ON THE STATE DEFENDANTS' FIRST MOOTNESS CHALLENGE IS THE LAW OF THE CASE

Because this Court has already decided that the controversy here is "capable of repetition and yet evading review," and the State Defendants' renewed motion does not challenge the reasoning of that decision, this Court's prior ruling is the law of the case. *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 815-16 (1988); *Sierra Club v. Khanjee Holding (US) Inc*., 655 F.3d 699, 704-05 (7th Cir. 2011) ("'perpetual litigation of any issue—jurisdictional or nonjurisdictional—delays and therefore threatens to deny, justice'" so there should be no reconsideration where "no 'significant differences' in the legal landscape …warrant re-examination"); *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1227 (7th Cir. 1995) ("A judge may reexamine his earlier ruling ... if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it."). While this Court has the power to reopen its prior decision, the Supreme Court has noted in the interest of judicial efficiency that courts should be "loathe" to revisit their own decisions in the absence of "extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson*, 486 U.S. at 817. State Defendants have not contended that this Court's holding should be revisited under this standard, nor can they, as this Court's holding is well-supported by clearly-established doctrine and nothing significant has changed since the Court's prior ruling.

## III. MS. LOERTSCHER'S CURRENT RELOCATION OUT OF STATE DOES NOT MAKE HER MEANINGFULLY LESS LIKELY TO BE SUBJECT TO THE ACT IN THE FUTURE

Ms. Loertscher also continues to suffer harm from the Act's continued presumptive legality in Wisconsin, even though the specific state proceedings against her are no longer pending. Indeed, fear of continued harassment by local officials as a result of her having been

subject to the Act prompted Ms. Loertscher to relocate with her young family. (ECF 66, ¶ 79 & 83). Wisconsin remains Ms. Loertscher's domicile; it is where her family lives and where she grew up. (ECF 66, ¶79). She lives in fear of further state intervention into any of her potential subsequent pregnancies or her current parenting, of ongoing surveillance by local authorities, and of the potential decision by one of the Act's multiple state-authorized enforcers to invoke the law and initiate proceedings against her if she visits her family in Wisconsin or if she decides to return to her home state to live. (ECF 66, ¶¶ 79-83). Indeed, the Third Circuit has specifically held that an out-of-state move cannot moot a constitutional challenge to an existing state law when fear of application of the challenged law is what prompted a plaintiff to move out of the state. *Artway v. Attorney Gen*., 81 F.3d 1235, 1245-46 (3rd Cir. 1996).

Nor are Ms. Loertscher's concerns about the Act's potential enforcement against her far-fetched. One of the Act's many fatally unconstitutional defects is the unfettered discretion it grants to those enforcing it to determine to whom, and on what grounds, the law should be applied. The Act expressly extends the opportunity for arbitrary and discriminatory enforcement to a host of state actors, including police officers, health care providers and social workers, and many constitutional violations authorized by the Act occur long before a juvenile court has determined that it has jurisdiction under § 48.133. Thus a law enforcement officer can take an "adult expectant mother" into custody if he or she "believes on reasonable grounds" that the vague and undefined criteria of the Act have been met. *See* Wis. Stat. § 48.193(1)(d)(2). A social worker can authorize the continued detention of the pregnant woman if he or she has "probable cause to believe" that the woman falls within the jurisdiction of the court. *See* Wis. Stat. § 48.205(1m). And numerous enforcers are authorized by the Act to initiate an immediate compulsory investigation of a pregnant woman by law enforcement or social workers if they

have "reason to suspect that unborn child has been abused or reason to believe that an unborn child is at substantial risk of abuse." *See* Wis. Stat. § 48.981(2). These enforcers include all attorneys (not just state employees), health care providers (including chiropractors and acupuncturists), public assistance workers, financial planners, dietitians, and many other enumerated occupations. *See id.* The vast numbers of individuals authorized to enforce the Act, combined with its unconstitutionally vague criteria, increase the fears Ms. Loertscher has concerning its potential enforcement against her.

The scope of the Act heightens these concerns further. Because the Act applies to fertilized eggs, it applies before a woman even meets the medical definition of pregnancy, *see* Wis. Stat. § 48.02(19), and applies to the "habitual" use not only of illegal drugs, but alcohol or any controlled substance, *see* Wis. Stat. § 148.133, which includes many commonly prescribed anti-anxiety (*e.g.*, Xanax), sleep (*e.g*, Ambien), and pain medications (*e.g*., Tramadol), as well as over-the-counter cold medicine (*e.g*., Sudafed), *see* Wis. Stat. §§ 961.01(4); 961.16; 961.18; 961.20; 961.22. Accordingly, Ms. Loertscher need not ever use illegal drugs or even be suspected by anyone of using them in order to be subjected to the Act. She need only be suspected by any one of the Act's multiple authorized enforcers of being pregnant and of "habitually lacking self control" using alcohol or any of these medications to be subject to the constitutional violations expressly authorized by the Act. Thus, multiple opportunities exist for many different local authorities to detain and harass Ms. Loertscher under the auspices of the Act whenever she is present in Wisconsin, even if a state court never again determines that a "CHIPS" proceeding is warranted.

Finally, although the proceedings against Ms. Loertscher that prompted this lawsuit have concluded, the accusations of "child abuse" are contained in her medical records, and the

judgment of civil contempt and the consent decree she signed in order to be released from jail remain part of her judicial record. Given the Act's vague and standardless sweep, it is not inconceivable that these records could be used as the basis for another "unborn child abuse" proceeding or be used to interfere with Ms. Loertscher's parental rights in connection with her existing child. For example, Ms. Loertscher's prior state proceedings could factor into some enforcer's personal conception of what "habitually lacking self control" or the "habitual" use of controlled substances means. Courts have recognized that when collateral legal consequences of a civil proceeding persist after a proceeding has ended, that fact alone merits rejection of a challenge to the proceeding on mootness grounds. *See e.g.*, *In re Ballay*, 482 F.2d 648 (D.C. Cir. 1973) (collateral consequences of civil commitment proceeding merits rejection of mootness); *accord Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983) (prisoner's habeas corpus challenge to placement in high-security unit was not rendered moot by prisoner's subsequent placement in general prison population because record of disciplinary infraction could lead to collateral consequence of delayed parole). Thus, the continuing potential legal consequences of the prior proceedings against Ms. Loertscher also support rejection of the State Defendants' arguments concerning mootness.

**CONCLUSION**

This Court has already decided that, although proceedings against Ms. Loertscher under the Act have ended, this Court will retain jurisdiction pursuant to a well-established exception to mootness. Because this case involves the exceptional nature and short duration of pregnancy, and because in the context of pregnancy this Court may consider the effect of the challenged Act on the public at large, this case is not moot. Ms. Loertscher's current presence in or outside of Wisconsin is immaterial to that conclusion. As this Court's ruling is the law of the case, and

because Ms. Loertscher also retains a significant personal stake in this litigation, this Court should deny State Defendants' motion.

Dated this 11th day of December, 2015.

Respectfully submitted,

**PERKINS COIE, LLP**

By: s/ *Freya K. Bowen*
David J. Harth
dharth@perkinscoie.com
Freya K. Bowen
fbowen@perkinscoie.com
Joshua L. Kaul
jkaul@perkinscoie.com
David R. Pekarek Krohn
dpekarekkrohn@perkinscoie.com
1 East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

**NATIONAL ADVOCATES FOR PREGNANT WOMEN**
Lynn M. Paltrow
lmp@advocatesforpregnantwomen.org
Sara Ainsworth
sla@advocatesforpregnantwomen.org
Farah Diaz-Tello
fdt@advocatesforpregnantwomen.org
15 W. 36th Street, Suite 901
New York, NY 10018
Telephone: (212) 255-9252
Facsimile: (212) 225-9253

**REPRODUCTIVE JUSTICE CLINIC**
Sarah E. Burns
sarah.burns@nyu.edu
Washington Square Legal Services, Inc.
NYU School of Law
245 Sullivan Street, 5th Floor
New York, New York 10012
Telephone: (212) 998-6464
Facsimile: (212) 995-4031

*Attorneys for the Plaintiff,*
*Tamara Loertscher*