**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

_____

TAMARA LOERTSCHER,

      **Plaintiff,**

                                      **Case No. 14-CV-870**

**v.**

**BRAD SCHIMEL,** *et al.*,

      **Defendants.**

_____

### DEFENDANT TAYLOR COUNTY, AMBER FALLOS, LIZA DALEIDEN AND JULIE CLARKSON'S REPLY BRIEF SUPPORTING MOTION TO DISMISS

_____

Defendants Taylor County, Amber Fallos, Liza Daleiden and Julie Clarkson, by their undersigned counsel, hereby submit this reply brief in support of their Rule 12(b)(6) motion.

## INTRODUCTION

The United States Supreme Court has held that a government official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it." *City v. Cty. of San Francisco, Calif.,* 135 S.Ct. 1765, 1774 (2015). The Court explained that "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* (*quoting Ashcroft v. al–Kidd,* 131 S.Ct. 2074, 2083 (2011) (emphasis added)). The Court acknowledged that the "beyond debate" requirement is an "exacting" standard that "protect[s] all but the plainly incompetent or those who knowingly violate the law." *Id.* at 2085.

Far from establishing incompetence or knowingly unconstitutional conduct, Loertscher's argument is nothing more than (1) her belief that Act 292 and its resultant statutes are unconstitutional and (2) her belief that the Taylor County staff's enforcement of the Act was illegal although enforcement and participation in her legal proceedings was mandated by the statute.

Loertscher fails to cite a single precedent that even arguably puts the constitutionality of Act 292 and these defendants' conduct "beyond debate." To the contrary, she makes only vague claims to generalized "rights," none of which were established or recognized in a case factually similar to this case or applicable to her circumstance.

A court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law without first resolving whether the purported right exists." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012). Loertscher's broad invocation of generalized rights is both insufficient as a matter of pleading and fails to meet her burden of refuting the defendants' immunity defense.

## ARGUMENT

### I.    PLAINTIFF HAS FAILED TO ADDRESS THE ALLEGATIONS PERTAINING TO EACH INDIVIDUAL DEFENDANT.

Perhaps recognizing the deficiencies in her pleading, Loertscher refers throughout her brief to the defendants collectively rather than individually. She alleges, for instance, that "[t]he County Defendants forcibly restrained Ms. Loertscher, had her involuntarily transferred to an impatient facility, supported the GAL's petition to force her to endure time in jail, overrode her medical decisions, and attempted to coerce her into terminating her pregnancy." (Response Brief, Dkt. 89 at p. 15, Feb. 5, 2016). None of these hyperbolic claims are tied to any individual defendant in the Amended Complaint. Loertscher, rather, refers to the defendants collectively in her response brief, it appears, because the allegations in her Amended Complaint pertaining to the individuals do not even arguably demonstrate a constitutional violation.

This theory of collective liability is wrong. Individual civil rights defendants are personally responsible only for their own conduct. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1012 (7th Cir. 2000) (recognizing that "[t]o establish personal liability in a § 1983 action, the plaintiff must show that the government officer caused the deprivation of a federal right") (*quoting Luck v. Rovenstine,* 168 F.3d

323, 327 (7th Cir.1999)). This Court must apply the immunity standards to the specific conduct of defendants Fallos, Daleiden and Clarkson, individually, and assess the allegations as set forth in Loertscher's Amended Complaint. The assertions implied in Loertscher's brief that the defendants acted conspiratorially or in collusion with third parties must be ignored.

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 547 (2007). As this Court has noted, "if the unlawfulness of the government official's conduct as pled is not clearly established…then the government official could be entitled to qualified immunity, even if the defense is asserted at the pleading stage. ***Omachonu v. Shields***, No. 15-CV-69-WMC, 2015 WL 4509146, at *8 (W.D. Wis. July 24, 2015) (*citing **Mitchell v. Forsyth***, 472 U.S. 511, 526 (1985)). To that point, Loertscher's Amended Complaint alleges only the following conduct by the individual county defendants:

- Liza Daleiden and Julie Clarkson were present at but did not participate in Loertscher's initial August 5, 2014 hearing on the Temporary Physical Custody Request. (Amend. Compl., Dkt. 66 at ¶ 32, Nov. 11, 2015).

- Liza Daleiden received a phone call from Mayo Clinic notifying her that Loertscher declined a blood test for TB after the court ordered her admission to the Fahrman Center treatment facility. (*Id.* at ¶ 41).

- Julie Clarkson informed a Mayo Clinic social worker about the court order directing Loertscher to remain at the Mayo Clinic until her transport to the Fahrman Center treatment facility. (*Id.* at ¶ 38).

- Liza Daleiden signed an affidavit as a witness in relation to Loertscher's August 25, 2014 contempt hearing. (*Id.* at ¶ 44; Motion for Contempt, Dkt. No. 1-4, Dec. 15, 2014).

- Liza Daleiden and Julie Clarkson were present at but did not participate in Loertscher's August 25, 2014 contempt hearing. (Amend. Compl., Dkt. 66 at ¶ 49, Nov. 11, 2015).

- Julie Clarkson testified as a witness at Loertscher's September 4, 2014 contempt hearing. (*Id.* at ¶ 52).

- Liza Daleiden was present at but did not participate in Loertscher's September 22, 2014 hearing. (*Id.* at ¶ 69).

- Liza Daleiden and Julie Clarkson allegedly told Loertscher, in response to her inquiry after a hearing, that "we just want a healthy baby." (*Id.* at ¶ 55).

- Having been asked by Loertscher whether the proceedings would "all [] go away" if she had an abortion, Liza Daleiden and Julie Clarkson responded, per Loertscher's Amended Complaint that "yes, it would." (*Id.* at ¶ 55).

- Amber Fallos conducted an administrative review of Loertscher's child maltreatment finding after the court orders were in place. (*Id.* at ¶ 73).

Defendants submit that none of the conduct actually alleged against them individually violated the law. More obviously, none of the conduct was so clearly unconstitutional as to defeat the individual defendants' claim to qualified immunity.

Defendants respectfully request the Court assess the adequacy of the pleading and the claim to immunity of each individual defendant.

## II. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY.

### A. *Plaintiff has alleged only prosecutorial-type conduct for which the defendants are absolutely immune.*

Focusing specifically on the allegations against the individual defendants as alleged in the Amended Complaint, it is clear that each is entitled to absolute immunity. Loertscher's substantive allegations are that the defendant social workers were present at hearings relevant to her case, signed witness affidavits or were called as witnesses at hearings. *Supra*. And she alleged that Ms. Fallos conducted an administrative review of the maltreatment finding. (Amend. Compl., Dkt. 66 at ¶ 73). These acts are prosecutorial-related conduct for which these defendants are absolutely immune. *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976).

Judge Easterbrook discussed a critical distinction in *Millspaugh v. Cty. Dep't of Pub. Welfare of Wabash Cty.,* an often-cited case holding that social workers and other officials are absolutely immune for their "testimony and other steps taken to present the case for decision by the court." 937 F.2d 1172, 1176 (7th Cir. 1991). Judge Easterbrook noted that "the dividing line between absolute and qualified immunity is whether the injury depends on the judicial decision. If there

would be no loss but for the judge's acts, then the prosecutor or witness who induces the judge to act has absolute immunity." *Id.* at 1175. Applying the rule in that case, Judge Easterbrook wrote:

> Most of what [the defendant social worker] did could yield no harm to the mothers unless the court agreed. ***Her motives in asking the court to do certain things, and her selection of evidence to present, lie at the core of the subjects to which absolute immunity applies…The judge knew that the mothers were not there; the judge knew that they were unrepresented, and that communication with them was sporadic. Whether to proceed in such circumstances is a judicial decision***. We may assume that Tucker acted out of improper motives and misled the court. Still, immunity that applies only when the defendant did no wrong is no immunity at all.

*Id.* (emphasis added).

The core of Loertscher's constitutional claim is that she was coerced and held against her will by court orders resulting from an unfair legal process. Similar to the plaintiff in ***Millspaugh***, she claims harm because she was unrepresented by counsel before the courts, and that the judge misunderstood the medical testimony or failed to appreciate that some experts do not believe the use of street drugs is harmful to a fetus. Those assertions are moot; it was the court's decision to go forward and make the orders. Applying the ***Millspaugh*** distinction, none of the acts Loertscher has alleged against Fallos, Daleiden and Clarkson, individually, would stand on their own as unconstitutional behavior and in violation of her rights in the absence of the court orders.[1] The steps taken by the individual social workers to "present the case for decision by the court" are absolutely immune.

The First Circuit's decision in ***Wang v. New Hampshire Bd. of Registration in Medicine***, leads to the same conclusion as to defendant Fallos' administrative review of Loertscher's maltreatment finding, which she performed in her official capacity. 55 F.3d 698 (1995) (holding that

---

[1] Loertscher also alleges the "the Taylor County Defendants' "unlawfully" obtained her medical records from Mayo Clinic. (Response Brief, Dkt. 89 at p. 11, Feb. 5, 2016). This argument is more thoroughly addressed in Section III(A)(5), *infra*. As an initial point, though, Loertscher failed to specify which individual county defendant, if any, unlawfully obtained her records. Section 1983 liability requires an analysis of individual conduct. *See **Brokaw***, 235 F.3d 1000.

medical board members were entitled to absolute immunity for liability stemming from their administrative conduct of revoking plaintiff's medical license). Her administrative review of a maltreatment finding is judicial in nature and absolutely immune.

The case on which Loertscher relies to rebut the defendants' absolute immunity arguments, *Gray v. Poole*, supports defendants' position in that the court utilized a functional approach when determining if a social worker's conduct related to a child neglect incident was investigatory or prosecutorial. 275 F.3d 1113, 1117 (D.C. Cir. 2002). The court examined the defendant's conduct and held that the act of submitting a written statement to the corporation counsel tasked with prosecuting the neglect action for use at the plaintiff's neglect hearing was prosecutorial in nature and entitled to absolute immunity. *Id*.

Loertscher has alleged *actual presence at a hearing* and *participation as a witness or administrative reviewer* as the unconstitutional conduct on which she bases her claim. (Amend. Compl., Dkt. 66 at ¶¶ 32, 44, 49, 52, 56, 73, Nov. 11, 2015). Her conclusory assertion that the conduct was "investigatory" is simply an attempt to argue around the motion despite her Amended Complaint. The allegations of conduct "intimately associated" with an abuse proceeding are insufficient to defeat absolute immunity as a matter of law. *Imbler*, 424 U.S. at 430; *see also Millspaugh,* 937 F.2d at 1175 (noting the "decision to proceed… is a judicial decision," and does not create liability for the officials prosecuting the matter).

**B.     The Court should not consider allegations pertaining to third parties or innocuous conduct.**

Faced with the individual defendants' claim to absolute immunity, Loertscher attempts in her response brief to expand her meager allegations as to the individual defendants to imply a larger conspiracy involving non-parties, which she asserts create a "reasonable inference" that the individual county defendants' investigated, initiated and recommended unconstitutional conduct

against her. (Response Brief, Dkt. 89 at pp. 26, 28, Feb. 5, 2016). She asserts the following, for example, about non-parties:

- Unidentified employees of the Mayo Clinic "shared" her medical information with Taylor County Department of Health Services. (Response Brief, Dkt. 89 at 26, Feb. 5, 2016; Amend. Compl., Dkt. 66 at ¶ 25, Nov. 11, 2015).

- An unidentified Taylor County court commissioner appointed a GAL for her unborn child. (Response Brief, Dkt. 89 at 26, Feb. 5, 2016; Amend. Compl., Dkt. 66 at ¶¶ 26-27, Nov. 11, 2015).

- The unidentified John/Jane Doe defendant—presumably a Taylor County employee—signed the initial custody order. (Response Brief, Dkt. 89 at 26, Feb. 5, 2016; Amend. Compl., Dkt. 66 at ¶¶ 26-27, Nov. 11, 2015).

None of this conduct is alleged to have been performed by defendants Fallos, Daleiden or Clarkson and should not be entertained by this Court in deciding this motion. *See **Brokaw***, 235 F.3d 1000.

Similarly, Loertscher identifies innocuous acts she believes suggest that Fallos, Daleiden and Clarkson's conduct went beyond the judicial proceedings. She alleges that:

- Daleiden received a phone call from Mayo Clinic notifying her that Loertscher failed to agree to a blood test after the court ordered her admission to a treatment facility. (Amend. Compl., Dkt. 66 at ¶ 41, Nov. 11, 2015).

- Clarkson informed a Mayo Clinic social worker about the court order directing Loertscher to remain at that facility until she could be taken to the Fahrman Center rehab facility. (*Id.* at ¶ 38).

- Daleiden and Clarkson allegedly responded to Loertscher's questions about her abuse proceedings by telling her "we just want a healthy baby." (*Id.* at ¶ 55).

- Having been asked by Loertscher whether the proceedings would "all [] go away" if she had an abortion, Daleiden and Clarkson responded, per Loertscher's Amended Complaint that "yes, it would." (*Id.* at ¶ 55).

None of these allegations assert unconstitutional conduct, much less conduct so blatantly improper as to defeat immunity. Loertscher has asserted that a social worker received a phone call from a private entity informing her that a respondent in an abuse proceeding had violated a court order; that another informed a private hospital of the existence of a court order affecting that hospital's patient; and that the social workers answered questions directed at them in the course of

their duties.[2] Loertscher fails to cite any case law suggesting this conduct violated her rights or otherwise supports liability. (*See* Response Brief, Dkt. 89, Feb. 5, 2016).

All of this alleged conduct occurred, of course, after Court Commissioner Krug found that grounds existed for transferring Loertscher to a treatment facility for substance abuse therapy. (Temp. Custody Order, Dkt. 1-3, Dec. 15, 2014; Immed. Custody Order, Dkt. 1-5, Dec. 15, 2014). Daleiden and Clarkson's conduct performed in furtherance of court orders is shielded by absolute immunity, as it is well-known law that government agents charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a civil suit challenging the conduct prescribed by that order.[3]

## III. FALLOS, DALEIDEN AND CLARKSON ARE ENTITLED TO QUALIFIED IMMUNITY.

Loertscher incorrectly implies the movants carry the burden of proving qualified immunity, stating that these defendants did "not cite any authority showing that the fundamental rights at issue in this case were not clearly established at the time of the disputed conduct." (Response Brief, Dkt.

---

[2] Ms. Loertscher and her counsel are entitled, of course, to reasonable inferences. The suggestion, however, that these defendants "specifically pressured Ms. Loertscher to abort her wanted pregnancy" (Response Brief, Dkt. 89 at 8, Feb. 5, 2016), is offensive and demonstrates the lengths to which they will go to spin her sparse allegations into a conspiratorial scandal. The alleged response started with Daleiden and Clarkson stating, "*We just want a healthy baby.*" (Amend. Compl. at ¶ 55). It is, frankly, ridiculous to suggest that these alleged exchanges constitute "pressure" to abort her pregnancy.

[3] *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238-39 (7th Cir. 1986) (finding sheriff entitled to absolute immunity for action taken pursuant to court order directing enforcement of a judgment); *Coverdell v. Dept. of Social and Health Srvs.*, 834 F.2d 758, 764-65 (9th Cir. 1987) (social worker accorded absolute quasi-judicial immunity from suit arising out of worker's apprehension of child pursuant to court order); *Tymiak v. Omodt*, 676 F.2d 306, 308 (8th Cir.1982) (sheriff who evicted plaintiff from home in compliance with court order was absolutely immune from suit for damages); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981) (court clerks have absolute immunity in actions for damages based upon ministerial conduct required by court order); *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980) (finding that court clerk and state hospital superintendent acting at behest of judge enjoyed judicial immunity); *Waits v. McGowan*, 516 F.2d 203, 206 & n.6 (3d Cir.1975) (finding that immunity extended to police officers engaged in ministerial functions under court's direction); *Fowler v. Alexander*, 478 F.2d 694, 696 (4th Cir.1973) (finding sheriff and jailer who confined plaintiff in executing a court order were absolutely immune from suit); *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72–73 (2d Cir.1968) (finding that court-appointed receiver enforcing explicit order of court was immune from liability).

89 at p. 14, Feb. 5, 2016). To clarify, Loertscher—not these defendants—bears the burden of refuting the qualified immunity defense. ***Pearson v. Callahan***, 555 U.S. 223, 232-33 (2009).

To withstand the defense Loertscher was required to show: (1) that the individual county defendants' conduct as alleged in her pleadings violated her legal rights and (2) that the rights she identified were clearly established at the time of the conduct. ***Id.*** at 236. Loertscher flopped on both fronts.

### A. The individual county defendants did not violate the Fourth or Fifth Amendment rights, nor were those alleged rights clearly established.

Loertscher identifies throughout her brief various rights that she discusses in only the vaguest and most generalized fashion, including:

1. Her right to be free from bodily restraint;
2. Her right to refuse unwanted medical treatment/ right to bodily integrity;
3. Her right to procreate/right to decide to continue a pregnancy
4. Her right to familial relations;
5. Her right to be free from unreasonable search and seizure.

(Response Brief, Dkt. 89 at p. 4, Feb. 5, 2016). None of the cases she cites as evidence of these rights is remotely analogous to her circumstance.

To meet her burden of demonstrating that the defendants' conduct was unconstitutional Loertscher was obligated to present the constitutional framework for each right and specify how the individual defendants' conduct violated the same. ***Michael C. v. Gresbach***, 526 F.3d 1008, 1014-1015 (7th Cir. 2008) (applying the first immunity prong by discussing thoroughly the law of search and seizure and specifically analyzing if the defendants' conduct constituted a search and whether that search was reasonable in light of prevailing Fourth Amendment law). She failed to do so in her response. The rights are discussed only in a cursory fashion.

To meet her burden that the rights were "clearly established" she was obligated to cite a particular right with specificity, not just "a broad general proposition." ***Reichle v. Howards***, 132 S.Ct. 2088, 2093-94 (2012); *see also **City & Cty. of San Francisco, Calif. v. Sheehan,*** 135 S.Ct.

1765, 1775-76, (2015) (noting the Supreme Court's repeated mandate to "not define clearly established law at a high level of generality"). It is not enough to state generally, for example, that an "unreasonable search or seizure violate[d] the Fourth Amendment"; the plaintiff must show that the "violative nature of ***particular conduct*** [was] clearly established." ***Ashcroft v. al-Kidd***, 131 S.Ct. 2074, 2084 (2011); *see also* ***Anderson v. Creighton***, 483 U.S. 635, 639-40 (1987) (recognizing that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right").

Loertscher failed to prove either prong. She failed in the first instance to discuss the constitutional framework for the rights and identify law supporting or otherwise particularizing why the individual defendants' conduct violated the same. She also failed to discuss or identify any state or federal authority supporting these rights were clearly established in a context such as her case such that the individual defendants should have had notice that their conduct was unlawful in light of prevailing law.

### 1.      *Right to freedom from bodily restraint.*

Loertscher contends that "[t]he county defendants" violated her right to be free from bodily restraint because they "initiated an investigation into[her], which led to a formal petition against her and a court order that she be detained at the [] Mayo Clinic, from which she was to be transported to an impatient facility against her will." (Response Brief, Dkt. 89 at p. 6, Feb. 5, 2016). She also contends they violated this right because she was "found in contempt of court and ordered to jail" after failing to abide by the court order. (*Id.*).

Loertscher failed to identify a single decision discussing the alleged right in the context of her case. She cannot contend, of course, that she has a constitutional right to be free of consequence for her use of methamphetamine and marijuana, nor can she argue that she has a right to ignore court orders. Both acts have implications for her freedom, and it is not unreasonable for the defendant

social workers to believe the courts were applying the law correctly. There certainly was no case suggesting to a reasonable social worker that Act 292 and the statutes it amended were of questionable validity.

Loertscher's attempt to draw analogies is simply too far-fetched. She cites two cases—*Foucha v. Louisiana*, 504 U.S. 71 (1992) and *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891)—for the proposition that her right of "freedom from bodily restraint" was clearly established. She failed to discuss the cases in any detail. And the cases cited do not support the right Loertscher claims in the context of this current litigation and would not give the defendants "fair warning" of the unlawfulness of their conduct.

*Foucha* involved a criminal defendant's request to be released from confinement at a psychiatric facility pursuant to statute after being acquitted of a crime by reason of insanity. 504 U.S. at 71. The defendant's continued confinement was based on a trial court determining he was a danger to himself or others even though he was not mentally ill. *Id.* The Supreme Court authorized his release based on its prior decisions clarifying that an insanity acquittee's continued confinement requires both a finding of dangerousness and mental illness to satisfy due process. *Id*. Because the trial court found the defendant was not insane he could not be confined. *Id*.

*Foucha* is patently distinguishable and its holding would not put any Wisconsin official on notice that enforcing the Act is illegal. The defendant's confinement was contingent on a finding that he was both dangerous and insane, but the court ordered his confinement in the absence of the required findings. *Id.* at 71. Court Commissioner Krug, in this case, found probable cause to believe that Loertscher met the elements required for her to be taken into custody and provided treatment. (*See* Custody Hearing, Dkt. 1-2, December 15, 2014). No reasonable official would infer from *Foucha* that the Commissioner's finding was invalid and unconstitutional.

The *Foucha* Court also recognized several exceptions to the right to be free from bodily restraint, including a state's police power to imprison convicted criminals, the state's ability to

confine mentally ill persons, and the state's ability to confine "*persons who pose a danger to others or to the community*." 504 U.S. at 80 (*citing United States v. Salerno*, 481 U.S. 739 (1987) (emphasis added)). These exceptions make it unclear, at the very least, that the courts' orders with respect to Loertscher—based on physician testimony—would be improper. (*See* Custody Hearing, Dkt. 1-2, December 15, 2014).

Loertscher also cited *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891), as a case that should have forewarned the defendants that Act 292 is unconstitutional. That case involved a trial court order that a plaintiff in a personal injury case undergo a surgical exam without her consent and in the absence of a statute authorizing the same. *Id*. at 251. The Supreme Court agreed with the trial court that such conduct was unlawful because a trial court had "no legal right or power" to force the plaintiff to an examination. *Id.*

*Union Pac. R. Co.* is distinguishable from this case and provides no guidance to Wisconsin officials relevant to Act 292. The conduct at issue in *Union Pac. R. Co.*—forcing a plaintiff to undergo a medical exam—was not authorized by statute and therefore the trial court had no authority to compel the examination. This is inapposite of defendants' specific conduct, which was expressly authorized by statute. The *Union Pac. R. Co.*'s holding—that an individual cannot be subject to bodily restraint in the absence of legislative authority—is insufficient to put these defendants on notice that their statutorily-supported conduct was unlawful.

> **2.** **Freedom from coerced medical treatment and right to bodily integrity.**

Loertscher alleges her right to be free from coerced medical treatment was violated. She identified the following conduct as being violative of that right:

- An unidentified court commissioner appointed a GAL and "the GAL sought to substitute his decisions concerning Ms. Loertscher's medical treatment for her own." (Response Brief, Dkt. 89 at p. 7, Feb. 5, 2016) (*citing* Amend. Compl., Dkt. 66 at ¶ 32; Custody Hearing, Dkt. 1-2, Dec. 15, 2014).

- Commissioner Krug ordered her to an inpatient treatment facility—to which she never was admitted due to her decision to ignore the court order. (Response Brief, Dkt. 89 at p. 7, Feb. 5, 2016)(*citing* Amend. Compl., Dkt. 89 at ¶¶ 30-37, Nov. 11, 2015).

- The GAL initiated contempt proceedings resulting in her incarceration, during which she did not receive prenatal care. (Response Brief, Dkt. 89 at p. 7) (*citing* Amend. Compl., Dkt. 66 at ¶¶ 57, 65-66).

She alleges this conduct was performed "at the behest of the County Defendants." (Response Brief, Dkt. 89 at p. 7, Feb. 5, 2016). She can cite no facts suggesting the individual defendants were, in fact, behind the court commissioner's order or the GAL's performance of his duties. Regardless, the individual defendants cannot be liable under 42 U.S.C. § 1983 for others' actions and there is no mention in Loertscher's Amended Complaint that they ordered or caused the above-referenced conduct. (*See* Amend. Compl., Dkt. 66, Nov. 11, 2015); *See **Brokaw v. Mercer Cty.***, 235 F.3d 1000 (7th Cir. 2000).[4]

Loertscher cited several cases only for the general proposition that a person has a right to be free from unwanted medical treatment. Even had Loertscher discussed these cases with specificity they do not support her immunity arguments. Two cases concern a person's right to die or, put another way, refuse life saving medical treatment. ***Cruzan by Cruzan v. Director, Missouri Dept. of Health***, 497 U.S. 261 (1990); ***Washington v. Glucksberg***, 521 U.S. 702 (1997). The Supreme Court, in both, recognized a person's general right to refuse unwanted medical treatment but recognized a court must balance that liberty interest against the state's in determining if that right was violated. ***Cruzan***, 497 U.S. at 262; ***Glucksberg***, 521 U.S. at 720. The ***Cruzan*** court determined that a person's liberty interest in refusing life saving care and dying with dignity outweighed the state's limited interest. 497 U.S. at 262. But the ***Glucksberg*** Court held that a terminally ill person's right to assisted

---

[4] It is unclear what treatment Loertscher received under coercion or how her bodily integrity was challenged. She reported to the Mayo Clinic of her own volition to receive medical treatment. There are no allegations that the Mayo Clinic--a private entity—forced treatment upon her. (Amend. Compl., Dkt. 66 at ¶¶ 37-39, Nov. 11, 2015). She implies she received unwanted medical treatment at the Farhman Center inpatient facility, but she, in fact, never reported to that facility, thus the reason for her contempt finding. (*See* Motion for Contempt, Dkt. 1-3, Dec. 15, 2014).

suicide was not fundamentally protected and the state had a legitimate interest in prohibiting such conduct. 521 U.S. at 728.

Even if the right to die cases were analogous to Loertscher's case, the individual defendants could not be expected to perform a balancing of the state's interests and be held liable for the circuit court's conclusions, if erroneous. They properly deferred to the state legislature, which passed Act 292, and court official's decisions.

Loertscher cited, but did not discuss, ***Parham v. J.R.***, in which the court addressed a Georgia statute allowing parents to voluntarily commit their children to mental health facilities. 442 U.S. 584, 602-603 (1979). The Court held that the decision to confine a child should be made by a "neutral factfinder" instead of a parent. ***Id***. Again, if the right addressed in ***Parham*** was even remotely similar to Loertscher's case, a county official could not infer her conduct was prohibited by the decision. Act 292, in fact, involves a neutral factfinder; any consequence to an expectant mother is conditioned on an independent court official finding certain elements set forth in Act 292—as happened in this case. (Custody Hearing, Dkt. 1-2, Dec. 15, 2014).

### 3. *Right to procreate and continue her pregnancy.*

Like her other claimed rights, Loertscher both failed to adequately plead this entitlement and failed to demonstrate that a reasonable official would find the right violated by enforcement of Wis. Stat. § 48.133. The suggestion that the Taylor County social workers were so unprofessional as to "specifically pressure[] Ms. Loertscher to abort her wanted pregnancy" is preposterous. (Response Brief, Dkt. 89 at p. 8, Feb. 5, 2016). The "factual" allegation she cited as evidence of the "pressure" is a conversation in which the social workers are alleged to have said, "we just want a healthy baby." (*Id.*) (*citing* Amend. Compl., Dkt. 66 at ¶ 55, Nov. 11, 2015). When Loertscher asked "if 'all this would go away' if she had an abortion," the social workers allegedly responded "yes, it would." (Amend. Compl., Dkt 66 at ¶ 55, Nov. 11, 2015). No other facts are cited in support of this fantastic

claim. The argument that those sparse allegations add up to pressure to abort a fetus smacks of desperation and media spin.

Again, Act 292 and Wis. Stat. § 48.133 were intended by the legislature to enhance the possibility that a healthy child *can be born* after a troubled pregnancy. It is, at the very least, counterintuitive to suggest that enforcement of the law limits a right to procreate or continue a pregnancy. Loertscher identified a complex social issue and difficult legal question that she wishes to explore in this lawsuit. It is quite a reach to assert, however, that the outcome of the constitutional analysis was so clear that these defendants should have ignored the statute and the decisions of the duly-appointed judges who heard Loertscher's case.

Loertscher cited cases only for the general right to procreate, without discussing their facts or holdings or why they champion her allegedly clearly established rights. She cited ***Skinner v. State of Okl. ex rel. Williamson***, 316 U.S. 535 (1942), which mentions the right to procreate but was not decided on those grounds. It involved a challenge by a criminal defendant to an Oklahoma statute that allowed the state to render "sexually sterile" a habitual criminal, someone who committed two or more felonies involving moral turpitude. *Id*. at 536. The defendant was to undergo a vasectomy against his will after multiple larceny convictions. *Id.* The Supreme Court held the statute unconstitutional on equal protection grounds, noting that a defendant guilty of embezzlement would not be so punished. *Id.* at 541-42. This discriminatory application of the statute rendered it in violation of the Fourteenth Amendment's Equal Protection Clause; the Fifth Amendment right to procreate did not come into play. *Id*.

In ***Planned Parenthood of Se. Pa.***, *v. Casey*, 505 U.S. 833 (1992), the Court upheld several portions of a Pennsylvania statute requiring a 24-hour waiting period and parental consent prior to an abortion. The court invalidated the provision requiring spousal notification. *Id*. at 833. None of those issues—waiting period, parental consent, or spousal notification—are at issue here. No reasonable official would conclude that the case precluded the enforcement of Act. 292.

Loertscher noted but failed to discuss the applicability of ***Arnold v. Board of Educ. of Escambia County Ala.***, 880 F.2d 305 (11th Cir. 1989), a case in which a school guidance counselor and vice principal coerced a minor student to obtain an abortion. The defendants' coercive conduct included administering a pregnancy test at school using school funds; meeting with the student to verbally persuade her to have the procedure and hide the pregnancy from her parents; permitting the student and her boyfriend to work at the school to save money for the procedure; and using school funds to pay for the student's transport to the abortion clinic.. ***Id***. at 308-309. The court determined that the student stated a valid § 1983 claim against the counselor and principal for their alleged violation of the plaintiffs' ***right to privacy. Id***. at 311. Again, it is a far reach to assume the conversation alleged by Loertscher is the equivalent of the school officials' conduct in ***Arnold***.

#### 4. *Right to control and custody of children.*

Loertscher's asserted the violation of her alleged "right to familial relations, including the ability to maintain a close relationship with her child after birth." (Response Brief, Dkt. 89 at p. 8, Feb. 5, 2016). She specified that "[t]he County Defendants" violated this right by subjecting her "to an initial determination that she has committed 'child maltreatment.'" (*Id.* at 9).

The suggestion that any act done to her impedes her "right to control" and custody of her child is baseless. No fact alleged in the Amended Complaint suggests such a harm was done and it would be a journey into unchartered territory for the Court to infer such a violation here.

Loertscher did not cite any authority for her position. (*See id.* at 8-9). Nor did she identify authority, state or federal, suggesting she has a right to use street drugs without consequence. She instead noted five cases for the general idea that a person has a right to familial relations or family privacy. All are so clearly inapposite that they need not be distinguished. But the frailty of her argument is demonstrated by her citation to ***Meyer v. Nebraska***, 262 U.S. 390 (1923) for the idea that her right to bring up her children is "essential." (Response Brief, Dkt. 89 at p. 8, Feb. 5, 2016). The

*Meyer* decision addressed whether a father could be prosecuted for "unlawfully [teaching] the subject of reading in the German language" to his child. 262 U.S. at 396. It holds no relevance to this matter.

> **5.** **Fourth Amendment right to be free from unreasonable search and seizure.**

Loertscher claims the individual county defendants violated her right to be free from unreasonable search and seizure in two ways. She first claims they violated this right by "unlawfully obtaining her medical records, including the results of drug tests obtained without her knowledge, and disclosing that confidential information to other Taylor County officials." (Response Brief, Dkt. 89 at p. 11, Feb. 5, 2016). She next claims she was "unreasonably seized." (*Id.*). These claims will be addressed in turn.

While claiming in her response brief that "[t]he County Defendants" unlawfully seized her medical records from the Mayo Clinic, Loertscher never identifies a factual allegation suggesting that is true. (*Id.* at 11). She failed to identify, for instance, which individual defendant perpetrated this act or how her records were "seized." (*See* Amend. Compl., Dkt. 66, Nov. 11, 2015). The Amended Complaint only references the following conduct related to this issue:

- "On approximately August 2, 2014 or August 3, 2014, without Ms. Loertscher's knowledge or consent, ***personnel from the Mayo Clinic share Ms. Loertscher's confidential medical information with agents of TCDHS*** . . . ." (Amend. Compl., Dkt. 66 at ¶ 25, Feb. 5, 2016).

- Ms. Everson—a social worker with Mayo Clinic not Taylor County—"demanded that Ms. Loertscher sign a waiver permitting release of her medical records to TCDHS." (*Id.* at ¶ 28).

It is, once again, quite a stretch to suggest these "facts" constitute "seizure" of medical records in violation of the Fourth Amendment. The allegations make clear that Mayo Clinic personnel shared her medical records and that no seizure occurred. (*Id.* at ¶¶ 25, 28).

Regardless, state and federal law permit the sharing of medical information in this circumstance. Ms. Loertscher has admitted she used street drugs while pregnant. (*Id.* at ¶¶ 10-14). Multiple Wisconsin statutes authorized the release of medical information in that circumstance.

Wisconsin Statute § 905.04(2) generally protects the disclosure of information or records related to a patient's treatment with a physician. Subsection (4), however, enumerates several exceptions to this general rule. Subsection (4)(e), entitled "Abused or neglected child or abused unborn child" states that "there is no privilege for information contained in a report of child abuse or neglect that is provided under § 48.981(3)."

The next subsection—(e)(3)—specifies as follows:

> There is no privilege in situations where the examination of the expectant mother of an abused unborn child creates a reasonable ground for an opinion of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor that the physical injury inflicted on the unborn child was caused by the habitual lack of self-control of the expectant mother of the unborn child in the use of alcohol beverages, controlled substances or controlled substance analogs, exhibited to a severe degree.

Simply put, records suggesting an expectant mother violated Act 292 are not confidential if released pursuant to the physician reporting statute, section 48.981(3). That section allows for reporting by "any person, including an attorney, who has reason to suspect that an unborn child has been abused or who has reason to believe that an unborn child is at substantial risk of abuse." Wis. Stat. § 48.981(3). None of these statutes have been found unconstitutional. A reasonable government official would believe the obtaining of medical information was appropriate and necessary, not unconstitutional.[5] *See **Planned Parenthood of Central Missouri v. Danforth**, 428 U.S. 52, 80 (1976) (upholding Missouri statute allowing disclosure of information regarding abortion procedures to local state or national public health officers because the reporting requirements were "reasonably directed

---

[5] Likewise, federal law allows health care providers and other applicable entities to disclose protected health information "to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law." 45 C.F.R. § 164.512(a). One such permitted disclosure, pursuant to § 164.512(b)(ii) is for the disclosure of protected health information to ***"[a] public health authority or other appropriate government authority authorized by law to receive reports of child abuse or neglect***." (emphasis added). No federal law was violated.

to the preservation of maternal health" and "properly respected a patient's confidentiality and privacy").

Loertscher's reference to ***Ferguson v. City of Charleston***, 532 U.S. 67 (2001), accross her response brief is unpersuasive. (*E.g.*, Response Brief, Dkt. 89 at pp. 15-17, Feb. 5, 2016). ***Ferguson*** involved a public—not private—hospital that, in conjunction with the City of Charleston and law enforcement, implemented a hospital policy that included procedures for identifying and testing pregnant patients suspected of drug use. 532 U.S. at 67. The policy included police procedures and criteria for arresting patients who tested positive and allowed for the criminal prosecution for drug offenses and child neglect. ***Id***. The policy did not contemplate for the care or safety of the newborn baby; it served only a law enforcement purpose. ***Id***.

Several patients who were arrested after testing positive for cocaine challenged the law on "the theory that warrantless and nonconsensual drug tests conducted for criminal investigatory purposes were unconstitutional searches." ***Id***. The district court entered judgment for the defendants and the Fourth Circuit affirmed, holding that the searches in question were reasonable in light of the Supreme Court's prior recognized "special needs" exception that "justif[ied] a search policy designed to serve non-law enforcement ends." ***Id***.

The Supreme Court reversed, holding that "[a] state hospital's performance of a diagnostic test to obtain evidence of a patient's criminal conduct for law enforcement purposes is an unreasonable search if the patient has not consented to the procedure." ***Id***. at 67-68. The Court's decision was premised on the purpose or "special needs" for the drug test. The Court found that the state hospital's policy had only a law enforcement purpose, which was impermissible under the Fourth Amendment. ***Id.***

The Court analyzed the policy at issue in light of its four prior decisions concerning similar hospital drug testing and disclosure policies. ***Chandler v. Miller***, 520 U.S. 305 (1997); ***Treasury Employees v. Von Raab***, 489 U.S. 656 (1989); ***Skinner v. Railway Labor Executives' Assn.***, 489

U.S. 602 (1989); ***Vernonia School Dist. 47J v. Acton***, 515 U.S. 646 (1995). The Court in those cases employed a balancing test that weighed the patient's privacy against the special needs, or purpose behind the health care facilities' policies. ***Id***. at 68. The Court recognized that the drug test and disclosure policies in those four cases served purposes "divorced from the State's general law enforcement interest."***Id.*** at 69.

On the other hand, the ***Ferguson*** hospital policy's "immediate objective [] was to generate evidence for law enforcement purposes . . . ." and was aimed at obtaining "the arrest and prosecution of drug-abusing mothers." ***Id***. at 69, 82. Searches performed pursuant to that policy were therefore unconstitutional. ***Id.***

This current case is distinguishable from ***Ferguson*** on multiple levels. Initially, the Mayo Clinic is not a state hospital and, therefore, not a government actor for civil liability purposes. The Mayo Clinic administered Loertscher's urine test on its own accord in furtherance of Loertscher's requested medical needs; she presented to the facility to find out if she was pregnant. (Amend. Compl., Dkt. 66 at ¶¶ 17-18, Nov. 11, 2015). The urine test was not administered pursuant to a county policy or at the county's bequest. (*Id.* at ¶ 18.).

The Court in ***Ferguson*** clarified that the unreasonable search at issue was the urine test itself, not the diagnostic testing of the urine sample. 532 U.S. at 68. The urine tests were unreasonable searches because they were performed without the patients' consent. ***Id***. Here, there is no allegation in Loertscher's Amended Complaint that she did not consent to the urine test. In fact, her Amended Complaint specifies that "Mayo Clinic personnel ***asked Ms. Loertscher to provide a urine sample and she did so***." (Amend. Compl., Dkt. 66 at ¶ 18, Nov. 11, 2015) (emphasis added). There is no Fourth Amendment issue where the patient consents.

Most importantly, the purpose of the Mayo Clinic's disclosure to Taylor County officials of Loertscher's test results was for the protection of Loertscher's unborn child. The Mayo Clinic did not disclose the information to punish Loertscher or to prosecute her for neglect or drug use. In fact,

Loertscher was never criminally charged for her conduct. The "special needs" at issue are in line with the permissible purposes enumerated in ***Chandler v. Miller***, 520 U.S. 305 (1997); ***Treasury Employees v. Von Raab***, 489 U.S. 656 (1989); ***Skinner v. Railway Labor Executives' Assn.***, 489 U.S. 602 (1989); and ***Vernonia School Dist. 47J v. Acton***, 515 U.S. 646 (1995), as opposed to the law-enforcement related objectives in ***Ferguson.***

Finally, the Mayo Clinic's release of Loertscher's medical records was done pursuant to state and federal law permitting the disclosure of such information in light of suspected abuse of unborn children. Wis. Stat. § 49.981(3); *see also* 45 C.F.R. § 164.512(b)(11). The ***Ferguson*** Court even acknowledged the legality of situations "in which physicians or psychologists, in the course of ordinary medical procedures aimed at helping the patient herself, come across information that ***under rules of law or ethics is subject to reporting requirements***." 532 U.S. at 80-81 (emphasis added).

Loertscher is also wrong for betting on ***Ferguson*** to support that her Fourth Amendment rights at issue in this case were clearly established. The right at issue in ***Ferguson*** is not at issue in this case. ***Ferguson*** dealt only with a person's right to be free from a search conducted without consent, probable cause or a warrant and involved that right in a criminal context. ***Id.*** at 68. This case does not deal with a warrantless search, nor is it criminal in nature. Loertscher cannot simply regurgitate constitutional case law and argue it applies or supports a clearly established right. She is required, in order to defeat an immunity defense, to demonstrate "that a violation of ***this right*** (that is the specific right at issue) has been found in factually similar cases." ***Lee v. Young***, 533 F.3d 505, 512 (7th Cir. 2008). Her brief is void of case law or discussion as to why her specific rights as alleged were clearly established by the ***Ferguson*** or other decisions or that these defendants violated the same.

### B. *Child removal cases support qualified immunity*

These defendants highlighted three Seventh Circuit decisions that aid that a social worker or related government actor deserves qualified immunity for investigating child abuse claims or

removing abused children to safety.[6] Loertscher answered by claiming those cases involved only the rights of the already born child while her case involves her own, independent constitutional rights. (Response Brief, Dkt. 89 at p. 17, Feb. 5, 2016). As noted above, she presents a significant and interesting constitutional question. She cannot claim persuasively, however, that the Taylor County social workers should have predicted the outcome of the constitutional analysis or ignored the court orders.

### C. These defendants' conduct was legal in light of prevailing law.

The Court held in **Michigan v. DeFillipo** that "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law that is so grossly and flagrantly unconstitutional that any person of a reasonable prudence would be bound to see its flaws." 443 U.S. 31, 38 (1979). Loertscher argues that Act 292 is so "grossly and flagrantly unconstitutional" that the **DeFillipo** exception applies. She failed to cite any other case in which the supposed exception was found. (Response Brief, Dkt. 89 at p. 18, Feb. 5, 2016). It apparently is very rare.

Nor did Loertscher cite any state or federal decision where a similar statute was found unlawful. The fact that Ms. Loertscher can find no closely analogous decision severely undermines her suggestion the statute is "grossly and flagrantly unconstitutional."

The Wisconsin Supreme Court's decision in **State ex. rel. Angela M.W. v. Kruzicki**, 209 Wis.2d 112 (1997) should foreclose any argument that the statute is flagrantly unconstitutional. **Kruzicki** involved a pregnant plaintiff who refused drug treatment after admitting to her OB/GYN using cocaine and testing positive for the same. **Id.** at ¶¶ 3-4. The physician notified county authorities who filed a "Motion to take an Unborn Child into Custody" pursuant to Wis. Stat. § 48.19(1)(c) (1993-1994); the motion was supported by the physician's affidavit. **Id.** at ¶¶ 4-5. That

---

[6] (Def's Motion to Dismiss Brief, Dkt. 84 at p. 19, Jan. 15, 2016); **Berman v. Young**, 291 F.3d 976 (7th Cir. 2002); **Millspaugh v. Dept. of Public Welfare**, 937 F.2d 1172 (7th Cir.), *cert. denied*, 502 U.S. 1004 (1991); **Landstrom v. Dept. of Children & Family Srvs.**, 892 F.2d 670 (7th Cir. 1990).

motion requested an order "removing the [] unborn child from his or her present custody, and placing the unborn child" in protective custody. *Id.* at ¶ 5.

The circuit court granted the motion and ordered the plaintiff to be placed in custody by the Waukesha County Sheriff's department and transported to an inpatient treatment facility at Waukesha Memorial Hospital. *Id.* at ¶ 6. The plaintiff voluntarily presented to that facility. *Id.* at ¶ 7. The plaintiff later appeared at a CHIPS hearing by telephone and without counsel. *Id.* at ¶ 9.

After retaining counsel the plaintiff challenged the court's jurisdiction via extraordinary writ, arguing that Wisconsin's CHIPS laws did not apply to an unborn child. *Id.* at ¶ 10. The court of appeals denied the writ and the plaintiff subsequently gave birth to a healthy baby. *Id.* at ¶ 11.

The court of appeals supplemented its order denying review, finding that circuit court did not exceed its jurisdiction because, pursuant to Supreme Court precedent and Wisconsin law, a viable fetus was a person within the meaning of the CHIPS statute's definition of "child." *Id.* at ¶ 12. That court also determined that the application of the CHIPS statute to her unborn child did not deprive her of equal protection or due process. *Id.*

The Supreme Court reversed the court of appeals. *Id.* at ¶ 43. It did not address, however, the constitutionality of Waukesha County's enforcement of the CHIPS laws against the plaintiff and her unborn child. It reversed only on grounds that it did not believe that the definition of "child" in the CHIPS laws included a viable fetus. *Id.* at ¶ 14.

Importantly, the Court recognized that "***the confinement of a pregnant woman for the benefit of her fetus is a decision bristling with important social policy issues.***" *Id.* at ¶ 39 (emphasis added). It determined "that the legislature is in a better position than the courts to gather, weigh, and reconcile the competing policy proposals addressed to this sensitive area of the law." *Id.* Respectfully, there is nothing "flagrantly" obvious about the laws enacted in response to ***Kruzicki***. Far from concluding the laws were "grossly" unconstitutional, a reasonable county official reading

*Kruzicki* would have to assume the legislature did its job. That official is entitled to the benefit of the doubt and qualified immunity.

> ### D. Conduct in furtherance of a court order finding probable cause is immune.

Defendants cited two Seventh Circuit cases holding that even the unlawful seizure of an individual is not actionable if done with "arguable probable cause." (Response Brief, Dkt. 89 at pp. 18-19, Feb. 5, 2016); *McComas v. Brickley*, 673 F.3d 722, 725-26 (7th Cir. 2012); *Fleming v. Livingston Cty. Ill.*, 674 F.3d 874, 880 (7th Cir. 2012). Loertscher attempts to distinguish those cases by asserting they are unique to criminal prosecutions—that is, arguable probable cause only applies after seizure of a criminal defendant. (Response Brief, Dkt. 89 at p. 23, Feb. 5, 2016). This is not true. The Seventh Circuit in *Doe v. Heck* applied the doctrine in the context of a civil seizure—detaining a suspected child abuse victim for investigation purposes—where the seizure is executed "pursuant *to a court order*, *probable cause*, or exigent circumstances. 327 F.3d 492, 513 (2003) (emphasis added).

The Second Circuit Court of Appeals agreed, finding that "arguable probable cause" supported a social worker's determination that the plaintiff was dangerous and needed involuntary care at a mental institution. *Vallen v. Connelly*, 185 Fed. Appx. 22, 2006 WL 1667088 (2nd Cir. June 6).

## CONCLUSION

These defendants respectfully request this Court grant their motion to dismiss.

Dated this 17th day of February, 2016.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**


*s/ Douglas S. Knott*

Douglas S. Knott, State Bar No. 1001600
Ryan M. Wiesner, State Bar No. 1090647
Attorneys for Defendants Taylor County, Amber
Fallos, Liza Daleiden and Julie Clarkson
River Bank Plaza, Suite 600
740 N. Plankinton Avenue
Milwaukee, WI 53203
Telephone: (414) 276-8816
Fax: (414) 276-8819
E-mail: douglas.knott@wilsonelser.com
              ryan.wiesner@wilsonelser.com