IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TAMARA M. LOERTSCHER,

                      Plaintiff,

  v.                                           OPINION & ORDER

ELOISE ANDERSON, BRAD D. SCHIMEL,           14-cv-870-jdp
TAYLOR COUNTY, AMBER FALLOS,
LIZA DALEIDEN, and JULIE CLARKSON,

                      Defendants.

---

Pursuant to 1997 Wis. Act 292, state authorities may treat a fetus of any gestational age as a child in need of protective services (CHIPS) if the "expectant mother's habitual lack of self-control in the use of alcohol beverages, controlled substances or controlled substance analogs, exhibited to a severe degree, [poses] a substantial risk of harm" to the fetus. Wis. Stat. § 48.193. Plaintiff Tamara M. Loertscher brings this suit under the authority of 42 U.S.C. § 1983, contending that Act 292 is unconstitutional. Her original complaint brought only a facial challenge to the law, but she has amended her complaint to add an as-applied challenge, as well as claims for money damages against Taylor County, Amber Fallos, Liza Daleiden, and Julie Clarkson. Loertscher contends that these county defendants violated her constitutional rights when they enforced Act 292 against her.

This opinion and order addresses two motions now before the court. First, defendants Eloise Anderson and Brad D. Schimel (who the court will refer to as "the state defendants") again move to dismiss the case for mootness, this time because Loertscher has moved out of state. Dkt. 68. The court will deny this motion, because under the capable of repetition yet evading review doctrine, standing does not depend strictly on Loertscher's personal situation.

Second, the Taylor County defendants have moved to dismiss Loertscher's claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 83. The county defendants contend that they are entitled to absolute or, at the very least, qualified immunity from suit. The county defendants also contend that Loertscher has failed to state a claim against Taylor County because the amended complaint does not identify a *county* policy, practice, or procedure responsible for the alleged constitutional violations. The court will grant the county defendants' motion with respect to the individual defendants because they are entitled to at least qualified immunity. Loertscher's constitutional rights may have been violated; that is the ultimate issue in this case. But when viewed at the appropriate level of specificity, Loertscher's rights were not so clearly established that the individual defendants would have known that they were violating her rights by enforcing Act 292. The court will deny the motion with respect to Taylor County itself because Loertscher has adequately alleged that her rights were violated pursuant to a Taylor County policy or practice.

STATE DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS

Defendants Eloise Anderson and Brad D. Schimel have again moved to dismiss Loertscher's claims as moot. Dkt. 68; *see also* Dkt. 48. The facts of this case have been detailed extensively in a previous order, Dkt. 61, so the court need not repeat them here. The only new fact pertinent to the state defendants' motion is that Loertscher has recently moved out of Wisconsin. The state defendants contend that because Loertscher has moved out of Wisconsin, she no longer faces any risk of being subjected to Act 292. The state defendants emphasize that her move was voluntary, although Loertscher alleges that she moved in part

because of her fear of harassment or future intervention by local officials related to the issues in this case.

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (citations and quotation marks omitted). For example, if there is no reasonable expectation that the conduct will recur, or if interim "events have completely and irrevocably eradicated the effects" of the alleged conduct, then there is no longer a reason to decide it. *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). "But a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 133 S. Ct. at 1023 (internal citations and quotation marks omitted). As the party asserting mootness, the state defendants bear the burden of persuasion on the issue. *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004).

In denying the state defendants' previous motion to dismiss for mootness, the court concluded that Loertscher's case was capable of repetition yet evading review because other women will continue to be subject to Act 292. Dkt. 61, at 17-19. Loertscher's requested declaratory judgment would apply not only to the actions taken against Loertscher, but also to the state's enforcement of Act 292 against other women, allegedly hundreds every year. Accordingly, the case attacks an ongoing policy that "has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974); *see also Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 931 (7th Cir. 2013) (collecting cases). The court was also very aware of "the fact that a

3

significant class of federal claims might continually escape adjudication[.]" *U.S. ex rel. Fitzgerald v. Jordan*, 747 F.2d 1118, 1119 (7th Cir. 1984).

Loertscher's move out of Wisconsin does not change any of these considerations. The state defendants apparently stand ready to enforce Act 292 across the state, but the proceedings are still shrouded in confidentiality, making it difficult to determine the extent of enforcement. Because the conduct is still capable of repetition yet evading review, the issues in this case are still very much alive. Loertscher's amended complaint, in which she asserts a claim for damages, adds another dimension to the standing analysis. If these claims survive (and one will, as discussed in the next section), the court will have to consider the merits of Loertscher's case even if her claims for declaratory and injunctive relief were not viable.

The state defendants' motion to dismiss for mootness is denied.

## COUNTY DEFENDANTS' MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) tests the complaint's legal sufficiency. To state a claim upon which relief can be granted, a complaint must provide only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

The "court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). Accordingly, for purposes of this motion, the court draws the facts from the amended complaint. Dkt. 66.

## A. Factual background relevant to the county defendants' motion

Loertscher has sued Taylor County and three of its employees: Amber Fallos, Taylor County Department of Human Services agency director; Liza Daleiden, Taylor County Department of Human Services deputy director; and Julie Clarkson, Taylor County Department of Human Services social worker. Again, most of the background facts are set out in a previous order, Dkt. 61, so the court summarizes here only the allegations relevant to the county defendants' motion.

When Loertscher came to believe that she might be pregnant, she sought medical care from the Taylor County Department of Human Services (TCDHS). Unnamed TCDHS personnel referred Loertscher to the Eau Claire Mayo Clinic emergency room. On August 1, 2014, Loertscher went to the Mayo Clinic emergency room for treatment. Mayo Clinic personnel tested Loertscher's urine, which confirmed that she was pregnant but also showed that she had used marijuana, amphetamine, and methamphetamine. Loertscher was voluntarily admitted to the Mayo Clinic Behavioral Health Unit (BHU) for in-patient psychiatric and medical care on a short-term basis.

A day or so later, August 2 or 3, 2014, personnel from the Mayo Clinic informed TCDHS of Loertscher's pregnancy and drug test results. The court infers from the amended complaint that TCDHS took steps that led to the filing of the CHIPS petition against Loertscher. The amended complaint alleges that an unknown person, sued as a John/Jane Doe

5

defendant here, signed a "Temporary Physical Custody Request," Dkt. 16-1, which effectively converted Loertscher's voluntary admission to the Mayo Clinic BHU to an involuntary detention there. About the same time, a Taylor County court commissioner appointed a guardian ad litem for Loertscher's fetus.

On August 5, 2014, Loertscher was taken by Mayo Clinic social workers to a conference room, where she was given a copy of the as-yet-unsigned CHIPS petition. Taylor County Court Commissioner Gregory Krug was on the phone, prepared to conduct a hearing on the petition. Also on the phone were Taylor County Corporation Counsel Courtney Graff, the GAL for Loertscher's fetus, Michael Schiffler, and two of the three individual county defendants, Julie Clarkson and Liza Daleiden. (A transcript of the hearing was attached to the original complaint. Dkt. 1-2.)

The specific allegations against the three individual county defendants are as follows:

Clarkson told a Mayo Clinic social worker that the court had ordered Loertscher to remain at the Mayo Clinic until human services could take her to a residential treatment facility. Dkt. 66, ¶ 38. Clarkson was also present at the August 25, 2014, contempt hearing. *Id.* ¶ 49. She testified that Loertscher had failed to abide by the August 5, 2014, order by refusing to submit to in-patient treatment. *Id.* ¶ 53. And, with Daleiden, she met with Loertscher after the contempt hearing, stated that "we just want a healthy baby," and confirmed, after Loertscher asked, that "all this would go away" if she had an abortion. *Id.* ¶ 55.

Daleiden drafted an affidavit in support of the August 11, 2014, motion for remedial contempt (filed by GAL Shiffler), stating that Loertscher had violated the court's temporary physical custody order. *Id.* ¶ 44. Daleiden was present at the August 25, 2014, contempt

hearing. *Id.* ¶ 49. She met with Loertscher after the contempt hearing, stated that "we just want a healthy baby," and confirmed, after Loertscher asked, that "all this would go away" if she had an abortion. *Id.* ¶ 55. And she was present at the September 22, 2014, post-consent decree hearing. *Id.* ¶ 69.

TCDHS eventually made an administrative determination that Loertscher had committed child maltreatment, and it issued Loertscher a notice of this determination on September 29, 2014. Loertscher appealed the violation. Dkt. 1-14. Fallos conducted a "desk review" of Loertscher's appeal of the child maltreatment finding and affirmed the administrative decision. Dkt. 66, ¶ 73.

Loertscher also alleges that Fallos, Daleiden, and Clarkson are each responsible for the development and implementation of Taylor County's policies, including those relating to child protective services.

Loertscher contends that the county defendants violated her substantive due process rights, her Fourth Amendment rights, her First Amendment rights, her equal protection rights, and her procedural due process rights by enforcing Act 292 against her.

**B. Individual immunity**

The individual county defendants contend that even assuming that everything Loertscher alleges is true, they are entitled to absolute or, in the alternative, qualified immunity.

**1. Absolute immunity**

Defendants Fallos, Daleiden, and Clarkson contend that as TCDHS employees, their efforts to enforce child protection statutes are quasi-prosecutorial in nature and that, accordingly, they are entitled to absolute immunity.

Absolute immunity applies to officials performing certain governmental functions that might be perversely affected by the threat of individual liability. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 622 (7th Cir. 2002). Accordingly, courts take a functional approach to absolute immunity, which looks not to the officer's title but to the officer's function and whether exposure to particular forms of liability would impede the appropriate performance of that function. *Id*. Case law establishes some prototypical examples, notably judges making judicial decisions, but the analysis of novel situations requires courts to balance multiple considerations. *See generally Butz v. Economou*, 438 U.S. 478, 513-14 (1978).

Prosecutors are entitled to absolute immunity for prosecutorial acts. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Absolute prosecutorial immunity extends to others when they perform prosecutorial functions, or functions directly in aid of prosecution, such as testifying in court. *Burns v. Reed*, 500 U.S. 478, 486 (1991). The official asserting absolute immunity bears the burden of proving that "such immunity is justified for the function in question." *Id*.

Notably, for purposes of this case, social workers are entitled to absolute prosecutorial immunity when they initiate and aid the adjudication of child protective proceedings. *See Millspaugh v. Cty. Dep't of Pub. Welfare*, 937 F.2d 1172, 1175 (7th Cir. 1991). But absolute immunity does not extend to social workers when they function as investigators. *Id*. at 1176. When performing acts in connection with that function, social workers are akin to police officers, and they are protected in that capacity only by qualified immunity. *Id*.; *see also Gray v. Poole*, 275 F.3d 1113, 1117 (D.C. Cir. 2002) (tracking down information, making professional judgments, and passing on findings to attorneys are investigatory functions eligible for qualified immunity).

The "dividing line" between absolute immunity and qualified immunity "is whether the injury depends on the judicial decision." *Millspaugh*, 937 F.2d at 1175. In other words, if the alleged injury would not have occurred but for a judge's decision—presumably prompted by prosecution—then the prosecutor or other individual who induces the judge to act is entitled to absolute immunity with respect to the inducing conduct. *Id.* In *Millspaugh*, the Seventh Circuit determined that a county social worker was entitled to absolute prosecutorial immunity for: (1) "asking the court to do certain things"; (2) selecting evidence to present to the court; (3) deciding to go forward with child services proceedings despite not providing the mothers with adequate notice; and (4) testifying. *Id.* at 1175-76 ("[S]ocial workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court.").

Here, the individual county defendants contend that all of the allegations against them "arise out of the legal proceedings that were initiated to protect the unborn child." Dkt. 84, at 13. Thus, they contend, they are all entitled to absolute immunity. But Loertscher contends that the amended complaint is "replete with allegations against the County Defendants that go beyond testimony within a judicial proceeding." Dkt. 89, at 34. Loertscher, relying on *Gray v. Poole*, contends that the individual county defendants functioned also as investigators.

Loertscher may be correct with respect to the John/Jane Doe defendant, the unnamed official who signed the Temporary Physical Custody Order.[1] Signing the order itself would likely qualify as a quasi-prosecutorial act, but the court can infer that Doe (or another

---

[1] Counsel for the county defendants have not appeared for or filed this motion on behalf of the John/Jane Doe defendant.

TCDHS employee) also investigated the matter. And when functioning as an investigator, Doe and any other TCDHS employee would be protected, if at all, only by qualified immunity.

But Clarkson and Daleiden had nothing to do with Loertscher's case until they appeared at the August 5 hearing. Daleiden and Clarkson are entitled to absolute immunity for providing an affidavit and testifying at the proceedings; these actions aided and induced the judicial decisions that ultimately injured Loertscher. Their remaining actions—including attending subsequent hearings and speaking to the Mayo Clinic and Loertscher—worked to effectuate the court order that Loertscher be detained. Actions to effectuate a court order are entitled to absolute quasi-judicial immunity. *See Richman v. Sheahan*, 270 F.3d 430, 437 (7th Cir. 2001).

Fallos presents a closer case. She conducted the "desk review" of Loertscher's appeal of the child maltreatment determination by TCDHS and affirmed the administrative decision. At first blush, Fallos's function appears similar to that of an appellate judge. But whether an administrative adjudication gives rise to absolute immunity must be evaluated according to the multiple factors set out in *Butz*. *Capra v. Cook Cty. Bd. of Review*, 733 F.3d 705, 709-10 (7th Cir. 2013). The parties have not undertaken this analysis, nor have they provided the court with the facts to do so. It is Fallos's burden to establish her entitlement to absolute immunity. Accordingly, the court concludes that, on this record at least, Fallos is not entitled to absolute immunity.

2.  **Qualified immunity**

Defendants Fallos, Daleiden, and Clarkson contend that if they are not entitled to absolute immunity, they are nevertheless entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Put a bit more bluntly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The doctrine translates into a two-part test: (1) whether the public official violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the alleged violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). At this point, the court will assume, as Loertscher alleges, that the county defendants violated Loertscher's substantive due process, procedural due process, Fourth Amendment, and equal protection rights, and the court will skip to step two as authorized under guiding Supreme Court precedent.[2]

The issue thus is whether Loertscher's rights were clearly established at the time of the alleged violations. A right is "clearly established" when a reasonable official would know that his "conduct was unlawful in the situation he confronted." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 915 (7th Cir. 2011) (citations omitted). Loertscher bears the burden of

---

[2] The court does not have to determine whether the county defendants violated Loertscher's constitutional rights before considering whether the rights at issue were clearly established. *Pearson*, 555 U.S. at 236. In fact, "[c]ourts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." *al-Kidd*, 563 U.S. at 735 (internal citation and quotation marks omitted). In this case, the court will likely have to reach those difficult questions. But it need not do so now on the basis of an incomplete record.

demonstrating that her rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011).

Before the court can determine whether Loertscher's rights were clearly established, it must identify the specific rights at issue. Loertscher articulates these rights at the highest level of abstraction: (1) the right to be free from bodily restraint; (2) the right to bodily integrity and to refuse unwanted medical treatment; (3) the right to procreate; (4) the right to family unity; and (5) the right to be free from unreasonable search and seizure. Loertscher contends that these "bedrock" rights were obviously clearly established when the county defendants enforced Act 292 against her. Dkt. 89, at 21.

The problem is that Loertscher's take on the rights at issue is far too abstract and generalized. Under Loertscher's approach, *every* constitutional violation would implicate some high-level clearly established right, and the doctrine of qualified immunity would protect no one. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("But if the test of 'clearly established law' were to be applied at this level of generality [i.e., the right to due process generally], it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."); *see also al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). The Supreme Court does not require that case law must have addressed the exact conduct at issue to overcome qualified immunity. *al-Kidd*, 563 U.S. at 741 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). But the Court has focused the qualified immunity inquiry on

analogous fact patterns and whether it was clearly established that the specific conduct at issue in a particular case was unconstitutional. *See, e.g.*, *Wood v. Moss*, 134 S. Ct. 2056, 2067-68 (2014) (focusing on whether it should "have been clear to the [Secret Service] agents that the security perimeter they established violated the First Amendment" and holding that "[n]o decision of which we are aware . . . would alert Secret Service agents engaged in crowd control that they bear a First Amendment obligation to ensure that groups with different viewpoints are at comparable locations at all times"); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (holding that because the "reasonableness of lethal force as a response to vehicular flight" depends on the facts of a particular case, cases discussing excessive force in more general terms did not make the defendant's conduct here clearly unreasonable); *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009) (holding that a student's Fourth Amendment rights in the context of school strip searches were not clearly established because lower courts had ruled differently in factually similar school strip search cases); *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004) (per curiam) (focusing specifically on "whether [shooting] a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight" was a clearly established use of excessive force).

With these principles in mind, the operative question is not whether Loertscher's general right to bodily integrity or freedom from unlawful search and seizure were clearly established. The court must focus its inquiry on whether clearly established law showed that the individual county defendants' specific conduct—as articulated in the amended complaint—violated Loertscher's constitutional rights. In other words, the right to bodily integrity may very well be clearly established, but the court must determine whether it was clearly established that defendants Fallos, Daleiden, and Clarkson violated that right when

13

they enforced Act 292. *See, e.g.*, *Anderson*, 483 U.S. at 640-41 (holding that Fourth Amendment rights were *not* the rights at issue; the court of appeals should have considered that it was *not* clearly established that the defendant's specific conduct violated the Fourth Amendment).

Not only does Loertscher invoke only over-generalized rights in her attempt to refute qualified immunity, but Loertscher fails to focus on the individual county defendants' *specific conduct*. Throughout her briefing, Loertscher refers to the county defendants' collective efforts to enforce Act 292. But "to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations and internal quotation marks omitted). Qualified immunity depends on what Loertscher claims each of the individual county defendants did to violate her rights.

As mentioned, Loertscher alleges that defendants Daleiden and Clarkson were present at several hearings, testified or supplied affidavits stating that Loertscher had violated the court's order to submit to in-patient treatment, and had a brief conversation with Loertscher following one of the hearings. Setting aside the fact that most of these actions, when viewed in isolation, can hardly be said to have violated Loertscher's constitutional rights, Loertscher has not demonstrated that it was clearly established that county human services employees violate an individual's constitutional rights[3] by participating in proceedings that result in

---

[3] Loertscher contends that the county defendants, collectively, violated her substantive due process, procedural due process, Fourth Amendment, and equal protection rights. But her briefing contends only that it was clearly established that they violated her substantive due process and Fourth Amendment rights. Not only has Loertscher failed to demonstrate that it was clearly established that the county defendants' conduct violated *any* of Loertscher's constitutional rights, but Loertscher's amended complaint does not allege that the individual defendants committed any acts that would constitute Fourth Amendment violations

court orders that place a pregnant woman in temporary physical custody, order her participation in an in-patient treatment program, and ultimately take her into custody after determining that drug use threatened the fetus's physical health. Loertscher does not even allege that the individual county defendants were responsible for setting the events in motion: an unidentified individual—not Fallos, Daleiden, or Clarkson—signed the Temporary Physical Custody Request that started the process. Dkt. 66, ¶ 27. Loertscher's allegations regarding Daleiden and Clarkson concern two human services employees' limited contributions to larger decisions and procedures provided for by state statute. The law in this circuit did not place reasonable county human services employees on notice that enforcing Act 292 in their limited roles was unconstitutional.

And Loertscher implicates defendant Fallos in her individual capacity only for her role in affirming the administrative maltreatment determination. Although the county eventually withdrew the maltreatment finding, Dkt. 47-1, the county presumably issued the maltreatment decision pursuant to the Act 292 proceedings. Fallos affirmed the decision after Loertscher appealed. The county has since admitted that the determination exceeded its authority under Wisconsin's Children's Code. But Loertscher has not shown that it was clearly established that Fallos's administrative review violated Loertscher's constitutional rights.

The fact that Act 292 was valid at the time the county defendants enforced it means that they did not have to guess whether it was constitutional. "The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the

---

(according to Loertscher's own allegations, Fallos, Daleiden, and Clarkson played no direct role in searching or seizing Loertscher or her medical records).

possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). The Seventh Circuit has applied the *DeFillippo* holding in the qualified immunity context. *See Doe v. Heck*, 327 F.3d 492, 515-16 (7th Cir. 2003) (holding that although the statute authorizing child welfare caseworkers to find, seize, and interview suspected abused children without a warrant and without a parent's consent was unconstitutional, the caseworkers were entitled to qualified immunity from the Fourth Amendment violation because they acted pursuant to a lawful statute; the statute was not "so patently unconstitutional as to deny the defendants qualified immunity"). When a statute has never been challenged, and when "no reported decision (state or federal) address[ed] the precise issues[,]" it is unlikely that an unconstitutional statute rises to the level of patently or obviously unconstitutional so as to notify officials to abandon enforcement. *Id.* at 516.

Here, neither party has pointed the court to any case law that has addressed a substantially similar law—namely, a law permitting government officials to take a pregnant woman into custody to protect unborn children from suspected drug abuse—and the court is not aware of any. Not only has the law of this circuit not held that Loertscher's right to be free from enforcement of provisions akin to Act 292 is clearly established, but no case law has placed defendants on notice that Act 292 may be unconstitutional. *Cf. Koser v. County of Price*, 834 F. Supp. 305, 308-09 (W.D. Wis. 1993) (holding that because the Supreme Court had held that an analogous Washington state statute was unconstitutional, the defendants were not entitled to qualified immunity even though no court had explicitly ruled that the Wisconsin statute they had enforced was unconstitutional; *DeFillippo* did not apply because there *was* controlling precedent). *This* is the case that challenges the Act; *this* case may

determine its constitutionality. But the county defendants did not have the benefit of this challenge at the time they acted.

The court is mindful that complaints are "generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Qualified immunity depends on the specific facts at issue in a particular case, and parties typically unearth most facts during discovery. *Id.* "If the unlawfulness of the government official's conduct as pled is not clearly established, however, then the government official could be entitled to qualified immunity, even if the defense is asserted at the pleading stage." *Omachonu v. Shields*, No. 15-cv-69, 2015 WL 4509146, at *8 (W.D. Wis. July 24, 2015) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). As discussed above, the unconstitutional nature of the individual county defendants' conduct was not clearly established. And this case is not in its infancy; Loertscher has had the opportunity to conduct discovery and amend her complaint. The amended complaint itself is factually detailed. For these reasons, this case presents a unique opportunity to let the individual defendants out now as opposed to waiting until summary judgment.

The court will dismiss Loertscher's claims against defendants Fallos, Daleiden, and Clarkson in their individual capacities.[4] They remain as defendants in their official capacities.

## C.  Taylor County policy and practice

The remaining claims against the county defendants are those against Taylor County; Loertscher's claims against defendants Fallos, Daleiden, and Clarkson in their official capacities are really claims against Taylor County. *Sanville*, 266 F.3d at 732 ("Official

---

[4] *Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000) ("[I]it is well established that the qualified immunity doctrine does not apply to official capacity claims.").

capacity suits are actions against the government entity of which the official is a part."). Although they appear to have abandoned the argument in their reply brief, the county defendants contend that Loertscher has not stated a § 1983 *Monell*[5] claim against Taylor County because only *state* statutes, not county policies, caused the alleged constitutional violations.

"[W]hether or not a plaintiff has stated a Section 1983 claim against a municipal entity typically hinges on the extent to which that municipal entity was independently responsible for the allegedly unconstitutional act." *Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014). Typically, general compliance with state law is not a county policy sufficient to state a § 1983 *Monell* claim against a municipal entity. "When state law unequivocally instructs a municipal entity to produce binary outcome X if condition Y occurs, we cannot say that the municipal entity's 'decision' to follow that directive involves the exercise of any meaningful independent discretion, let alone final policymaking authority." *Id.* at 249. In other words, if state law mandates compliance with the law and a prescribed outcome, the state law, not the county's enforcement of that law, causes the alleged injury.

But here there is enough flexibility and discretion in the statutory language at issue to conclude, at this point, that Loertscher has alleged that a Taylor County policy of enforcing Act 292 violated her constitutional rights. Loertscher alleges that the county defendants acted "pursuant to unconstitutional policies, practices, and procedures for implementation of [Act 292]." Dkt. 66, ¶ 1. She has alleged, for purposes of this Rule 12(b)(6) motion, that Taylor County made independent policy judgments with respect to Act 292. The court will deny this aspect of the county defendants' motion to dismiss.

---

[5] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

ORDER

IT IS ORDERED that:

1. Defendants Eloise Anderson and Brad D. Schimel's motion to dismiss the amended complaint, Dkt. 68, is DENIED.

2. Defendants Taylor County, Amber Fallos, Liza Daleiden, and Julie Clarkson's motion to dismiss, Dkt. 83, is GRANTED in part and DENIED in part.

    a. Plaintiff Tamara M. Loertscher's claims against defendants Fallos, Daleiden, and Clarkson in their individual capacities are DISMISSED.

    b. Plaintiff's claims against Taylor County and the individual county defendants in their official capacities will remain.

3. The court will hold a telephone scheduling conference before Magistrate Judge Stephen Crocker on Tuesday, June 14, 2016, at 10:00 a.m., to reset the trial calendar. Plaintiff's counsel will be responsible for setting up the call to chambers.

Entered June 6, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge