# Exhibit 8

# CHILD PROTECTIVE SERVICES ACCESS AND INITIAL ASSESSMENT STANDARDS

Effective: September 24, 2007

Bureau of Programs and Policies
Division of Children and Family Services
Wisconsin Department of Health and Family Services



STATE 00875

Family and individual history impacts how CPS responds to reports of alleged child maltreatment. This information (e.g., prior allegations, prior initial assessments, threats to child safety, responsiveness of the parents) will assist in analyzing the reported information to determine how quickly CPS responds. At CPS Access, the purpose of reviewing case history is to understand conditions within the family and to determine if a pattern of behavior can be identified regarding safety or risk concerns. A history of reports should prompt CPS Access to review and assess all available information about the family in relation to pervasive, changing, or escalating family conditions. Individual reports should be assessed in relation to the entirety of the information on the family rather than using an incident-based approach. Escalating family conditions, even in cases where no specific type of abuse or neglect has been reported, may be indicative of threats to child safety.

If the information received suggests that there was or may be a previous report in another county, CPS Access should contact that agency to request any additional records not in eWiSACWIS (e.g., court documents, paper records, information maintained in another computer system). *The DCFS Numbered Memo 2007-03: eWiSACWIS: Confidentiality And Access To The System* is adhered to when accessing CPS information created by another county.

## Chapter 4:  Reports with Special Requirements

There are four types of reports that have special requirements because of their unique circumstances:

- Unborn child abuse,
- Medical neglect of a disabled infant,
- Relinquished infants, and
- Child death due to alleged maltreatment when there are no other children in the household.

### Unborn Child Abuse

---

**IV.A.1.  Unborn Child Abuse Defined**

Unborn child abuse is defined as "serious physical harm inflicted on the unborn child, and the risk of serious physical harm to the child when born, caused by the habitual lack of self-control of the expectant mother of the unborn child in the use of alcohol beverages, controlled substances or controlled substance analogs, exhibited to a severe degree." [s. 48.02(1)(am), Stats.] The mandatory reporting laws do not apply to instances/suspicions of unborn child abuse. However, if suspected unborn child abuse is reported, the agency must document the report, make a screening decision and, if screened in, make a response time decision.

The definition of unborn child abuse requires the presence of all three of the following conditions:
1. pregnancy,
2. habitual lack of self control in the use of alcohol or drugs, exhibited to a severe degree, and
3. information to support the belief that there is substantial risk to the physical health of the unborn child due to the substance use.

---

STATE 00889

The Access worker should gather information that assists in making the judgment as to whether there is a reasonable suspicion that the above conditions are present. All of the above conditions are generally best determined by medical or AODA professionals. This level of information cannot be expected at the Access stage of the case process. It is important for CPS staff to discuss unborn child abuse cases with their agency attorney and local medical professionals.

---

**IV.A.2. Information that Must be Gathered and Documented**

In addition to the requirements in *Chapter 3, Sections III.A. and III.B.*, the following information must be gathered from the reporter, if known:

1. Verification of pregnancy or information to support that the woman or girl is pregnant and, if possible, what month of the pregnancy she is in.

2. A description of the substances and quantity of substances she is alleged to be using.

3. A description of the behaviors that lead the reporter to believe that the expectant mother is demonstrating a habitual lack of control or that her substance abuse is exhibited to a severe degree.

4. The history of her substance abuse, treatment received and previous children who were born with the effects of alcohol or other drugs used during pregnancy.

5. A description of the prenatal care the expectant mother is receiving, if any, and the name of the doctor and medical clinic where she receives services.

6. A description of the expectant mother, highlighting individual functioning and her parenting practices, if other children are residing in the household.

---

### Medical Neglect of a Disabled Infant

Federal regulations require that states have procedures within their CPS system "for responding to the reporting of medical neglect (including instances of withholding medically indicated treatment from disabled infants with life-threatening conditions), procedures or programs, or both (within the State child protective services system), to provide for—
- coordination and consultation with individuals designated by and within appropriate health-care facilities;
- prompt notification by individuals designated by and within appropriate health-care facilities of cases of suspected medical neglect (including instances of withholding of medically indicated treatment from disabled infants with life-threatening conditions); and
- authority, under State law, for the State child protective services system to pursue any legal remedies, including the authority to initiate legal proceedings in a court of competent jurisdiction, as may be necessary to prevent the withholding of medically

STATE 00890

### XIV.G.  Conclusion of the Initial Assessment

The CPS caseworker must make the following decisions and share the information with the parent/caregiver:
- Whether the child is in need of protection or services, including the need for any court intervention.
- Whether there are any identified threats to child safety and the plan to control those threats.
- How identified threats to child safety are related to the parent/caregivers ability to provide protection (diminished protective capacities).
- The responsibility of the agency to provide CPS Ongoing Services when a child is unsafe (*See CPS Safety Intervention Standards*).
- The maltreatment determination.
- The maltreater determination, when applicable.
- The process to appeal a substantiated maltreater determination.
- If the case is going to be closed with CPS, how to access community resources, if needed.

### XIV.H.  Family Interaction

When children are placed in out-of-home care during the initial assessment process, face-to-face family interaction must occur within 5 business days of placement.  The agency is responsible for assuring that family interaction occurs.  The initial family interaction plan must include:
- frequency and location of the face-to-face family interaction.
- plans for transportation for those involved in the family interaction.
- who will be present.
- arrangements for monitoring or supervising, if needed.

Unless prohibited by order of the court, CPS must make diligent efforts to facilitate face-to-face family interaction based upon the child's developmental needs; however it must occur no less than weekly.

Additionally, children shall have other family interaction (e.g., telephone calls, letters, etc.) with their parents at least weekly.  (*See DCFS Memo Series 2006-08 Family Interaction For Child Protective Services Cases When A Child is In Out-of-Home Care.*)

## Chapter 15:  Unborn Child Abuse

### XV.A.  Information that Must be Gathered and Analyzed

In addition to the requirements of the Primary Assessment Standard (See *Chapter 14: Primary Assessment Standard)*, the following information must be gathered and analyzed:

- The unborn child's fetal development as reported by a physician (including the effects of the expectant mother's substance abuse).

STATE 00925

- The expectant mother's current use of substances and the impact it is having on her, the unborn child and, when applicable, other children in her care.
- Any substance abuse history and treatment, criminal history, and, when applicable, any history of other children born with the effects of alcohol or other drugs used during pregnancy.

If there are no other children in the home, information must be gathered to assess the expectant mother's capacity to care for an infant.

The CPS caseworker must collaborate with other professionals, as permitted by statute, in the assessment of and provision of services to the expectant mother and unborn child.

### Chapter 16: Medical Neglect of a Disabled Infant

**XVI.A. Interview Protocol and Information that Must be Gathered and Analyzed**

Information must be gathered in accordance with the requirements of the Primary Assessment Standard (*See Chapter 14: Primary Assessment Standard)*.

The first interview contact by the CPS caseworker is with the health care facility designee to:
- review the infant's medical record.
- obtain a description of the child's development, functioning and needs, highlighting the current life or health-threatening problem requiring treatment.
- assess the current safety of the infant including verification that efforts are being made to maintain the infant in a stabilized condition.
- determine the parent's/caregiver's response to their infant's life- or health-threatening condition.
- obtain a description of the actions taken or recommended by hospital and other medical personnel.
- determine if the hospital ethics committee has reviewed the case.

The order of the interviews should consider preserving information and minimizing the trauma for parents who are in the process of learning about the nature of their child's life- or health-threatening condition. Generally, it would not be practical or necessary to interview siblings for a report of possible medical neglect of a disabled infant.

**Collaboration**

Depending on the case, the caseworker may want to seek the assistance of a qualified medical consultant to evaluate the child's medical information (See *Appendix 8: Model Procedures in Reports of Withholding Medically Indicated Treatment from Disabled Infants with Life-Threatening Conditions)*. If the CPS caseworker, in consultation with medical personnel, determines that current medical information on the infant's condition is not adequate to make a determination regarding the treatment questions and the parents refuse consent for additional medical evaluation, the caseworker should seek court intervention under s. 48.295, Stats.,

STATE 00926