IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TAMARA M. LOERTSCHER,

      Plaintiff,

    v.                         Case No. 14-cv-870

BRAD D. SCHIMEL, et al.,

      Defendants.

## STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiff Tamara Loertscher cannot meet the high burden of showing that 1997 Wis. Act 292 (the "Act") is unconstitutional on its face.[1] She cannot establish that "no set of circumstances exists under which the Act would be valid." *See United States v. Salerno*, 481 U.S. 739, 745 (1987). In applying this standard, the court need not engage in hypothetical speculation; the Act has numerous constitutional applications both by its terms and in practice. As just one example, in Milwaukee County, the Act is used to receive reports of

---

[1] Loertscher asserts that "nearly every facial challenge also implies an as-applied challenge." (Dkt. 198:24.) But Loertscher does not develop any as-applied challenge, and she contends that the facts of her case are relevant only to "illustrate" the Act's application. (Dkt. 198:25.) Loertscher's claim against the State Defendants is facial only.

unborn child abuse, investigate them, and engage expectant mothers in voluntary services. (SDPFOF ¶¶ 101–20.) Without the Act, caseworkers would not be able to help these women. (*Id.* ¶ 120.)

Loertscher misstates and mischaracterizes numerous provisions of the Act, several of which require clarification:

- Reporting of unborn child abuse is discretionary, not mandatory. The plain language of the Act says as much, Wis. Stat. § 48.981(2)(d), and so do the relevant state standards, (SDPFOF ¶ 100.)

- The focus of the Act is treatment, not punishment. The Act has a strong preference for voluntary treatment, but even the more burdensome actions allowed under the Act are not punishment; they are merely collateral consequences to the greater goal of treatment of the expectant mother for protection of the unborn child. Wis. Stat. § 48.01(1)(am), (bm).

- The Act does not provide for termination of parental rights based on an expectant mother's placement outside the home during her pregnancy. Wis. Stat. § 48.415(2)(a). Nor may a court remove a child from the home based solely on the mother's prenatal substance use. Wis. Stat. §§ 48.345, 48.347(7). Jurisdiction over a newborn must be based on the conditions that exist at the time of birth. *Id.* (SDPFOF ¶ 188.)

- An administrative maltreatment determination is no longer permitted for unborn child abuse, pursuant to relevant state standards. (SDPFOF ¶¶ 121–22.) And counties are no longer required to identify a maltreater in the state database. (SDPFOF ¶ 122; Dkt. 181:22 ¶ 119.)

Relying in part on her improper characterization of the Act, Loertscher argues that the Act is void for vagueness, violates expectant mothers' substantive and procedural due process rights, their right to equal protection,

and their rights under the Fourth Amendment. Loertscher cannot establish that the Act violates these rights. Further, Loertscher's challenge to the Act based on the administrative finding of unborn child maltreatment is moot because such a determination is no longer permitted. Based on the undisputed facts, this Court should grant summary judgment in favor of the State Defendants.

## ARGUMENT

### I.   The Act is not void for vagueness.

Loertscher argues that the Act is void for vagueness because it allegedly does not provide women with notice of what behaviors will subject them to the Act and because it allegedly allows arbitrary enforcement. (Dkt. 198:25–29.) As shown in the State Defendants' previous briefs, the Act is not void for vagueness. (Dkt. 167:54–58; 189:4–10.)

The statutory terms, although undefined in the statute, are easily understood by reference to their dictionary definitions. (Dkt. 167:56–58.) Loertscher dismisses the use of dictionaries to define statutory terms (Dkt. 198:26), despite the fact that case law recognizes and approves the use of dictionary definitions to establish their meaning. *State v. Ehlenfeldt*, 94 Wis. 2d 347, 356, 288 N.W.2d 786 (1980) (citing Wis. Stat. § 990.01(1)). Loertscher cites *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), in which

the Court found that the statutory term "annoying" was unconstitutionally vague. Loertscher fails to mention that the problem with "annoying" is that it is inherently subjective; that's why the Court concluded that it was vague. "Conduct that annoys some people does not annoy others." *Id.* at 614. That is not true of the statutory terms at issue here: "habitually," "lacks self-control," "severe degree," "substantial risk," "affected," and "endangered." *E.g.*, Wis. Stat. § 48.133.

Loertscher implies that the Act would not be unconstitutionally vague if it used "medically precise terms." (Dkt. 198:27.) She also complains that the Act covers an expectant mother's use of "*all* alcoholic beverages and controlled substances, including those obtained legally." (Dkt. 198:28.) Loertscher misses the point of the statute. It is not directed at a woman's status as an alcoholic or drug abuser. It is not based on her physical dependency on drugs or alcohol. It is instead directed at the woman's *behavior*—the harm to her unborn child is the same whether or not her use of drugs or alcohol is driven by addiction.

For these and the reasons set forth in the State Defendants' previous briefs, this Court should rule that the Act is not void for vagueness.

4

## II.   The Act does not violate an expectant mother's substantive due process rights.

### A.   If the Act is subject to heightened review, the applicable test is "balancing," not strict scrutiny.

Loertscher concedes that an expectant mother has no right to use drugs or alcohol to the detriment of her unborn child and that she has no right to avoid child abuse investigations. (Dkt. 198:31.) Instead, she claims that other rights are at issue. She argues that the Act subjects expectant mothers to the "deprivation of their liberty, to unwanted medical treatment, and to interference in personal reproductive and family decisions." (Dkt. 198:31.) She insists that when these rights are at issue, the test for determining the constitutionality of the law is strict scrutiny. But she does not cite to a single case that holds as much. (Dkt. 198:31–34.)

As explained in the State Defendants' summary judgment response brief, if the Act is subject to heightened review, the applicable test is "balancing," not strict scrutiny. (Dkt. 189:10–22.) *See*, *e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992) (applying balancing test to law that allowed for indefinite detention of insanity acquittees); *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997) (individual's right to refuse unwanted medical treatment must be balanced against relevant state

interests); *Cruzan by Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278–79 (1990) (same); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 642–43 (1974) (applying rational basis test to policy that infringed upon right to bear child); *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1018 (7th Cir. 2000) (right to familial integrity must be balanced against state's interest in protecting children from abuse). In applying that test, the Court must balance the rights of the expectant mother with the state's interest in protecting unborn children from abuse. The Act meets that test.

### B.    The state has a compelling interest in protecting unborn children from substantial risk of physical injury.

Loertscher argues that the Act does not advance a compelling state interest for three reasons: (1) the risk of prenatal drug and alcohol exposure to fetal health has been greatly overstated; (2) the state does not have a compelling interest in fetal health before viability; and (3) the Act is detrimental to maternal and fetal health because "punitive approaches to substance use during pregnancy" discourage expectant mothers from seeking prenatal care and Alcohol and Other Drug Abuse  treatment. (Dkt. 198:34–41.) None of these arguments have merit.

First, the potential harmful effects of drugs and alcohol on unborn children is a compelling state interest. The State Defendants have presented evidence from their own experts and from Plaintiff's experts detailing the

6

substantial risk that prenatal alcohol and drug exposure poses to unborn children and children after they are born. (Dkt. 167:26–36; 189:23–27.) Loertscher concedes that "[t]hese potential health effects" are "undoubtedly serious for the infants suffering from them from whatever cause." (Dkt. 198:35.) She argues that these harms cannot serve as a compelling state interest because there is no linear, cause-and-effect relationship between prenatal drug and alcohol use and adverse birth outcomes and because prenatal use of other substances that may be detrimental to unborn children, such as tobacco, is not regulated by the Act. (Dkt. 198:39–40.) In essence, Loertscher argues that the state must identify and eliminate only the exact source of the harm, no more and no less. *Entm't Software Ass'n v. Balgojevich*, 469 F.3d 641, 646 (7th Cir. 2006) (citation omitted) (a law is narrowly tailored for the purposes of strict scrutiny "if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy"). But the state is not required to regulate consistently and perfectly where, as here, the test is not strict scrutiny. Further, even if there is disagreement among the experts, this does not render the Act unconstitutional. The Supreme Court "has given state and federal legislatures wide discretion to pass legislation in areas where there is medical and scientific uncertainty. *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007).

Second, Loertscher's argument about the state's interest in the health and wellbeing of unborn children before viability misses the mark.[2] (Dkt. 198:37–38.) Fetal viability is only relevant to the issue of whether, and under what circumstances, the government can legally restrict an expectant mother's right to an abortion. *See Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 879 (1992). But the Act does not regulate abortion. Unlike in the abortion context, the unborn children at issue under the Act are wanted by their mothers and will eventually develop into children. There can be no dispute that the government has a compelling interest in protecting children from abuse. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1019 (7th Cir. 2000). Children are protected from abuse from the moment they are born. It only makes sense that they be protected from abuse before birth as well. The state has a substantial and compelling interest in protecting unborn children from harm.

Finally, court-mandated treatment under the Act does not undermine the compelling state interest. There can be no dispute that drug treatment during pregnancy can improve participation in prenatal care and improve

---

[2] Loertscher also argues that "[t]he Act burdens the fundamental rights of a woman who may become pregnant from the moment of fertilization." (Dkt. 198:37.) This is not the case. The Act only applies to "expectant mothers," or women who are pregnant. Wis. Stat. § 48.133. And the relevant state standards require confirmation of pregnancy to screen in an unborn child abuse case. (SDPFOF ¶ 105.)

birth outcomes. (SDPFOF ¶¶ 91, 95–97, 184.) This treatment can be beneficial, even when it involves some element of governmental pressure. (*Id.* ¶¶ 98, 185, 186.) Milwaukee County provides a good example. There, the Act is used to engage expectant mothers in treatment. (*Id.* ¶¶ 106–20.) Without the Act, Milwaukee County would not be able to provide these valuable services. (*Id.* ¶ 115.)

In sum, the Act advances state interests in the health, safety, and welfare of unborn children and their expectant mothers. These interests apply throughout pregnancy—indeed, alcohol and drug use at any stage of a pregnancy can be detrimental to the unborn child and child when born. (*Id.* ¶¶ 37, 41, 50, 57, 65–66.) And these interests are not undercut by court-mandated treatment. The interests advanced by the Act are compelling.

C. **The Act strikes the appropriate balance between the rights of the expectant mother and the state's interest in preventing unborn child abuse.**

Under the applicable balancing test, the court must balance the rights of the expectant mother against the state's interest in preventing unborn child abuse. The test is one of "reasonableness," whereby the governmental action complained of must be "justified at its inception" and "reasonably related in scope to the circumstances which allegedly justified the interference in the first place." *Doe v. Heck*, 327 F.3d 492, 520 (7th Cir. 2003) (citations omitted). As discussed in the State Defendants' brief in support of

9

summary judgment, the Act meets this test because (1) it requires reasonable suspicion at the screening stage, and the children's court may only invoke its jurisdiction based on reliable and credible information; (2) by its plain language it applies only in extreme situations; and (3) protective custody orders are used in moderation, when necessary to keep the unborn child safe. (Dkt. 167:38–47.) The governmental actions permitted under the Act are reasonably related to the state's compelling interest in protecting unborn children from harm.

Loertscher argues that the reasonable suspicion standard applicable at the screening stage is inappropriate because "unlike 'conventional' child abuse cases, under the Act, the state seeks to take the pregnant woman into custody, not merely her child." (Dkt. 198:41–42.) But the Act *is* a child abuse law. The Legislature reasonably chose to frame the law in this way because it seeks to protect the unborn child from harm. Because of the biological reality of pregnancy, taking an unborn child into protective custody necessarily means taking the expectant mother into custody as well. Further, Loertscher fails to mention that an expectant mother cannot be held in custody unless there is a finding of probable cause. Wis. Stat. §§ 48.205(1m), 48.213.

Loertscher also argues that the fact that the Unborn Child in need of Protection or Services (UCHIPS) petition must set forth reliable and credible information "does not demonstrate narrow tailoring" because "the Act's vague

10

language creates the presumption—which has no basis in fact—that any amount of alcohol use and use of any amount of any controlled substance during pregnancy necessarily harms or poses a significant risk of harm to the fetus." (Dkt. 198:42.) First, narrow tailoring is not required under the balancing test applicable here. Second, by its plain language and commonly defined terms, the Act only applies in extreme circumstances—when the expectant mother "habitually" lacks self-control in the use of drugs or alcohol exhibited to a "severe degree," to the extent that there is a "substantial risk" that the physical health or the unborn child, and the child when born, will be "seriously affected or endangered" unless the expectant mother receives prompt and adequate treatment. Wis. Stat. § 48.133. The Act does not apply when maternal substance use is incidental or presents little or no risk to the unborn child.[3]

Finally, Loertscher contends that the state's claim that protective custody orders are used in moderation is not supported by the text of the Act or the facts of Loertscher's case. (Dkt. 198:42.) But Loertscher ignores the numerous options, short of formal children's court intervention and a protective custody order that can be used first, including counseling incidental to the intake process and voluntary drug or alcohol

---

[3] This argument is more thoroughly discussed in State Defendants' previous briefs. (Dkt. 167:43–44, 54–58; 189:4–10.)

treatment. *See*, *e.g.*, Wis. Stat. §§ 48.067, 48.069, 48.203, 48.24, 48.245. In addition, the court may not place an expectant mother outside her home unless she meets the statutory criteria and refuses to accept the services offered to her. Wis. Stat. §§ 48.198(1), 48.347. These statutory provisions, along with the stated goal of the Act—"to preserve the unity of the family"—show that protective custody orders are to be used sparingly.

Contrary to Loertscher's assertion, her experience in Taylor County is not illustrative of the entire state. While it acted well within the bounds of the Act, Taylor County handles relatively few unborn child abuse cases. (Dkt. 181:23 ¶ 126.) Loertscher's experience in that county does not demonstrate that unborn child abuse cases necessarily follow the same path in every Wisconsin county. For example, in Milwaukee County, most treatment provided under the Act is voluntary. (SDPFOF ¶¶ 106–11, 120.)

In sum, the actions that can be taken to protect an unborn child under the Act are reasonably related to the state interests in the health, safety, and welfare of unborn children and their expectant mothers. The Act does not violate an expectant mother's substantive due process rights.

## III.   The Act does not violate an expectant mother's procedural due process rights.

The Act provides constitutionally sufficient procedures. It provides for temporary detention and custody based upon a finding of probable cause and

then a fact-finding hearing where the allegations in the petition must be proven by clear and convincing evidence. The expectant mother is entitled to counsel during critical phases in the process—namely when she may be placed outside her home. These procedures are consistent with similar involuntary confinement situations. Loertscher cannot demonstrate that the procedural protections afforded under the Act are constitutionally inadequate.

As discussed in the State Defendants' summary judgment brief, an expectant mother may be temporarily held in custody[4] based on a finding of probable cause. (Dkt. 167:48–50.) An intake worker may hold an expectant mother in custody for a brief period of time based on probable cause to believe that the statutory standard is met. Wis. Stat. §§ 48.203(6), 48.205(1m). An expectant mother who is held in custody and not released must have a hearing before a judge or court commissioner within 48 hours after the detention decision to determine whether there is probable cause to continue the custody.[5] Wis. Stat. § 48.213. These procedures are consistent with the

---

[4] "Custody" under the Act does not mean that the expectant mother is held in jail. Wis. Stat. §§ 48.193(3), 48.207(1m). She may be held in several places, including the home of an adult relative or friend, a licensed community-based residential facility, a hospital, a physician's office, or a treatment facility. Wis. Stat. § 48.207(1m).

[5] Due to its limited function and nonadversarial character, all the rules of evidence do not apply at the probable cause hearing, although they do apply at the later fact-finding hearing. Wis. Stat. § 48.299(4).

procedures for holding a child in custody, *see* Wis. Stat. § 48.21, for holding a person suspected of a crime in custody, *see Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975), and for holding a mentally ill individual in custody, Wis. Stat. §§ 51.15(1), 51.20(2), (7).

An expectant mother may be held temporarily without a full-blown adversarial hearing. But if she continues in the UCHIPS process, she receives such a hearing later. After the petition is filed, an expectant mother is entitled to a fact-finding hearing at which the court determines whether the allegations in the petition are proven by clear and convincing evidence. Wis. Stat. § 48.31. This procedure is consistent with the procedure for mental health commitments. Wis. Stat. § 51.20(13)(e); *Foucha*, 504 U.S. at 80–81 (government may confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous).

Loertscher argues that "[b]ecause the intrusions of individual privacy and deprivations of liberty under the Act are manifestly greater than in the typical child welfare context, the Act must also provide greater procedural protections." (Dkt. 198:43–44.) Loertscher does not develop any argument about what those additional procedures should be. She focuses on the right to counsel. But that argument also fails.

An indigent litigant in a civil case has no right to appointed counsel unless there is a potential deprivation of physical liberty. *Lassiter v. Dep't of Soc. Servs. Durham Cty., N.C.*, 452 U.S. 18, 31 (1981). Even when incarceration is threatened, however, due process does not always require appointment of counsel. *See*, *e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 783–91 (1973) (no right to appointed counsel in a probation revocation proceeding); *Turner v. Rogers*, 564 U.S. 431, 441–49 (2011) (no presumptive right to state-appointed counsel in a civil contempt proceedings that could lead to incarceration).

An expectant mother is entitled to counsel when she faces placement outside of her home. If the UCHIPS petition is contested, an expectant mother may not be placed outside of her home unless she is represented at the fact-finding hearing and subsequent hearings. Wis. Stat. § 48.23(2m). If the petition is not contested, she may not be placed outside her home unless she is represented by counsel at the hearing at which the placement is made. *Id*. Thus, the provision for appointment of counsel under the Act is constitutionally sufficient.

Given the extensive procedural protections provided under the Act, as discussed herein and more fully in the State Defendants' summary judgment brief (Dkt. 167:47–54), there is little risk of an improper deprivation of liberty. The Act appropriately balances the expectant mothers' liberty

interests and the state's interest in protecting unborn children from harm. The Act does not violate an expectant mother's procedural due process rights.

## IV.   The Act does not violate an expectant mother's equal protection rights.

In their two previous briefs, the State Defendants explained that the classification created by the Act does not differentiate between men and women, but between expectant mothers and non-pregnant people, regardless of their gender. (Dkt. 167:61–62, 65–66; 189:32–33.) Loertscher responds that the Act discriminates on the basis of gender because it "targets all women who may become pregnant." (Dkt. 198:47.) She bases this conclusion on the premise that the Act applies from the moment of fertilization. (Dkt. 198:37.) Her premise is wrong. The Act only applies to "expectant mothers," or women who are pregnant. Wis. Stat. § 48.133. Significantly, the relevant state standards require confirmation of pregnancy before the Act is triggered. (SDPFOF ¶ 105.)

The State Defendants cited *Geduldig v. Aiello*, 417 U.S. 484, 496–97, n.20 (1974), to support the proposition that pregnancy-based classifications do not constitute gender discrimination unless they are pretextual. (Dkt. 167:64.) Loertscher pushes *Geduldig* to the side on the ground that the Court's finding of no gender discrimination based on pregnancy in *General Electric Company v. Gilbert*, 429 U.S. 125 (1976), was abrogated by the

16

enactment of the Pregnancy Discrimination Act. (Dkt. 198:49.) But *Geduldig* was not affected by the Pregnancy Discrimination Act. *Gilbert* was a Title VII case, which Congress had the constitutional authority to abrogate by amending the statute. In contrast, *Geduldig* was constitutionally based, and therefore unaffected by the statutory change.

The Act does not discriminate on the basis of gender or any other protected class. It does not infringe any constitutionally protected right. *See supra* at 5–12. Therefore, this Court should apply rational basis review to the Act. Under that level of review, the Act survives because it is rationally related to a legitimate state interest.

## V.   The Act does not violate an expectant mother's Fourth Amendment rights.

Loertscher contends that the Fourth Amendment protects a pregnant woman's medical records from the disclosures authorized by the Act. (Dkt. 198:49–52.) She is wrong.

First of all, no controlling legal authority holds that the Fourth Amendment provides such protection. Some cases have suggested that private medical records warrant *some* protection under a constitutional right to privacy, but have not set forth any analytical parameters applicable to this case. Loertscher cites *Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000), and *Green v. Berge*, 354 F.3d 675 (7th Cir. 2004), as recognizing a substantial

17

privacy right in the confidentiality of medical information. (Dkt. 198:50.) As the State Defendants have previously shown, these cases are distinguishable. (Dkt. 189:38.) More importantly, a later Seventh Circuit opinion was openly skeptical that there is such a right, noting that the Supreme Court was "'very vague' on the possibility of a constitutional right to the privacy of one's medical records." *Big Ridge, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 715 F.3d 631, 648 (7th Cir. 2013) (citation omitted).

Second, *Ferguson v. City of Charleston*, 532 U.S. 67 (2001), sheds no light whatsoever on the issues in this case. *Ferguson* addressed the constitutionality of mandatory drug testing of pregnant women. *Id.* at 73. It had nothing to do with the disclosure of a pregnant woman's medical records.

Third, Loertscher rejects the State Defendants' reliance on *Whalen v. Roe*, 429 U.S. 589 (1977), and *Big Ridge* on two grounds. She notes that those cases involved disclosure of medical records to state or federal health officials for public health purposes, not (as here) "to unrelated law enforcement officials." (Dkt. 198:51.) Then, she observes that the purpose of the disclosures in those cases was to protect public health, whereas here the Act "permits or requires disclosure to state law enforcement officials for the purposes of potential proceedings against the pregnant woman." (Dkt. 198:51.) She is correct that the statutes operate differently, but her implication that the *Whalen* and *Big Ridge* statutes are benign whereas the Wisconsin Act has a

18

sinister purpose of punishing pregnant women is a mischaracterization. As explained above, the purpose of the Act is to protect unborn children and to provide expectant mothers with the tools they need to protect their children from harm. *See supra* at 6–12.

Fourth, Loertscher ignores the fact that the series of disclosures of medical records authorized by the Act are carefully limited. Disclosure is only permitted to achieve the protective purposes of the Act. (Dkt. 167:72–75.) Disclosure of confidential information not authorized by the statute is punishable by a $1000 fine and up to six months in prison. Wis. Stat. § 48.981(7)(e). With these limitations and penalties, the Legislature carefully calibrated the disclosure of private medical records to meet the aims of the Act.

For these reasons and the reasons set forth in the State Defendants' previous briefs, this Court should grant summary judgment to the State Defendants on Loertscher's Fourth Amendment claim.

## VI. Loertscher has not advanced an as-applied challenge to the Act. To the extent that such a claim can be construed from her pleadings, this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

Loertscher's challenge to the Act is facial only. She has not developed any as-applied challenge against the State Defendants, and she contends that the facts of her case are relevant only to "illustrate" the Act's

application. (Dkt. 198:25.) To the extent this Court construes an as-applied challenge from Loertscher's pleadings, such a claim is barred by the *Rooker-Feldman* doctrine, as discussed in the State Defendants' brief in support of summary judgment. (Dkt. 167:76–80.)

## VII. Loertscher's challenge to the Act based on the administrative finding of unborn child maltreatment is moot because the policy at issue was changed.

In her amended complaint, Loertscher alleged that one of the ways in which the Act violated her rights was by allowing for an administrative finding that she had committed maltreatment. (Dkt. 66:18–19, 21–22 ¶¶ 72–74, 87.) It is undisputed that the administrative maltreatment finding against Loertscher was withdrawn. (Dkt. 201:59 ¶ 128; 192:38 ¶ 129.) It is also undisputed that the Access and Initial Assessment Standards ("IA Standards"), which provide direction regarding administrative maltreatment determinations, were recently changed to no longer allow for a maltreatment determination for unborn child abuse. (SDPFOF ¶¶ 121–23; Dkt. 196:26 ¶¶ 121–23; Dkt. 199:112–13 ¶¶ 121–23.) This change renders moot Loertscher's constitutional challenge based on the administrative maltreatment finding.

Loertscher argues that the change in the policy governing administrative maltreatment findings does not render her constitutional challenge moot because "the state could simply change the policy back in the

future." (Dkt. 198:55.) Citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000), Loertscher argues that "[a] case may only be rendered moot if 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (Dkt. 198:55 (citation omitted).)

*Friends of the Earth* is distinguishable. That case involved a *private* defendant who was charged with not complying with the terms of its permit governing the amount of treated water it could discharge into a nearby waterway. *Id.* at 175–77. This case, in contrast, involves *government* defendants. Courts are more likely to find that wrongful behavior will not recur when the suit involves government defendants who have ceased illegal conduct. The Seventh Circuit has noted that "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties. . . . [S]uch self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988); *see also Fed'n of Advert. Indus. Representatives v. City of Chi.*, 326 F.3d 924, 929 (7th Cir. 2003).

There can be no question that the state's policy change is genuine. The IA Standards no longer permit an administrative maltreatment

determination for unborn child abuse. (SDPFOF ¶¶ 121–23; Dkt. 196:26 ¶¶ 121–23; 199:112–13 ¶¶ 121–23.) Identification of a maltreater is not permitted, and counties are no longer required to identify a maltreater in the state database. (SDPFOF ¶ 122; Dkt. 181:22 ¶ 119.) The IA Standards enhance statewide consistency by providing counties with more specific direction than what is offered by the Wisconsin statutes. (SDPFOF ¶ 99.) If the state is to maintain this goal of consistency, a change in the IA Standards cannot be done lightly. There is no evidence that the state intends to return to the former policy, and there is no reasonable likelihood that the challenged behavior will recur. Loertscher's challenge to the Act based on the administrative finding of unborn child maltreatment is moot.[6]

---

[6] Loertscher argues that that fact that the IA Standards now provide for a determination of "Services Needed" could prompt many of the same deprivations of liberty under the Act. (Dkt. 198:56.) She points to no evidence for this assertion. Indeed, in her amended complaint she acknowledged that the administrative maltreatment "finding is separate from the court case against [her]." (Dkt. 66:18 ¶ 72.) State Defendants do not argue that this policy change moots Loertscher's entire case, only her claim regarding the administrative maltreatment determination.

## CONCLUSION

This Court should grant summary judgment in favor of the State Defendants.

Dated this 22nd day of December, 2016.

BRAD D. SCHIMEL
Wisconsin Attorney General


/s/ Karla Z. Keckhaver
KARLA Z. KECKHAVER
Assistant Attorney General
State Bar #1028242

JODY J. SCHMELZER
Assistant Attorney General
State Bar #1027796

JENNIFER L. VANDERMEUSE
Assistant Attorney General
State Bar #1070979

Attorneys for Defendants
Brad D. Schimel and Eloise Anderson

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-6365 (KZK)
(608) 266-3094 (JJS)
(608) 266-7741 (JLV)
(608) 267-2223 (Fax)
keckhaverkz@doj.state.wi.us
schmelzerjj@doj.state.wi.us
vandermeusejl@doj.state.wi.us