CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 17-1936

TAMARA M. LOERTSCHER,

*Plaintiff-Appellee,*

*v.*

ELOISE ANDERSON, et al.,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:14-cv-00870-jdp — **James D. Peterson**, *Chief Judge.*

_____

ARGUED OCTOBER 26, 2017 — DECIDED JUNE 18, 2018

_____

Before FLAUM, RIPPLE, and MANION, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Tamara M. Loertscher brought this action under 42 U.S.C. § 1983 challenging the constitutionality of 1997 Wisconsin Act 292 ("Act 292" or "the Act"), a legislative measure designed to address the effects of prenatal substance abuse. Act 292 brings unborn children and their mothers within the jurisdiction of the juvenile courts if the mothers exhibit a habitual lack of self-control with respect to alcohol or drugs that raises a substantial health risk for their unborn

children. Ms. Loertscher was subjected to the provisions of the statute when, after seeking treatment at a county health facility, her caregivers determined that she was pregnant and that she had tested positive for methamphetamine, amphetamines, and tetrahydrocannabinol. Pursuant to the provisions of the Act, the state court ordered Ms. Loertscher to report to an alcohol and drug abuse treatment center for assessment and possible treatment. When she failed to comply with the order, the court found her in contempt and placed her in county detention. She eventually agreed to participate in the program.

Ms. Loertscher later instituted this federal action against several state and county officials in which she challenged Act 292 on a variety of constitutional grounds. While her action was pending in district court, Ms. Loertscher moved out of Wisconsin. The defendants then filed a motion to dismiss the action on the grounds that the case now was moot; that motion was denied.

On cross motions for summary judgment, the district court concluded that Act 292 was void for vagueness and, therefore, granted injunctive relief to Ms. Loertscher against the state defendants. The court determined, however, that the county defendants were not personally liable, and, therefore, Ms. Loertscher was not entitled to monetary damages. The state defendants appealed the district court's entry of injunctive relief; Ms. Loertscher did not cross appeal the entry of judgment for the county defendants on her damages claims.

We conclude that Ms. Loertscher's case is moot. She has moved out of the State of Wisconsin and has no plans to return. Consequently, it is not reasonably likely that she will

No. 17-1936                                                                 3

again be subject to the Act's provisions. Accordingly, we vacate the district court's entry of judgment against the state defendants and remand with instructions to dismiss the action as moot.

# I

# BACKGROUND

## A.

### 1.

In 1997, the Wisconsin Supreme Court held, as a matter of statutory construction, that the definition of child in Wisconsin's Children's Code did not include unborn children. *See Wisconsin ex rel. Angela M.W. v. Kruzicki*, 561 N.W.2d 729, 740 (Wis. 1997). In response, the Wisconsin Legislature enacted Act 292 "[t]o ensure that unborn children are protected against the harmful effects resulting from the habitual lack of self-control of their expectant mothers in the use of alcohol beverages, controlled substances or controlled substance analogs, exhibited to a severe degree." Wis. Stat. § 48.01(2)(bm). The law effectuates this purpose by bringing within the jurisdiction of the juvenile courts unborn children and their mothers when the mothers' consumption of alcohol or controlled substances places their unborn children at risk. Specifically, Wisconsin Statutes section 48.133 provides:

> The court has exclusive original jurisdiction over an unborn child alleged to be in need of protection or services which can be ordered by the court whose expectant mother habitually

> lacks self-control in the use of alcohol beverages, controlled substances or controlled substance analogs, exhibited to a severe degree, to the extent that there is a substantial risk that the physical health of the unborn child, and of the child when born, will be seriously affected or endangered unless the expectant mother receives prompt and adequate treatment for that habitual lack of self-control. The court also has exclusive original jurisdiction over the expectant mother of an unborn child described in this section.

The process of bringing an unborn child and the mother within the jurisdiction of the court begins with a report by a person, usually a physician or relative, "who has reason to suspect that an unborn child has been abused or who has reason to believe that an unborn child is at substantial risk of abuse." Wis. Stat. § 48.981(2)(d). Wisconsin Statutes section 48.981 sets forth the process that follows the report, which has been implemented by the Wisconsin Department of Children and Families.[1] Specifically, a case worker must decide if there is reasonable suspicion to believe that the conditions of section 48.133 are met. If there is reasonable suspicion, then the report will be "screened in."[2] At that point, an assessment worker "shall initiate a diligent investigation to determine if the unborn child is in need of protection or services." Wis. Stat. § 48.981(3)(c)(1)(a).

---

[1] *See* R.169-1 ("Child Protective Services Access and Initial Assessment Standards").

[2] *See id*. at 22.

If the report appears accurate, the worker will "offer to provide appropriate services." *Id*. § 48.981(3)(c)(3). If the expectant mother refuses, the assessment worker must decide whether to pursue a formal petition for an unborn child in need of protective services ("UCHIPS"). *Id*. If the case proceeds and the mother is held temporarily,[3] a court intake worker reviews the case to decide if it should go forward. At this point, there are several ways that the case might be resolved informally; these include the mother's submitting to counseling, alcohol or drug abuse assessment, or outpatient treatment. Wis. Stat. § 48.245(1), (2)(a).

If the UCHIPS petition actually is filed, procedural protections come into play, including a plea hearing, a factfinding hearing before a judge or jury, and a final dispositional hearing. *See* Wis. Stat. §§ 48.30, 48.31. At this stage, the mother is entitled to counsel regardless of ability to pay. *See* Wis. Stat. §§ 48.27(4)(b)(2), 48.243(1)(e). If the court finds that the unborn child is in need of protection or service, it must order the least restrictive care and treatment plan sufficient to protect the well-being of the child. *See* Wis. Stat. §§ 48.347, 48.355(1). Among the options are counseling, treatment, supervision, placement at the home of an adult relative or friend, or, at most, inpatient alcohol or drug treatment. *See* Wis. Stat. § 48.347. Inpatient treatment can be ordered only if an assessment has been conducted by an approved treatment facility. *See* Wis. Stat. §§ 48.31(4), 48.547(4).

---

[3] The Act provides for temporary custody of the expectant mother if there is an immediate danger to the unborn child. Custody includes placement (1) in the home of an adult friend or relative, (2) in a licensed community-based residential facility, (3) in a hospital, or, in some situations (4) in an emergency treatment facility. Wis. Stat. § 48.207(1m).

**2.**

In the summer of 2014, Ms. Loertscher went to Taylor County Human Services Department ("the County") to determine if she was pregnant and to seek treatment for her hypothyroidism, which had gone untreated due to her inability to afford her medication. She was referred to the Eau Claire Mayo Clinic Hospital. There her caregivers confirmed her pregnancy, and she also tested positive for methamphetamine, amphetamines, and tetrahydrocannabinol.[4] Ms. Loertscher told the treating physician that she intended not to use drugs during her pregnancy so that she could have a healthy child. That evening, Ms. Loertscher was voluntarily admitted to the Mayo Clinic Behavioral Health Unit.

The following morning, Ms. Loertscher received her thyroid medication. A psychiatrist spoke with her about her thyroid condition and also inquired about her past drug use. Ms. Loertscher stated that she had been self-medicating with marijuana and methamphetamine. Later that evening, Ms. Loertscher met with an obstetrician, Dr. Jennifer Bantz, and admitted to smoking methamphetamine daily, but stated that she had cut back to "two to three times a week" after discovering that she was pregnant.[5] Ms. Loertscher also reported that she had used marijuana throughout her pregnancy and had consumed alcohol "a few times," but could not provide Dr. Bantz with "a specific amount."[6]

---

[4] Tetrahydrocannabinol or THC is the active ingredient in marijuana.

[5] R.1-2 at 15.

[6] *Id*. at 16.

No. 17-1936 7

Ms. Loertscher's condition and drug use was reported to a social worker at the hospital, Corey Everson, who then reported to the County that Ms. Loertscher's behavior was putting her baby in serious danger. Subsequently, a County access worker "screened in" the case. Later, an assessment worker, Julie Clarkson, requested Ms. Loertscher's medical records and also notified her that there was an open investigation. When Clarkson spoke to Ms. Loertscher, she denied recent drug use or any use of alcohol in the prior year. Clarkson informed Ms. Loertscher that the tests indicated drug use within the last few days; at that point, Ms. Loertscher told Clarkson that she did not want to work with the County.[7] Clarkson asked Ms. Loertscher to agree to an inpatient drug treatment facility, but Ms. Loertscher refused.[8]

A formal UCHIPS petition was filed, and the County held Ms. Loertscher at the Mayo Clinic Hospital to allow for a temporary custody hearing the following day. The County also appointed a guardian ad litem for Ms. Loertscher's unborn child.

On August 5, the guardian ad litem and county personnel attended a confidential hearing in juvenile court. Hospital staff arranged for Ms. Loertscher to participate in the hearing by phone; Ms. Loertscher stated, however, that she would not continue with the call in the absence of counsel and left the room.[9]

---

[7] R.169-4 at 12.

[8] *Id*.

[9] R.1-2 at 7, 9–10.

At the hearing, Dr. Bantz testified regarding the consequences of Ms. Loertscher's drug use. She stated that mothers on methamphetamine "tend to be underweight, and [their] babies tend to be smaller at the gestational age."[10] She stated that, for those children, "there is a suggestion of cognitive problems later on."[11] Dr. Bantz also stated that Ms. Loertscher's continued use of methamphetamine could put her child at risk for cognitive problems and would "directly affect her ability to … make good decisions" related to nutrition and prenatal care.[12] Finally, she testified that she did not believe Ms. Loertscher would avail herself of voluntary treatment options because Ms. Loertscher had refused prior offers of treatment.[13]

The state court found probable cause that the statutory standards had been met.[14] The court ordered Ms. Loertscher to report to an alcohol and drug abuse treatment center for an assessment and possible treatment.[15]

Two weeks after the hearing, Ms. Loertscher still had not complied with the order. As a result, she was held in contempt and placed in county detention.[16] Ms. Loertscher even-

---

[10] *Id*. at 17.

[11] *Id*.

[12] *Id*. at 18–19.

[13] *See id*. at 20–21.

[14] *See id*. at 28.

[15] *See* R.1-3 at 4.

[16] *See* R.1-8 at 25–27.

tually agreed to participate in a drug assessment and was released. After the assessment, her treatment plan involved attending prenatal appointments and submitting to random drug tests one to three times per week.

Ms. Loertscher gave birth to a healthy boy on January 23, 2015.

### B.

On December 15, 2014, Ms. Loertscher filed this action against the Wisconsin Attorney General and the Secretary of the Department of Children and Families for the State of Wisconsin. She alleged that Act 292 violated her rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. She requested declaratory relief as well as a preliminary and permanent injunction.

Ms. Loertscher filed an amended complaint on November 6, 2015. In addition to her original demands, the amended complaint sought compensatory and punitive damages against several county defendants under 42 U.S.C. § 1983.[17] The amended complaint also brought to light that Ms. Loertscher had moved out of the State of Wisconsin. In response, the defendants filed a motion to dismiss on the ground that Ms. Loertscher's move rendered the case moot. The district court denied the motion on the ground that Ms. Loertscher's action fell within the exception to mootness for cases capable of repetition but evading review.[18]

---

[17] *See* R.66 at 25.

[18] *See* R.118 at 4.

Following discovery, the parties filed cross motions for summary judgment. The court concluded that the provision of Act 292 that brings expectant mothers under the jurisdiction of the juvenile courts, Wis. Stat. § 48.133, was void for vagueness. According to the district court, the first part of section 48.133, which requires that the expectant mother "severely and habitually lack self-control in the use of alcohol, controlled substance, or controlled substance analogs," is vague because it does not specify how much of the prohibited activity brings an expectant mother within the Act's coverage.[19] The district court also concluded that the second part of the statute, directed to a "substantial risk" of harm to the unborn child, is "doubly indeterminate" because "substantial" and "risk" are matters of degree.[20] The court particularly was troubled by the inability of the physician witnesses to quantify a precise amount of drug use that would put an unborn child in jeopardy. The district court therefore declared Act 292 unconstitutional, granted summary judgment to Ms. Loertscher against the state defendants, and issued a statewide injunction against Act 292's operation.

The district court, however, entered summary judgment in favor of the county defendants on Ms. Loertscher's damages claims. It concluded that Ms. Loertscher had not identified "a *municipal policy, practice, or custom* responsible for the alleged constitutional violation."[21] Instead, Ms. Loertscher

---

[19] *See* R.240 at 24–27.

[20] *Id.* at 27.

[21] *See id.* at 33–39 (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978)).

simply was trying to hold the county defendants liable for implementing a state mandate.

The state defendants timely appealed the district court's entry of summary judgment against them.[22] Ms. Loertscher did not cross appeal the entry of judgment in favor of the county defendants on her damages claims.

## II

Before we address the parties' arguments on the merits, we first must address a threshold question: whether Ms. Loertscher's move out of the State of Wisconsin renders this appeal moot.[23] The question whether Ms. Loertscher's departure from Wisconsin rendered her claim for injunctive relief moot is a question of law that we review de novo. *See Freedom from Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038, 1045 (7th Cir. 2018) ("We also consider legal questions of mootness *de novo* … .").

---

[22] The state defendants also filed an emergency motion to stay the district court's injunction, which we denied. The Supreme Court subsequently stayed the district court's injunction pending the outcome of this appeal. *See Anderson v. Loertscher*, 137 S. Ct. 2328 (2017).

[23] As previously noted, the only substantive issue before us is the propriety of the district court's injunction. Although Ms. Loertscher's complaint also sought damages against the county defendants, the district court entered summary judgment in favor of the county defendants, and Ms. Loertscher has not appealed that ruling.

12                                                                  No. 17-1936

### A.

"To invoke federal jurisdiction, a plaintiff must show a 'personal stake' in the outcome of the action." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)). "This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Id*. (quoting *Genesis HealthCare*, 569 U.S. at 71). Moreover, this requirement must be met "at all stages of review." *Id*. (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "Article III, § 2 of the Constitution grants jurisdiction to federal courts to adjudicate only 'actual, ongoing controversies.'" *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "There is thus no case or controversy, and a suit becomes moot, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). In an action seeking injunctive relief, the requirement of a live controversy "ordinarily means that, once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot." *Brown*, 442 F.3d at 596.

An action seeking to enjoin the operation of an unconstitutional policy or practice may become moot if the plaintiff is removed from the geographical jurisdiction of the issuing authority. For example, in *Camreta v. Greene*, 563 U.S. 692 (2011), as part of a child abuse investigation, a student was interviewed at her school by a caseworker and a prosecutor. The

student's mother challenged the constitutionality of the interview on Fourth Amendment grounds. The Ninth Circuit ruled that the caseworker and prosecutor had violated the Fourth Amendment, but concluded that they were entitled to qualified immunity. The caseworker and the prosecutor then sought a writ of certiorari challenging the appellate court's determination that their actions were illegal. Following the grant of certiorari, the Supreme Court discovered that the student had moved to Florida and had no intention of returning. In light of this move, and the fact that the student was "only months away from her 18th birthday," the student could "no longer claim the plaintiff's usual stake in preserving the court's holding" because "she face[d] not the slightest possibility of being seized in a school in the Ninth Circuit's jurisdiction as part of a child abuse investigation." *Id.* at 710–11. The Court therefore concluded that the case was moot and vacated that part of the Ninth Circuit's opinion concerning the constitutionality of the interview.

Similarly, in *Ortiz v. Downey*, 561 F.3d 664 (7th Cir. 2009), we held that an inmate's claim for injunctive relief against the allegedly unconstitutional actions of prison officials was mooted by his transfer out of that facility. We observed that, following his transfer "[t]here [wa]s no realistic possibility that Mr. Ortiz will again be incarcerated in the same state facility and therefore be subject to the actions of which he complain[ed] here." *Id.* at 668. Consequently, "[a]ny relief that our judgment might permit would be purely speculative in nature." *Id.*

The same principle applies when injunctive relief has been sought against a state statute or a local ordinance, as opposed to a policy or practice. *Cooley v. Granholm*, 291 F.3d 880 (6th

Cir. 2002), is one example. In *Cooley*, two physicians challenged a Michigan statute banning physician-assisted suicide. While the action was pending, one of the physicians retired and the other moved to California, but planned to "return to Michigan to practice sometime in the future if he c[ould] find a suitable job." *Id*. at 882. The Sixth Circuit held that, because neither physician practiced medicine in Michigan any longer, "the case ha[d] completely lost 'its character as a present live controversy of the kind that must exist if [the Court is] to avoid advisory opinions on abstract propositions of law.'" *Id*. at 883 (second alteration in original) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)). The physicians had "no 'legally cognizable interest in the outcome,'" and, therefore, the case was moot. *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

The Eleventh Circuit followed the same course in *Lucero v. Trosch*, 121 F.3d 591 (11th Cir. 1997). There, a physician, who owned a health clinic that provided reproductive services including abortions, brought an action against abortion protestors under both federal law and Alabama nuisance law. The district court denied the physician's request for a preliminary injunction under federal law, but granted a preliminary injunction on the nuisance claim. Both parties appealed. After oral argument, the court discovered that "Dr. Lucero had sold the Clinic and that he and his family … no longer liv[ed] in Alabama." *Id*. at 595. The court held that "[b]ecause Dr. Lucero and his family no longer reside[d] in Alabama and no longer own[ed] or operate[d] the Clinic, any claims for injunctive relief [we]re moot as to them." *Id*. at 596.[24]

---

[24] Dr. Lucero's claim for monetary relief survived, as did the claim for injunctive relief by All Women's Inc., the entity which had purchased all of

No. 17-1936            15

    In this case, the only issue before us is the appropriateness of the district court's statewide injunction precluding the operation of Act 292. Ms. Loertscher has moved out of Wisconsin and is no longer subject to Act 292's provisions. In her deposition, she testified that she had no "plans to return back to Wisconsin to live."[25] The threat that she may be subjected to Act 292 is no longer existent. Thus, Ms. Loertscher is no longer in need of any protection from the operation of the statute.[26] Ms. Loertscher's claim for injunctive relief—the only one before us—has been mooted as a result of her move.

---

the assets of Dr. Lucero's clinic and continued to operate a clinic in much the same manner as Dr. Lucero had. *Lucero v. Trosch*, 121 F.3d 591, 596–97 (11th Cir. 1997).

[25] R.237 at 48 (Loertscher Dep. 174).

[26] Contrary to Ms. Loertscher's assertions in her brief, the record does not support the conclusion that "she has contemplated a move back to the state to be closer to her family." Appellee's Br. 31. The only record material cited in support of this assertion is Ms. Loertscher's deposition testimony, in which the following colloquy took place:

> Q    Do you have any plans to return back to Wisconsin to live?
>
> A    *Not to live. No.*
>
> …
>
> Q    And do you know right now when you have plans to visit Wisconsin again?
>
> A    Besides this visit, no.
>
> Q    Would you ever *consider* living in Wisconsin again?

**B.**

Ms. Loertscher maintains that, even if her claim is moot, her claim falls within the exception to mootness for cases "capable of repetition, yet evading review." *Sanchez-Gomez*, 138

---

> A	It's a hard question, because I would like to because my family is there, you know.
>
> …
>
> A	… The question was do I – would I ever live in Wisconsin again?
>
> Q	Correct.
>
> A	It's a hard question to answer, because I do have some family there that's slightly still supportive that I'd like to see, but I feel like I can't. I guess that's the best way I can answer your question. I can't answer it a yes or a no because it's kind of both.

R.237 at 48 (Loertscher Dep. 174–75) (emphasis added).

Nor is there evidence that Ms. Loertscher "moved out of the state in part because of her fear of harassment or future intervention by local officials related to the issues in this case." *See* Appellee's Br. 31. Again, the only record evidence in support of this statement is the above deposition testimony which is silent regarding her fear of harassment. Thus, Ms. Loertscher's situation is not analogous to that of the plaintiff in *Artway v. Attorney General of New Jersey*, 81 F.3d 1235 (3d Cir. 1996). There, a sex offender, who had been released from prison, "lived in New Jersey—where he established a home, a family, and a job"—until New Jersey enacted a mandatory registration system for sex offenders. *Id.* at 1246. He left shortly after the law was passed so that he did not have to register, but had "sworn to his desire to return if [the law] [wa]s invalidated." *Id.* Ms. Loertscher has not established that Act 292 prompted her departure from Wisconsin or that the fear of Act 292's provisions is preventing her from returning to Wisconsin.

S. Ct. at 1540 (internal quotation marks omitted). This doctrine applies only in "exceptional situations," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal quotation marks omitted), when two conditions are met: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again," *Sanchez-Gomez*, 138 S. Ct. at 1540 (quoting *Turner v. Rogers*, 564 U.S. 431, 439–40 (2011)); *see also Spencer*, 523 U.S. at 17. When these requirements are met, the plaintiff retains a personal stake in the outcome of the appeal.

Ms. Loertscher does not retain a stake in the outcome of this appeal, which concerns only injunctive relief. Her voluntary and permanent departure from the State, which enacted and administers the law which she challenges, makes the possibility of her once again being subject to the statute a matter of pure speculation.

Ms. Loertscher has no reasonable expectation that she will find herself within the State of Wisconsin at a time when she is both pregnant and under the influence of drugs or alcohol to a severe degree. Ms. Loertscher previously was subjected to Act 292's provisions because of her regular use of illegal substances. Courts "generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *See Honig v. Doe*, 484 U.S. 305, 320 (1988); *Sanchez-Gomez*, 138 S. Ct. at 1541.[27] Therefore, we will not assume that

---

[27] The general rule applies in circumstances where the plaintiffs are able to "conduct their activities within the law and so avoid prosecution and conviction." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (quoting

18 No. 17-1936

Ms. Loertscher again will engage in the consumption of illegal substances, such as methamphetamine.

Determining the applicability of the "capable of repetition yet evading review" exception always has been an exercise of practiced judgment. It is not "an ingenious academic exercise in the conceivable." *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975) (quoting *United States v. SCRAP*, 412 U.S. 669, 688 (1973)). Rather, we make a practical judgment as to whether the circumstances alleged in the complaint have "evaporated or disappeared" or "by [their] continuing and brooding presence," continue to cast "a substantial adverse effect" on the plaintiff. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974).[28]

---

*O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). It follows that, where the plaintiff has made a showing of an "inability to conform his conduct to socially acceptable norms," the general rule does not apply. *Honig v. Doe*, 484 U.S. 305, 320 (1988) (stating that the Court had "[n]o reluctance" in assuming that a student's inability "to govern his aggressive, impulsive behavior" would result in future expulsions from the classroom that would implicate the State's challenged response).

[28] Ms. Loertscher submits that the second requirement—a reasonable expectation that the same complaining party will be subject to the same action again—should not be applied literally to her circumstances. She relies upon *Jones v. Illinois Department of Rehabilitation Services*, 689 F.2d 724 (7th Cir. 1982), and *Majors v. Abell*, 317 F.3d 719 (7th Cir. 2003), to support her argument.

In *Jones*, the court considered a deaf student's challenge to a state college's failure to provide him with the services of a sign language interpreter. On appeal, this court determined that the action had not been mooted by the student's graduation but was "capable of repetition both as to Jones … and as to other deaf clients of IDRS who are or will be students at IIT." 689 F.2d at 728. Regarding Jones, the court determined that, "[a]lthough he disclaim[ed] any current intent to attend graduate school,

that [wa]s a possibility that [could not] be discounted in today's society and in his highly technical profession." *Id*. Moreover, "[t]he case [wa]s also capable of repetition by other hearing-impaired IIT students who [we]re IDRS clients." *Id*.

Since *Jones*, however, the Supreme Court has emphasized that the "exception applies '*only* in exceptional situations,' where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (alterations in original) (emphasis added) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Additionally, Jones's legal action, unlike Ms. Loertscher's, was mooted by the passage of time, not his voluntary departure from the school.

Similarly, *Majors* does not persuade us that Ms. Loertscher's situation falls within the exception for cases capable of repetition but evading review. In *Majors*, we considered the constitutionality of an Indiana law requiring the disclosure of the identity of individuals who paid for certain political ads. As a preliminary matter, we had to consider whether a candidate had standing to challenge the law when the election in which he had run already had occurred and when the candidate had not declared his candidacy for the next election. We held that "[a] candidate plaintiff no more has a duty to run in every election in order to keep his suit alive than an abortion plaintiff has a duty to become pregnant again at the earliest possible opportunity in order to keep her suit alive. Politicians who are defeated in an election will often wait years before running again; obviously this doesn't show they're not serious about their political career." *Majors*, 317 F.3d at 722–23.

The *Majors* court, like the *Jones* court, did not have the benefit of the Supreme Court's later emphasis on the importance of a court's assessing the *reasonable expectation* that the "same complaining party [will] be subject to the same action again." *Kingdomware Techs., Inc.* 136 S. Ct. at 1976. Moreover, as with *Jones*, *Majors* presents facts very different from those presented by Ms. Loertscher. The candidate in *Majors* had not left Indiana; he still resided there and, if he pursued office again, would continue to be subject to the law. Ms. Loertscher, however, permanently has removed

Ms. Loertscher has not shown that she has a reasonable expectation that she will again be subject to the provisions of Act 292, and, therefore, she has not satisfied the conditions of establishing the exception to mootness for claims capable of repetition but evading review.

## Conclusion

For the reasons set forth in this opinion, Ms. Loertscher's claim for injunctive relief against the state defendants is moot. Because this action became moot through Ms. Loertscher's voluntary departure from the State of Wisconsin, we vacate the district court's entry of summary judgment and injunctive relief in favor of Ms. Loertscher, *see Azar v. Garza*, No. 17-654, 2018 WL 2465222, at *2 (U.S. June 4, 2018), and remand to the district court with instructions to dismiss the action as moot.

VACATED and REMANDED with INSTRUCTIONS to DISMISS

---

herself from Wisconsin, and there is no longer a threat that she will be subject to Act 292—or any other Wisconsin law.